MCDONALD HOPKINS LLC

SHAWN M. RILEY (0037235) (Admitted Pro Hac Vice)
PAUL W. LINEHAN (0070116) (Admitted Pro Hac Vice)
MICHAEL J. KACZKA (0076548) (Admitted Pro Hac Vice)
600 Superior Avenue, East, Suite 2100
Cleveland, OH 44114-2653
Telephone: (216) 348-5400
Facsimile: (216) 348-5474
Email: sriley@mcdonaldhopkins.com
plinehan@mcdonaldhopkins.com
mkaczka@mcdonaldhopkins.com

MOSELEY BIEHL TSUGAWA LAU & MUZZI
A HAWAII LIMITED LIABILITY LAW COMPANY

CHRISTOPHER J. MUZZI (6939)
Alakea Corporate Tower
1100 Alakea Street, 23rd Floor
Honolulu, HI 96813
Telephone: (808) 531-0490, Facsimile (808) 534-0202
Email: cmuzzi@hilaw.us

Co-Counsel to the Debtors and Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| In re: | Case No. 08-01369 |
|---|---|
| | (Chapter 11 Cases) |
| CHA Hawaii, LLC., et al., | (Jointly Administered) |
| Debtors. | Hearing: |
| | Date: |
| | Time: |
| | Judge: Robert J. Faris |
| This document relates to: All Cases | |

{2111864:}

## JOINT MOTION FOR THE ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363(b) AND 503(b) AUTHORIZING PAYMENT OF FEES AND EXPENSES FOR PROSPECTIVE EXIT FINANCING LENDER

The above-captioned debtors (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee" and with the Debtors, the "Movants"), by this motion (the "Motion"), respectfully seek the entry of an order authorizing the Debtors, pursuant to 11 U.S.C. §§ 105, 363(b) and 503(b), to pay certain fees and expenses incurred by a prospective lender performing due diligence in connection with a proposed exit financing facility.

In support of this Motion, the Movants respectfully represent as follows:

### PRELIMINARY STATEMENT

1. This Motion seeks approval to reimburse a prospective lender for reasonable, documented, out-of-pocket third-party fees and expenses, up to a total of $75,000 in connection with the Debtors' efforts to obtain a $10 million[1] exit financing (the "Exit Facility") commitment. Payment of certain due diligence fees by April 6, 2010, is a critical step to receiving an exit financing commitment, which will allow the Reorganized Debtors (as defined below) to emerge from chapter 11 pursuant to a proposed plan of reorganization.

2. The Movants and their professionals have been negotiating the potential for an exit facility commitment from several prospective investors and/or

---

[1] While the commitment letter currently provides for a $10 million exit facility, the Movants are working to increase the facility to as much as $12 million.

lenders. The Movants anticipate obtaining a commitment for the Exit Facility, following a period of due diligence, prior to a hearing on the proposed Joint Plan of Reorganization for Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, and Hawaii Medical Center West, LLC, proposed by the Official Committee of Unsecured Creditors, Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, Hawaii Medical Center West, LLC and Hawaii Physicians Group (the "Proposed Plan"),[2] which would be scheduled for May 24, 2010.

3. The Movants believe that the prospective lender potentially provides an attractive financing option, subject to further negotiations, in a timeframe that is acceptable to the Debtors. This prospective lender, who has had significant discussions with the Debtors' management and has been provided with access to due diligence materials, has been negotiating with the Debtors as to the terms on which an Exit Facility commitment will be made. The prospective lender, Gemino Healthcare Finance, LLC (the "Prospective Lender"), will be invited to conduct more comprehensive due diligence and the Debtors and the Committee will negotiate with the Prospective Lender toward a definitive Exit Facility commitment by May 23, 2010.

---

[2] The Debtors, the Committee and Hawaii Physicians Group, LLC ("HPG") intend to file the Proposed Plan this week along with a corresponding disclosure statement.

4. In this Motion, the Movants seek Court approval to reimburse the Prospective Lender's reasonable due diligence fees and expenses — a condition required by the Prospective Lender before it will conduct such due diligence — consisting of a $50,000 diligence fee and a $25,000 legal fee deposit. Under the current four week budget attached to the cash collateral order, only $50,000 is set aside for due diligence. The Movants are requesting authority to pay the full $75,000, but with the remaining $25,000 to be budgeted in next month's cash collateral budget.

5. An Exit Facility is necessary for the Debtors to consummate the terms of the Proposed Plan, including funding the required adequate protection payment due June 1, 2010. Accordingly, obtaining the Court's approval of the reimbursement of the due diligence fees and expenses incurred by the Prospective Lender is critical toward enabling the Debtors to successfully emerge from bankruptcy, given the current hearing date for plan confirmation of May 24, 2010.

## BACKGROUND

6. On August 29, 2008 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). The Debtors are continuing in possession of their property and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The venue of the Debtors' chapter 11 cases and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The factual background relating to the Debtors' commencement of their chapter 11 cases is set forth in detail in the Hasham Affidavit.

