McCORRISTON MILLER MUKAI MacKINNON LLP
JONATHAN STEINER (Bar No. 006084)
Five Waterfront Plaza, 4th Floor
500 Ala Moana Blvd.
Honolulu, HI 96813
Telephone (808) 529-7300

HENNIGAN, BENNETT & DORMAN LLP
BRUCE BENNETT (Admitted *Pro Hac Vice*)
JOSHUA M. MESTER (Admitted *Pro Hac Vice*)
865 South Figueroa Street, Suite 2900
Los Angeles, CA 90017
Telephone (213) 694-1200

*Attorneys for St. Francis Healthcare System of
Hawaii, St. Francis Medical Center, and
St. Francis Medical Center - West*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF HAWAII**

| | |
|---|---|
| In re | Case No. 08-01369 |
| | Chapter 11 |
| CHA Hawaii, LLC, et al.,[1] | (Jointly Administered) |
| Debtors. | Judge: Hon. Robert J. Faris |
| This document relates to: | Relates to Docket No. 1141 |
| ALL CASES | |

**ST. FRANCIS HEALTHCARE SYSTEM OF HAWAII'S,
ST. FRANCIS MEDICAL CENTER'S, AND ST. FRANCIS MEDICAL
CENTER – WEST'S OBJECTION TO JOINT MOTION FOR THE ENTRY
OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363(b), AND 503(b)
AUTHORIZING PAYMENT OF FEES AND EXPENSES FOR
<u>PROSPECTIVE EXIT FINANCING LENDER</u>**

---

[1] The "Debtors" are as follows: CHA Hawaii, LLC, a Delaware limited liability company; Hawaii Medical Center LLC, a Hawaii limited liability company; Hawaii Medical Center East, LLC, a Hawaii limited liability company; and Hawaii Medical Center West, LLC, a Hawaii limited liability company.

St. Francis Healthcare System of Hawaii, St. Francis Medical Center, and St. Francis Medical Center - West (collectively, "St. Francis") hereby object to the "Joint Motion For The Entry Of An Order Pursuant To 11 U.S.C. §§ 105, 363(b), And 503(b) Authorizing Payment Of Fees And Expenses For Prospective Exit Financing Lender" [Docket No. 1141] (the "Motion") because the Debtors have not demonstrated that they are entitled to use St. Francis' cash collateral without St. Francis' consent and for such other reasons as may be demonstrated at the hearing on the Motion.

Through the Motion, the Debtors and the Official Committee of Unsecured Creditors (the "Creditors' Committee") request authority to pay a diligence fee to a prospective lender who may provide an exit facility for the Debtors' and the Creditors' Committee's recently filed joint plan of reorganization. Noticeably absent from the Motion is any request for authority to use cash collateral without St. Francis' consent or any offer of adequate protection to support such a request. St. Francis has a lien against all of the Debtors' cash. St. Francis has not consented to the use of its cash collateral for the payment of a diligence fee to any lender for an exit facility related to a competing plan of reorganization. Paragraph 6 of the Seventeenth Cash Collateral Order provides:

> Notwithstanding anything to the contrary in the Final
> Cash Collateral Order, this Order or the Budget, nothing
> in this Order nor the Final Cash Collateral Order shall be
> deemed to constitute a consent by St. Francis to the use of
> collateral or property of the estate for the payment of

784066.2

> professional fees or due diligence fees and it is contemplated that those issues, as well as any other objection to the allowance and payment of those fees and expenses, shall be addressed in connection with such motions and applications for allowance or payment of such amounts as may be filed with the Court.

Docket No. 1146. Identical language also appears in the Thirteenth, Fourteenth, Fifteenth, and Sixteenth Cash Collateral Orders. Accordingly, the Debtors and the Creditors' Committee must prove that St. Francis is adequately protected in order to use cash collateral.

Section 363(p) of the Bankruptcy Code is clear that the Debtors have "the burden of proof on the issue of adequate protection." 11 U.S.C. § 363(p). The Debtors did not meet this burden in contesting St. Francis' Adequate Protection Motion. In its Memorandum of Decision On Motion For Adequate Protection [Docket No. 1109] (the "<u>Memorandum of Decision</u>"), the Court found that St. Francis is not adequately protected through its junior liens on cash and healthcare accounts receivable for, among others, the following reasons:

> First, the debtors' accounts have shrunk during the case. According to the reconciliation statements attached to the debtors' monthly operating reports, the debtors' accounts were $19,745,786 as of September 30, 2008. As of December 31, 2009, they amounted to only $15,168,520, a decline of 23%.
>
> Second, the debtors' reported operating margin (operating income minus operating expense, expressed as a percentage of operating income) has been negative since the beginning of the case. . . .

784066.2

> Third, the debtor provides no information about the "appropriate discounts related to collection" which is used to value its accounts. . . . Because the estimated reported value is so close to the amount of accounts reported in the monthly operating report, it is not likely that the estimated value is a "worst case" estimate.

Memorandum of Decision at 15-16.

The Debtors offer no evidence that their financial situation has improved since the Court issued its Memorandum of Decision on March 4, 2010. In fact, the evidence demonstrates just the opposite – the Debtors' financial condition has significantly deteriorated. The most recent monthly operating reports show that the Debtors continue to have negative operating margins. Even though the February monthly operating report shows a slight increase in accounts receivable, the Debtors have still not offered any evidence that the amounts in the monthly operating reports show the worst estimate of the real value of the accounts receivable.

But more importantly, the Debtors' cash collateral budgets (prepared by the Debtors) show that the Debtors' cash balances have dropped significantly and are projected to decline to nearly half of what they were at the beginning of February 2010. In the budget attached to the Thirteenth Cash Collateral Order, the Debtors stated that they had approximately $8.058 million in cash as of February 5, 2010. In the budget attached to the Seventeenth Cash Collateral Order entered on March 31, 2010, the Debtors stated that they have $5.77 million of cash on hand as of March 26, 2010 and project to only have $4.108 million of cash as of April 30,

-4-
784066.2

2010.[2] The Debtors simply cannot prove that St. Francis is adequately protected. Indeed, Siemens recently received another $250,000 principal payment due to the Debtors' declining cash balances. *See* Seventeenth Cash Collateral Order at ¶ 1.

Accordingly, the Debtors should not be permitted to use cash collateral to pay a diligence fee that is not related to continuing to operate the hospitals and the Motion should be denied.

DATED: April 4, 2010

McCORRISTON MILLER MUKAI MacKINNON, LLP
Jonathan Steiner

HENNIGAN, BENNETT & DORMAN LLP

*/s/ Joshua M. Mester*
Bruce Bennett
Joshua M. Mester

*Attorneys for St. Francis Healthcare System of Hawaii, St. Francis Medical Center, and St. Francis Medical Center - West*

---

[2] The Debtors have confirmed that these cash balances reflect all of the Debtors' cash, including the cash in the St. Francis Collateral Account, in which St. Francis has a first priority security interest.