9. The bases for the relief requested herein are sections 105(a), 363 and 503(b) of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure.

10. The Debtors, the Committee and HPG, and their respective advisors, have worked diligently to craft a reorganization plan that they believe is in the best interests of all parties to the chapter 11 cases. One of the key components to the success of their reorganization efforts is the placement of a new credit line to fund ongoing post-confirmation operations. To enable Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC and Hawaii Medical Center West, LLC (the "Reorganized Debtors") to have sufficient working capital when they emerge from chapter 11, the Debtors' senior management reached out to several financial institutions and investors having the apparent wherewithal to provide financing sufficient to enable the Debtors to consummate an exit financing facility. Indeed, the concept of a due diligence fee for a possible exit finance lender has been

discussed and even included as a line item in recent cash collateral budgets that have been approved by the Court. While the Movants are aware that St. Francis does not consent to the payment of the due diligence fee, such an objection simply serves to interfere and prohibit the Debtors, the Committee and HPG from pursuing confirmation of the Proposed Plan. Not allowing the due diligence fee to be paid will also effectively prohibit the Debtors from securing the necessary appropriate funds to satisfy the adequate protection requirement to St. Francis by June 1, 2010. The Debtors believe that the proposed terms of the Exit Facility are less expensive and more favorable to the interests of the bankruptcy estates than those of the other proposed credit facilities the Movants had found in the marketplace.

11. The Prospective Lender has proposed a term sheet for an Exit Facility, subject only to final due diligence, that will commence upon payment of the fee no later than April 6, 2010.[3] A copy of the term sheet is attached hereto as Exhibit A.

12. The process toward obtaining a commitment for the Exit Facility is ongoing and has matured from preliminary discussions to more detailed discussions and, finally, to finalizing an agreement on the terms of a possible committed Exit Facility. The Debtors and their professionals are presently working with the Prospective Lender so that the required due diligence can be

---

[3] Although the term sheet has an April 2 date for payment of the diligence fees, the Prospective Lender has orally agreed to extend that date through April 6.

completed as quickly as possible and the Movants can obtain a commitment for an Exit Facility that will allow them to confirm the Proposed Plan by the end of May.

## RELIEF REQUESTED

13. By this Motion, and pursuant to sections 105, 363 and 503 of the Bankruptcy Code and Bankruptcy Rule 6004, the Movants seek this Court's approval of the reimbursement of the actual bona fide fees and expenses incurred by the Prospective Lender during the due diligence period. It is anticipated that these fees and expenses will not exceed $75,000 in the aggregate -- $50,000 payable under this month's cash collateral budget; and $25,000 payable under next month's cash collateral budget. The Movants respectfully represent that the reimbursement of fees and expenses sought herein represents a sound exercise of the Debtors' business judgment and represent reasonable expenses that are beneficial to the Debtors' estates, and, therefore, should be approved by the Court. Any fee and expense reimbursement that is not used by the Prospective Lender will be returned to the Debtors.

## THE FEES AND COSTS

14. As is customary for financing commitments similar to the Exit Facility referenced herein, the Prospective Lender is entitled to the payment of certain fees and expenses associated with the negotiation and documentation of commitments.

15. Based on the experience of the Movants' professionals in similar transactions, the parties believe that the fees and expenses associated with the due diligence are appropriate, reasonable and at the market range for a financing of this size and nature. The aggregate amount of reimbursable fees and expenses must be placed in perspective considering that a commitment of $10-12 million is being sought. Moreover, once the parties obtain a commitment, the estates will derive substantial benefits far in excess of the fees and expenses associated with the due diligence. Accordingly, the Movants respectfully request that the Court authorize and approve the payment of such fees and expenses pursuant to sections 105, 363(b) and 503(b) of the Bankruptcy Code.

## BASIS FOR RELIEF

16. Section 363(b) of the Bankruptcy Code provides in pertinent part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Courts interpreting section 363(b) have held that transactions should be approved pursuant to this provision when, as here, they are supported by management's sound business judgment. See, e.g., Meyers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (citing Fulton State Bankr. v. Schipper (In re Schipper), 933 F.2d 513, 515 (7th Cir. 1991); Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),

722 F.2d 1063, 1070 (2d Cir. 1983); and Committee of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), court will generally not entertain objections to debtor's conduct."). Moreover, pursuant to section 105(a) of the Bankruptcy Code, a bankruptcy court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

17. Courts consistently and appropriately have been unwilling to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and will uphold a company's decisions as long as they are attributable to any "rational business purpose." Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992). Whether or not there are sufficient business reasons to justify the use of assets of the estates depends upon the facts and circumstances of each case. Lionel, 722, F.2d at 1071; In re Embrace Systems, 178 B.R. 112, 125 (Bankr. W.D. Mich. 1995). The Movants believe that reimbursement of the Prospective Lender's fees and expenses incurred during the required due diligence is without question supported by sound business reasons and in the best interest of their estates.

18. Moreover, the requested due diligence fees should be deemed approved administrative expenses that can be paid by the bankruptcy estates. Section 503(b)(1) of the Bankruptcy Code provides, in pertinent part:

> (b) after notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under 503(f) of this title, including —
>
> (1)(A) the material, necessary cost and expenses of preserving the estate,…

"As a general rule, an administrative expenses claimant must show that the claim was incurred post-petition, that it directly and substantially benefited the estate, and that it is an 'actual and necessary' expense, a test which includes necessary costs of administering or operating the estate's business." In re First Magnus Financial Corp., 390 B.R. 667, 674 (Bankr. D. Ariz., 2008), citing In re Hanna, 168 B.R. 386, 388 (9th Cir. BAP, 1994) and In re Metro Fulfillment, Inc., 294 B.R. 306, 309 (9th Cir. BAP, 2003); see also In re Continentalafa Dispensing, Co., 403 B.R. 653, 658 (Bankr. E.D Mo. 2009). Here, the Movants' ability to achieve exit financing to confirm a reorganization plan clearly will benefit the Debtors' estates as a whole. While the Movants understand that St. Francis has proposed a plan it believes should be confirmed, allowing the Movants to proceed with the Exit Financing would place all of the major constituencies on equal footing at the confirmation hearing for competing plans.

19. When a chapter 11 case reaches the stage when a joint plan of reorganization will imminently be filed and the plan proponents require an exit financing facility to achieve that end, deference should be given to a debtor's exercise of prudent business judgment in taking steps necessary to obtain financing commitments that are likely to increase the confidence of creditors, patients, physicians and business partners and lead to the debtor's ability to confirm a viable plan. For these reasons, if financing commitments on appropriate terms can be obtained, sound business judgment dictates that the Debtors take the necessary steps toward that end, including the reimbursement of the Prospective Lender's fees and expenses associated with due diligence.

20. In the exercise of their business judgment, the Movants believe that fees and expenses that will be incurred during the due diligence period are necessary expenses that should be paid by the Debtors. The fees represent a small fraction of the total commitment sought and are a relatively modest cost in a case of this size. The reasonableness of the transaction is supported by the benefits that the estates will derive; namely, a strong step toward confirming a plan.

21. Securing the Exit Facility is absolutely essential to permitting the Movants to finalize the chapter 11 proceedings and emerge from bankruptcy and by providing capital necessary for the Debtors to make the required adequate protection payment. Given their familiarity with the business and management of

the Debtors, the willingness of the Prospective Lender to conduct due diligence toward a commitment to an Exit Facility demonstrates the Prospective Lender's confidence in the Debtors' business and its willingness to commit to a productive relationship with the Reorganized Debtors upon their emergence from bankruptcy. Such relationship will be critically important to the success of the Prospective Debtors as they emerge from chapter 11.

22. Due to the short time frame within which the Debtors seek to complete their chapter 11 proceedings, it is imperative that they be able to move forward toward obtaining a commitment from the Prospective Lender — which requires payment by the Debtors of fees and expenses incurred by the Prospective Lender as part of its due diligence.

23. The payment of costs such as the requested due diligence fee have been approved by other courts. See, e.g., In re SLI, Inc., No. 02-12608 (MFW) (Bankr. D. Del. May 21, 2003) (other approving payment of due diligence expenses to prospective lenders in connection with a potential exit financing facility); In re ANC Rental Corp., No. 01-11200 (MFW) (Bankr. D. Del. Apr. 2, 2003) (order approving payment of due diligence expenses to prospective purchasers in connection with the potential sale of substantially all of the debtors' assets); ANC Rental, (Bankr. D. Del. Jan 23, 2003) (order approving payment of

due diligence and commitment fees to potential lenders in connection with efforts to obtain postpetition financing).

24. The Movants have demonstrated ample justification for the entry of an order permitting the Debtors to reimbursing the Prospective Lender's due diligence fees and expenses. For all of the reasons stated herein, the Movants believe that incurring such fees are an exercise of sound business judgment and a critical step toward their emergence from bankruptcy. The Movants therefore seek the Court's approval to reimburse such fees and expenses.

25. Finally, the Movants anticipate that St. Francis will argue that its lien on the Debtors' cash prohibits payment of the due diligence fees without St. Francis consent. The Movants submit that non-consensual use of cash collateral is justified in this instance because remedies for adequately protecting St. Francis have already been put in place by the Court pursuant to the Memorandum and Decision Regarding Adequate Protection, Docket No. 1109, entered on March 4, 2010.

## NOTICE

26. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) the administrative agents for the Debtors' prepetition secured lenders or their respective counsel; (iv) any party requesting

notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure; and (v) the Prospective Lender. The Movants submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Movants respectfully request the entry of an order (i) approving the payment of the due diligence fees and expenses up to $75,000; and (ii) granting such other and further relief as may be just and proper.

Dated: Honolulu, Hawaii, March 30, 2010.

/s/ Christopher J. Muzzi
CHRISTOPHER J. MUZZI
CO-COUNSEL FOR DEBTORS
AND DEBTORS IN POSSESSION