MCDONALD HOPKINS LLC

SHAWN M. RILEY      (0037235) (Admitted Pro Hac Vice)
PAUL W. LINEHAN    (0070116) (Admitted Pro Hac Vice)
MICHAEL J. KACZKA  (0076548) (Admitted Pro Hac Vice)
600 Superior Avenue, East, Suite 2100
Cleveland, OH  44114-2653
Telephone:  (216) 348-5400
Facsimile:  (216) 348-5474
Email:      **sriley@mcdonaldhopkins.com**
            **plinehan@mcdonaldhopkins.com**
            **mkaczka@mcdonaldhopkins.com**

MOSELEY BIEHL TSUGAWA LAU & MUZZI
A HAWAII LIMITED LIABILITY LAW COMPANY

CHRISTOPHER J. MUZZI (6939)
Alakea Corporate Tower
1100 Alakea Street, 23rd Floor
Honolulu, HI  96813
Telephone:  (808) 531-0490
Facsimile:  (808) 534-0202
Email:      **cmuzzi@hilaw.us**

Co-Counsel to the Debtors and Debtors in Possession

ALSTON & BIRD, LLP

MARTIN G. BUNIN
CRAIG E. FREEMAN
90 Park Avenue
New York, NY 10016
Telephone:  212.210.9400
Facsimile:  212.210.9444
Email:      **craig.freeman@alston.com**

Co-Counsel for Official Committee of Unsecured Creditors

{2156852:4}

WAGNER CHOI & VERBRUGGE

JAMES A. WAGNER
CHUCK C. CHOI
745 Fort Street, Suite 1900
Honolulu, HI 96813
Telephone: 808.533.1877
Facsimile: 808.566.6900
Email: **cchoi@hibklaw.com**

Co-Counsel for Official Committee of Unsecured Creditors

KESSNER UMEBAYASHI BAIN & MATSUNAGA

STEVEN GUTTMAN
220 South King Street, Suite 1900
Honolulu, HI 96813
Telephone: (808) 536-1900
Email: **sguttman@kdugm.com**

Counsel for Hawaii Physicians Group, LLC

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>CHA Hawaii, LLC., et al.,<br><br>    Debtors. | Case No. 08-01369<br>(Chapter 11 Cases)<br>(Jointly Administered)<br><br>Hearing:<br>Date: May 26, 2010<br>Time: 9:30 a.m.<br>Judge: Honorable Robert J. Faris |
| This document relates to:<br>All Cases | |

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed 05/28/10  Page 2 of 134

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER UNDER
11 U.S.C. §§ 1126 AND 1129(A) AND (B) AND FED. R. BANKR. P. 3020
CONFIRMING THE FIRST AMENDED JOINT PLAN OF
REORGANIZATION FOR HAWAII MEDICAL CENTER, LLC, HAWAII
MEDICAL CENTER EAST, LLC, AND HAWAII MEDICAL CENTER
WEST, LLC PROPOSED BY THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS, HAWAII MEDICAL CENTER, LLC,
HAWAII MEDICAL CENTER EAST, LLC, HAWAII MEDICAL CENTER
WEST, LLC, AND HAWAII PHYSICIANS GROUP, LLC**

WHEREAS, Hawaii Medical Center, LLC, ("HMC"), Hawaii Medical

Center East, LLC ("HMCE") and Hawaii Medical Center West, LLC, debtors and

debtors-in-possession in the above-captioned cases (each an "Operating Debtor"

and collectively, the "Operating Debtors"), the Official Committee of Unsecured

Creditors (the "Creditors Committee") and the Hawaii Physicians Group, LLC

("HPG" and together with the Operating Debtors and the Creditors Committee, the

"Plan Proponents") caused the First Amended Disclosure Statement for the First

Amended Joint Plan of Reorganization for Hawaii Medical Center, LLC, Hawaii

Medical Center East, LLC, and Hawaii Medical Center West, LLC Proposed by

the Official Committee of Unsecured Creditors, Hawaii Medical Center, LLC,

Hawaii Medical Center East, LLC, Hawaii Medical Center West, LLC, and Hawaii

Physicians Group, LLC (the "Disclosure Statement"), the First Amended Joint

Plan of Reorganization for Hawaii Medical Center, LLC, Hawaii Medical Center

East, LLC, and Hawaii Medical Center West, LLC Proposed by the Official

Committee of Unsecured Creditors, Hawaii Medical Center, LLC, Hawaii Medical

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed  05/28/10   Page 3 of 134

Center East, LLC, Hawaii Medical Center West, LLC, and Hawaii Physicians Group, LLC (as subsequently amended, revised or modified, the "Joint Plan"),[1] and the appropriate form of Ballots (the Disclosure Statement, the Joint Plan and the Ballots, collectively, the "Solicitation Materials") to be distributed to holders of Class 5 SFHS Claims, Class 6 General Unsecured Claims and Class 7 Convenience Claims to solicit votes to accept or reject the Joint Plan; and

WHEREAS, the Court set May 17, 2010 at 5:00 p.m. (Pacific Time) as the voting deadline by which time all Holders of Class 5, Class 6 and Class 7 Claims were required to return their completed Ballots; and

WHEREAS, on August 29, 2008 the Operating Debtors each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code");[2] and

WHEREAS, on April 13, 2010, the Court entered the Order Approving Disclosure Statement for Joint Plan of Reorganization for Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, and Hawaii Medical Center West, LLC Proposed by the Official Committee of Unsecured Creditors, Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, Hawaii Medical Center West,

---

[1] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Joint Plan, a copy of which is annexed hereto as Exhibit A. Any term used in the Joint Plan or this Confirmation Order that is not defined in the Joint Plan or this Confirmation Order (defined below), but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

[2] CHA Hawaii, LLC ("CHA Hawaii") also filed for chapter 11 on this date, but the Joint Plan is not a plan of reorganization for CHA Hawaii.

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed  05/28/10  Page 4 of 134

LLC, and Hawaii Physicians Group, LLC, Docket No. 1179 (the "Disclosure Statement Order"); and

WHEREAS, the Affidavit of Publication of Grace Santos, Docket No. 1207, was filed on May 3, 2010; the Supplemental Certificate of Monika Parel re: Documents Served On or Before May 6, 2010 [Docket Nos. 1174, 1175, 1179 and 1187], Docket No. 1252, was filed on May 7, 2010; the Certificate of Service of Karen M. Wagner re: Documents Served On or Before May 6, 2010 [Docket Nos. 1174, 1175, 1179 and 1187], Docket No. 1254, was filed on May 7, 2010; and the Certificate of Service of Christopher J. Muzzi Regarding Notice of Publication of Notice of Hearing on Confirmation of the Joint Plan of Reorganization Filed by Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, Hawaii Medical Center West, LLC, the Official Committee of Unsecured Creditors, and Hawaii Physicians Group, LLC and Related Procedures and Deadlines, Docket No. 1274, was filed on May 12, 2010; and

WHEREAS, the Operating Debtors filed the Certificate of Service regarding publication on behalf of representatives of The Wall Street Journal (national edition), the Honolulu Advertiser, and the Honolulu Star-Bulletin, on May 12, 2010 (Docket No. 1274), attesting to the fact that the notice of the Confirmation Hearing was published in accordance with the Disclosure Statement Order; and

WHEREAS, on May 3, 2010, the Plan Proponents filed the Declaration of Salim Hasham in Support of Confirmation of the Joint Plan of Reorganization for Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, and Hawaii Medical Center West, LLC Proposed by the Official Committee of Unsecured Creditors, Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, Hawaii Medical Center West, LLC, and Hawaii Physicians Group, LLC (as subsequently amended or modified, the "Hasham Declaration"); and

WHEREAS, on May 3, 2010, the Plan Proponents filed the Written Direct Testimony of Daniel S. Polsky - Deloitte Financial Advisory Services LLP (Exhibits 1-9) (the "Polsky Declaration"); and

WHEREAS, on May 20, 2010, the Karen M. Wagner filed the Declaration of Karen Wagner of Kurtzman Carson Consultants, LLC Regarding Voting Results for First Amended Joint Plan of Reorganization for Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, and Hawaii Medical Center West, LLC Proposed by the Official Committee of Unsecured Creditors, Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, Hawaii Medical Center West, LLC, and Hawaii Physicians Group, LLC, Docket No. 1294 (the "Wagner Declaration"); and

WHEREAS, on May 21, 2010, the Plan Proponents filed the Memorandum in Support of the First Amended Joint Plan of Reorganization for Hawaii Medical

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed 05/28/10  Page 6 of 134

Center, LLC, Hawaii Medical Center East, LLC, and Hawaii Medical Center West, LLC Proposed by the Official Committee of Unsecured Creditors, Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, Hawaii Medical Center West, LLC, and Hawaii Physicians Group, LLC, Docket No. 1295 (the "Memorandum"); and

WHEREAS, the following objections were filed to the Joint Plan: International Longshore and Warehouse Union Local 142's Position Statement Regarding: (1) Second Amended Joint Plan of Reorganization for Hawaii Medical Center, LLC, Hawaii Medical Center West, LLC, and Hawaii Medical Center East, LLC, Proposed by St. Francis Healthcare System of Hawaii, St. Francis Medical Center, and St. Francis Medical Center — West Filed March 12, 2010; and (2) First Amended Joint Plan of Reorganization for Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, and Hawaii Medical West, LLC Proposed by the Official Committee of Unsecured Creditors, Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, Hawaii Medical Center West, LLC, and Hawaii Physicians Groups, LLC, Filed April 10, 2010, Docket No. 1231; Laborers' International Union of North America, Local 368's Position Statement Regarding (1) Second Amended Joint Plan of Reorganization for Hawaii Medical Center, LLC, Hawaii Medical Center West, LLC, and Hawaii Medical Center East, LLC, Proposed by St. Francis Healthcare System of Hawaii, St. Francis Medical Center,

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed  05/28/10   Page 7 of 134

and St. Francis Medical Center — West Filed March 12, 2010, Docket No. 1232; and (2) First Amended Joint Plan of Reorganization for Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, and Hawaii Medical West, LLC Proposed by the Official Committee of Unsecured Creditors, Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, Hawaii Medical Center West, LLC, and Hawaii Physicians Groups, LLC, Filed April 10, 2010; Laborers' International Union of North America, Local 368's *First Amended* Position Statement Regarding: (1) Second Amended Joint Plan of Reorganization for Hawaii Medical Center, LLC, Hawaii Medical Center West, LLC, and Hawaii Medical Center East, LLC, Proposed by St. Francis Healthcare System of Hawaii, St. Francis Medical Center, and St. Francis Medical Center — West Filed March 12, 2010; and (2) First Amended Joint Plan of Reorganization for Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, and Hawaii Medical West, LLC Proposed by the Official Committee of Unsecured Creditors, Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, Hawaii Medical Center West, LLC, and Hawaii Physicians Groups, LLC, filed April 10, 2010, Docket No. 1285; Limited Objection to First Amended Joint Plan of Reorganization for Hawaii Medical Center East, LLC, and Hawaii Medical Center West, LLC, Proposed by the Official Committee of Unsecured Creditors, Hawaii Medical East, LLC, Hawaii Medical Center East, LLC, Hawaii Medical Center West, LLC, and Hawaii

{2156852:2}

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed  05/28/10  Page 8 of 134

Physicians Group, LLC, filed on May 14, 2010, Docket No. 1281; U.S. Trustee's Limited Objection to Confirmation of First Amended Joint Plan of Reorganization for Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, and Hawaii Medical West, LLC Proposed by the Official Committee of Unsecured Creditors, Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, Hawaii Medical Center West, LLC, and Hawaii Physicians Group, LLC filed on May 14, 2010, Docket No. 1283; and Motion to Intervene as Plaintiff/Creditor Under FRBP and Rules 24(A), 24(B), filed by Jonathan Lee Riches filed on May 7, 2010, Docket No. 1248 (the foregoing, collectively, the "Objections"); and

WHEREAS, on May 21, 2010, the Plan Proponents filed the Comprehensive Response to Various Objections to the First Amended Joint Plan of Reorganization for Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, and Hawaii Medical West, LLC Proposed by the Official Committee of Unsecured Creditors, Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, Hawaii Medical Center West, LLC, and Hawaii Physicians Group, LLC, Docket No. 1296 (the "Global Response"); and

WHEREAS, the Confirmation Hearing was held on May 26, 2010; and

WHEREAS, the Objections were resolved and upon entry of this order (the "Confirmation Order") will be deemed withdrawn or were overruled on the merits

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed 05/28/10  Page 9 of 134

by the Bankruptcy Court on the record and pursuant to this Confirmation Order; and

NOW, THEREFORE, based upon the Court's review of the Joint Disclosure Statement, the Joint Plan, the Solicitation Materials, the Hasham Declaration, the Polsky Declaration, the Memorandum, the Objections, the Global Response, and upon (a) the agreement of the Operating Debtors, the Creditors Committee, HPG, SFHS and Siemens Financial Services, Inc. as stated on the record and embodied in the Joint Plan attached hereto as <u>Exhibit A</u>, (b) the Court's statements on the record, including the consensual resolution of the Objections, (c) all of the memoranda filed in connection with, and all of the evidence proffered or adduced at, the Confirmation Hearing, and (d) the entire record of the Chapter 11 Cases; and after due deliberation thereon and good cause appearing therefor:

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A. <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))</u>. This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Joint Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and the Court has exclusive jurisdiction to determine

---

[3] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed 05/28/10   Page 10 of 134

whether the Joint Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.   <u>Judicial Notice</u>.  This Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and argument made, proffered or adduced at, the hearings held before the Court during the pendency of the Chapter 11 Cases.

C.   <u>Burden of Proof</u>.  The Plan Proponents, as proponents of the Joint Plan, have met their burden of proving the elements of section 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

D.   <u>Adequacy of Solicitation and Disclosure Statement</u>.   Section 1126 of the Bankruptcy Code applies to the solicitation of acceptances and rejections of the Joint Plan.  The Plan Proponents properly relied on the exemption from the registration requirements of the Securities Act of 1933 (as amended, and including the rules and regulations promulgated thereunder, the "Securities Act"), and no other non-bankruptcy law applies to the solicitation.   The solicitation must comply with section 1126 of the Bankruptcy Code and the Disclosure Statement must contain "adequate information," as such term is defined in section 1125 of the Bankruptcy Code.  The Disclosure Statement contained adequate information, within the meaning of and for all purposes

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed 05/28/10  Page 11 of 134

of sections 1125 and 1126 of the Bankruptcy Code, and was previously approved by the Court. Votes for acceptance or rejection of the Joint Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018 and all other applicable provisions of the Bankruptcy Code and all other rules, laws and regulations. All procedures used to distribute to the applicable holders of Claims and to tabulate Ballots were fair and conducted in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Bankruptcy Court, and all other applicable rules, laws and regulations.

E. <u>Transmittal and Mailing of Materials; Notice</u>. The notice of the Confirmation Hearing was served in compliance with the Disclosure Statement Order, and such service was adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing and the other deadlines described in the Disclosure Statement Order was given in compliance with the Bankruptcy Rules and the Disclosure Statement Order, and no other or further notice is or shall be required.

F. <u>Impaired Classes that Have Voted to Accept the Joint Plan</u>. As evidenced by the Wagner Declaration, which certified both the method and results of the voting, Class 6 and Class 7 are impaired and have voted to accept the

U.S. Bankruptcy Court - Hawaii #08-01369 Dkt # 1316 Filed 05/28/10 Page 12 of 134

Joint Plan pursuant to the requirements of sections 1124 and 1126 of the Bankruptcy Code. Thus at least one impaired class of Claims has voted to accept the Joint Plan.

G. <u>Classes Deemed to Have Accepted the Joint Plan</u>. Class 1 Non-Tax Priority Claims, Class 2 Other Secured Claims, Class 3 Unimpaired Employee Claims, and Class 4 Siemens Secured Lender Claim are not impaired under the Joint Plan and are deemed to have accepted the Joint Plan pursuant to section 1126(f) of the Bankruptcy Code.

H. <u>Classes Deemed to Have Rejected the Joint Plan</u>. Class 8 Interests will not receive any distribution under the Joint Plan and are deemed to have rejected the Joint Plan pursuant to section 1126(g) of the Bankruptcy Code.

I. <u>Joint Plan Complies with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Joint Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(i) <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>. In addition to Administrative Claims and the Priority Tax Claims, which need not be classified, the Joint Plan designates eight Classes of Claims and Interests. The Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed 05/28/10   Page 13 of 134

Interests created under the Joint Plan, and such Classes do not unfairly discriminate between holders of Claims and Interests.  Thus, the Joint Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)    Specify Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Articles II and III of the Joint Plan specify that Class 1 Non-Tax Priority Claims, Class 2 Other Secured Claims, Class 3 Unimpaired Employee Claims, and Class 4 Siemens Secured Lender Claim are unimpaired under the Joint Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(iii)    Specify Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  Articles II and III of the Joint Plan designate Class 5 SFHS Claim, Class 6 General Unsecured Claims, Class 7 Convenience Claims, and Class 8 Interests as impaired and specify the treatment of Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(iv)    No Discrimination (11 U.S.C. § 1123(a)(4)).  The Joint Plan provides for the same treatment by the Plan Proponents for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed 05/28/10   Page 14 of 134

(v)    <u>Implementation of Joint Plan (11 U.S.C. § 1123(a)(5))</u>. The Joint Plan provides adequate and proper means for its implementation, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(vi)    <u>Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))</u>. A new operating agreement of the Reorganized Debtors will provide that the Reorganized Debtors will not issue non-voting equity securities to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code. Thus, the requirements of section 1123(a)(6) of the Bankruptcy Code are satisfied.

(vii)    <u>Selection of Officers and Directors (11 U.S.C. § 1123(a)(7))</u>. Prior to the Confirmation Hearing, the Plan Proponents properly and adequately disclosed the identity and affiliations of all individuals proposed to serve on or after the Effective Date as officers or directors of the Reorganized Debtors and the manner of selection and appointment of such individuals or entities is consistent with the interests of Claim and Interest Holders and with public policy, and accordingly satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

(viii)  <u>Additional Joint Plan Provisions Appropriate (11 U.S.C. § 1123(b))</u>. The Joint Plan's provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

J.  Compliance with Bankruptcy Rule 3016.  The Joint Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement with the Court satisfies Bankruptcy Rule 3016(b).

K.  Compliance with Bankruptcy Rule 3017.  The Plan Proponents have given notice of the hearing to approve the Disclosure Statement as required by Bankruptcy Rule 3017(a).  The Plan Proponents have given notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d).  The Solicitation Materials were transmitted to record holders of the Class 5 SFHS Claim, Class 6 General Unsecured Claims and Class 7 Convenience Claims and notice by publication was also given, which under the circumstances of the Chapter 11 Cases the Court finds sufficient, pursuant to Bankruptcy Rule 3017(e).

L.  Compliance with Bankruptcy Rule 3018.  The solicitation of votes to accept or reject the Joint Plan satisfies Bankruptcy Rule 3018.  The Solicitation Materials, including the Joint Plan, were transmitted to all creditors entitled to vote on the Joint Plan, sufficient time was prescribed for such creditors to accept or reject the Joint Plan, and the Solicitation Materials and related solicitation procedures comply with section 1126 of the Bankruptcy Code, thereby satisfying the requirements of Bankruptcy Rule 3018.

M. **Settlement or Adjustment, or Retention and Enforcement, of Claims or Interests Belonging to the Operating Debtors or Their Estates (11 U.S.C. § 1123(b)(3)).** Subject to the release, exculpation and other provisions of the Joint Plan, in accordance with section 1123(b)(3) of the Bankruptcy Code, the Joint Plan provides for the Operating Debtors and their Estates to retain the Litigation Claims. On the Effective Date, the Litigation Claims shall be vested in the Reorganized Debtors. The Reorganized Debtors, as the successors in interest to the Operating Debtors and their Estates, may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) any or all of the Litigation Claims without application to the Bankruptcy Court. Notwithstanding the foregoing, from and after the Effective Date, neither the Reorganized Debtors nor anyone else acting on behalf of the Operating Debtors or their Estates shall commence any suit or other proceeding for the enforcement of the Avoidance Actions.

N. **Joint Plan Complies with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).** The Operating Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

       (i)    The Operating Debtors are proper debtors under section 109 of the Bankruptcy Code.

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed 05/28/10   Page 17 of 134

(ii)    The Plan Proponents have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court.

(iii)    The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order in transmitting the Joint Plan, the Disclosure Statement, the Ballots and related documents and notices and in soliciting and tabulating votes on the Joint Plan.

O.    Joint Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).    The Plan Proponents have proposed the Joint Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In determining that the Joint Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the formulation of the Joint Plan, including the Hasham Declaration, the Polsky Declaration, and the settlement of the Objections.  The Operating Debtors filed the Chapter 11 Cases and the Plan Proponents proposed the Joint Plan with legitimate and honest purposes including, among other things:  (a) the reorganization of the Operating Debtors' businesses, (b) the preservation and maximization of the Operating Debtors' business enterprise value through a reorganization under chapter 11, (c) restructuring of the Operating Debtors'

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed 05/28/10  Page 18 of 134

debt structure, (d) maximization of the recovery to Holders of Claims under the unique circumstances of these cases, and (e) preserving jobs of the Operating Debtors' employees in connection with the Reorganized Debtors' go-forward operations. Furthermore, the Joint Plan, as proposed and as revised, represents extensive arms' length negotiations among the Operating Debtors, the Creditors Committee, HPG and SFHS, as well as each group's legal and financial advisors, and reflects the best interests of the Operating Debtors' Estates and creditors.

P.    Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by the Operating Debtors or by a person issuing securities or acquiring property under the Joint Plan, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Joint Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

Q.    Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5)). The Plan Proponents have complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliation of seven of the initial directors of the Reorganized Debtors were identified in the Plan Supplement filed on May 19, 2010. The methodology for selecting the remaining two directors of the

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed 05/28/10   Page 19 of 134

Reorganized Debtors was disclosed to the Bankruptcy Court at the Confirmation Hearing. Existing on-site senior officers of the Operating Debtors will remain in place after the Effective Date. The appointment to, or continuance in, such offices of all such persons is consistent with the interests of holders of Claims against and Interests in the Operating Debtors and with public policy. No insiders (other than current on-site officers of the Operating Debtors) are proposed to serve as officers or directors of the Reorganized Debtors.

R.   No Rate Changes (11 U.S.C. § 1129(a)(6)). After confirmation of the Joint Plan, the Operating Debtors' businesses will not involve rates established or approved by, or otherwise subject to, any governmental regulatory commission. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in the Chapter 11 Cases.

S.   Best Interests of Creditors (11 U.S.C. § 1129(a)(7)). The Joint Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The Polsky Declaration (and exhibits thereto) and the liquidation analysis attached as Appendix F to the Disclosure Statement and other evidence proffered or adduced at the Confirmation Hearing (a) are persuasive and credible, (b) have not been controverted by other evidence and (c) establish that each holder of an Impaired Claim or Interest either has accepted the Joint Plan or will receive

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed 05/28/10   Page 20 of 134

or retain under the Joint Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Operating Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

T.  Acceptance or Rejection by Certain Classes (11 U.S.C. § 1129(a)(8)). Class 1 Non-Tax Priority Claims, Class 2 Other Secured Claims, Class 3 Unimpaired Employee Claims, and Class 4 Siemens Secured Lender Claim are conclusively presumed to have accepted the Joint Plan under section 1126(f) of the Bankruptcy Code. Class 6 General Unsecured Claims and Class 7 Convenience Claims have voted to accept the Joint Plan in accordance with section 1126(c) and (d) of the Bankruptcy Code. Class 5 SFHS Claim voted to reject the Joint Plan, but SFHS does not object to confirmation of the Joint Plan based upon the modifications included in the Joint Plan and other agreements as set forth on the record at the Confirmation Hearing. Class 8 Interests are not entitled to receive or retain any property under the Joint Plan and, therefore, are deemed to have rejected the Joint Plan pursuant to section 1126(g) of the Bankruptcy Code. Although section 1129(a)(8) has not been satisfied with respect to Classes 5 and 8, the Joint Plan is confirmable because the Joint Plan satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes. As set forth

in the Wagner Declaration, the percentages of Holders of Claims in Class 6 and Class 7 entitled to vote that voted to accept the Joint Plan are as follows:

| Class Entitled to Vote | Percentage Accepting (Dollar Amount) | Percentage Accepting (Number of Claims) |
|---|---|---|
| Class 6 | 99.48% | 86.54% |
| Class 7 | 94.02% | 95.65% |

U.    Treatment of Administrative, Priority and Tax Claims (11 U.S.C. § 1129(a)(9)).   The treatment of Administrative Claims and Priority Tax Claims pursuant to Section 3.1 of the Joint Plan satisfies the requirements of section 1129(a)(9)(A), (B) and (C) of the Bankruptcy Code.

V.    Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).  Class 6 and Class 7 have voted to accept the Joint Plan.  After excluding votes of insiders, Class 6 and Class 7 have still voted to accept the Joint Plan.  Therefore, the requirement of section 1129(a)(10) of the Bankruptcy Code that at least one Class of Claims against or Interests in the Operating Debtors that is impaired under the Joint Plan has accepted the Joint Plan, determined without including any acceptance of the Joint Plan by any insider, has been satisfied.

W.    Feasibility (11 U.S.C. § 1129(a)(11)).   The Disclosure Statement, the Hasham Declaration, the Polsky Declaration, as well as other evidence proffered or adduced at the Confirmation Hearing, with respect to feasibility (a) is persuasive and credible and (b) establishes that confirmation of the

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed 05/28/10   Page 22 of 134

Joint Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

X.   Payment of Fees (11 U.S.C. § 1129(a)(12)).  All fees payable under section 1930 of title 28, United States Code, as determined by the Court, have been paid or will be paid on the Effective Date pursuant to Section 12.4 of the Joint Plan, thus satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

Y.   Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).   Section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Joint Plan.

Z.   Domestic Support Obligation (11 U.S.C. § 1129(a)(14)).   Section 1129(a)(14) of the Bankruptcy Code is inapplicable to the Joint Plan.

AA.  Claims Against Debtors that Are Individuals (11 U.S.C. § 1129(a)(15)). Section 1129(a)(15) of the Bankruptcy Code is inapplicable to the Joint Plan.

BB.  Transfers Made under Non-Bankruptcy Law (11 U.S.C. § 1129(a)(15)).  All transfers of property under the Joint Plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation that is not a monopoly, business or commercial corporation.

CC. **Principal Purpose (11 U.S.C. § 1129(d)).** The principal purpose of the Joint Plan is neither the avoidance of taxes nor the avoidance of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e et seq.), and no governmental unit has objected to the confirmation of the Joint Plan on any such grounds. The Joint Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

DD. **No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).** Class 5 SFHS Claim has voted to reject the Joint Plan. Class 8 Interests is deemed to have rejected the Joint Plan pursuant to section 1126(g) of the Bankruptcy Code because the Holders of such Interests will not receive or retain any property under the Joint Plan on account of such Interests. SFHS is not objecting to the treatment provided to SFHS pursuant to the modifications to the Joint Plan. The Plan Proponents presented uncontroverted evidence at the Confirmation Hearing that the Joint Plan does not discriminate unfairly and is fair and equitable with respect to Class 5 and Class 8 as required by section 1129(b)(1) of the Bankruptcy Code. Thus, the Joint Plan may be confirmed notwithstanding the Plan Proponents' failure to satisfy section 1129(a)(8) of the Bankruptcy Code. Upon confirmation and the occurrence of the Effective Date, the Joint Plan shall be binding upon the members of Class 5 and Class 8.

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed 05/28/10  Page 24 of 134

EE. <u>Revisions to the Joint Plan</u>. The revisions incorporated in the Joint Plan attached hereto as <u>Exhibit A</u> hereto constitute certain non-material or technical changes and/or material changes with respect to particular Claims or Interests by agreement with holders of such Claims or Interests that do not materially adversely affect or change the treatment of any Claims or Interests. Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Joint Plan.

FF. <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. Based on the record before the Court in the Chapter 11 Cases, the Plan Proponents and each of their respective directors, officers, employees, shareholders, members, agents, advisors, accountants, investment bankers, consultants, attorneys, and other representatives have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances of the Joint Plan and their participation in the activities described in section

1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation and injunctive provisions set forth in Article X of the Joint Plan.

GG. <u>No Objection to Assumed Contracts and Leases</u>. No counterparty to any executory contract or unexpired lease to be assumed pursuant to Article VII of the Joint Plan has objected to the assumption thereof or any such objections have been withdrawn.

HH. <u>No Liquidation</u>. Because the Joint Plan does not provide for the liquidation of all or substantially all of the property of the Operating Debtors' Estates and the Reorganized Debtors will engage in business following consummation of the Joint Plan, section 1141(d)(3) is not applicable.

II. <u>Substantive Consolidation for the Purposes of Treating Impaired Claims</u>. The Court finds that substantive consolidation of the Operating Debtors and their Estates in the Chapter 11 Cases solely for voting, confirmation, and distribution purposes under the Joint Plan will (a) maximize and facilitate the prompt distribution to the Operating Debtors' creditors and (b) permit the Operating Debtors' creditors to avoid the harm that likely would result absent substantive consolidation and confirmation of the Joint Plan embodying it. The Court further finds that such limited substantive

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed 05/28/10  Page 26 of 134

consolidation will not unduly harm any creditor or party in interest and is in the best interest of the Operating Debtors, their Estates and creditors.

JJ.   <u>Satisfaction of Confirmation Requirements</u>.   The Joint Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and Section 9.1 of the Joint Plan.

KK.   <u>Retention of Jurisdiction</u>.   Subject to the provisions of this Confirmation Order, the Court may properly retain jurisdiction over the matters set forth in Article XI of the Joint Plan.

LL.   <u>Rule 9019 Settlement; Releases and Discharges</u>.   Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under, described in, contemplated by, and/or implemented by the Joint Plan, the injunction, discharges and releases described in Article X of the Joint Plan, including without limitation the compromise and settlement of claims with SFHS in Section 10.12 of the Joint Plan, constitute good faith compromises and settlements of the matters covered thereby.   Such compromises and settlements are made in exchange for consideration and are in the best interest of the Holders of Claims, are within the range of possible litigation outcomes, are fair, equitable, reasonable and are integral elements of the restructuring and resolution of the Chapter 11 Cases in accordance with the Joint Plan and satisfy the factors outlined in *Martin v.*

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed 05/28/10   Page 27 of 134

*Kane (In re A & C Properties)*, 784 F.2d 1377 (9th Cir. 1986). The settlement and release of claims with SFHS was the product of good faith arms' length negotiations. Each of the discharge, indemnification and exculpation provisions set forth in the Joint Plan:

     (i)    falls within the jurisdiction of this Court under 28 U.S.C. § 1334(a), (b) and (d);

     (ii)    is an essential means of implementing the Joint Plan pursuant to section 1123(a)(5) of the Bankruptcy Code;

     (iii)    is an integral element of the transactions incorporated into the Joint Plan;

     (iv)    confers material benefit on, and is in the best interest of, the Operating Debtors, their Estates and their creditors;

     (v)    Is important to the overall objectives of the Joint Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Operating Debtors, their organization, capitalization, operation and reorganization to the extent provided in the Joint Plan; and

     (vi)    is consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

MM. <u>Discharge, Indemnification, Exculpation and Releases</u>. The failure to effect the discharge, indemnification, exculpation and release provisions of the

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed 05/28/10   Page 28 of 134

Joint Plan would seriously impair the Operating Debtors' ability to confirm the Joint Plan. Accordingly, the compromises and settlements embodied in the discharge, indemnification, exculpation and release provisions described in Article X of the Joint Plan are approved.

## **DECREES**

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.  Solicitation. Votes for the acceptance or rejection of the Joint Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other applicable provisions of the Bankruptcy Code and all other rules, laws and regulations, and the solicitation procedures and solicitation are hereby approved.

2.  Confirmation. The Joint Plan, as modified and set forth in Exhibit A hereto, for the reasons set forth herein and on the record at the Confirmation Hearing, is hereby approved and confirmed under section 1129 of the Bankruptcy Code. The terms of the Joint Plan are incorporated by reference into and are an integral part of this Confirmation Order.

3.  Objections. All objections (including the Objections) that have not been withdrawn, waived, resolved or settled are overruled on their merits.

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed  05/28/10  Page 29 of 134

4.  <u>Provisions of Joint Plan and Confirmation Order Non-Severable and Mutually Dependent</u>.  The provisions of the Joint Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent.

5.  <u>Joint Plan Classification Controlling</u>.  The classifications of Claims and Interests for purposes of the distributions to be made under the Joint Plan shall be governed solely by the terms of the Joint Plan.

6.  <u>Binding Effect</u>.  The Joint Plan and its provisions shall be binding upon the Operating Debtors, the Reorganized Debtors, any entity acquiring or receiving property or a distribution under the Joint Plan and any holder of a Claim against or Interest in the Operating Debtors, including all governmental entities, whether or not the Claim or Interest of such holder is Impaired under the Joint Plan and whether or not such holder or entity has accepted the Joint Plan.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Joint Plan, and all Joint Plan-related documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

7.  <u>Vesting of Assets (11 U.S.C. § 1141(b) and (c))</u>.  Subject to the terms of the Joint Plan and the Reorganized Debtors' obligations under the Joint Plan, after the Effective Date the Reorganized Debtors shall continue to exist as separate

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed 05/28/10  Page 30 of 134

corporations or limited liability companies in accordance with the applicable law in the respective jurisdiction in which they are incorporated or otherwise organized, and pursuant to their respective certificates or articles of incorporation, by-laws, articles of formation, operating agreements, and other organizational documents in effect prior to the Effective Date, except to the extent such certificates of incorporation, by-laws, articles of formation, operating agreements, and other organizational documents are amended, modified, or replaced pursuant to the Joint Plan. Except as otherwise provided in the Joint Plan, on and after the Effective Date, all property of the Estates of the Operating Debtors, including all claims, rights, and causes of action and any property acquired by the Operating Debtors or the Reorganized Debtors under or in connection with the Joint Plan, shall vest in the Reorganized Debtors free and clear of all Claims, liens, charges, other encumbrances, and Interests, subject to the terms of the Joint Plan and the Reorganized Debtors' obligations under the Joint Plan. On and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property and compromise or settle any Claims without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by the Joint Plan or this Confirmation Order. Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur on or after

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed 05/28/10  Page 31 of 134

the Effective Date for professionals' fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

8. <u>Transfers of Property</u>.  The transfers of property by the Operating Debtors (i) to the Reorganized Debtors (a) are or will be legal, valid and effective transfers of property, (b) vest or will vest the Reorganized Debtors with good title to such property free and clear of all liens, charges, Claims, encumbrances or Interests, except as expressly provided in the Joint Plan or Confirmation Order and subject to the terms of the Joint Plan and the Reorganized Debtors' obligations under the Joint Plan, (c) do not and will not constitute avoidable transfers under the Bankruptcy Code or under applicable bankruptcy or non-bankruptcy law and (d) do not and will not subject the Reorganized Debtors to any liability by reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law, including, without limitation, any laws affecting successor, transferee or stamp or recording tax liability; and (ii) to Holders of Claims or Interests under the Joint Plan, including without limitation the granting of liens in favor of SFHS, are for good and valuable consideration.

9. <u>Assumption of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2))</u>.  On the Effective Date, all executory contracts or unexpired leases of the Operating Debtors shall be deemed assumed in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy

Code, except those executory contracts and unexpired leases that (a) have been previously rejected by Final Order of the Bankruptcy Court, (b) are the subject of a motion to reject pending on the Effective Date, (c) are listed on Plan Schedule 7.1, or (d) are otherwise rejected pursuant to the Joint Plan. Entry of this Confirmation Order shall constitute approval of such assumptions pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each executory contract and unexpired lease assumed pursuant to the Joint Plan shall vest in and be fully enforceable by the respective Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Joint Plan, or any order of the Court authorizing and providing for its assumption, or applicable federal law.

10. <u>Assumption of Compensation and Benefit Programs</u>. On the Effective Date, all employment contracts and policies, and all compensation and benefit plans, policies, and programs of the Operating Debtors applicable to their employees, and non-employee directors, including, without limitation, all savings plans, healthcare plans, disability plans, severance benefit plans, incentive plans, life, and accidental death and dismemberment insurance plans and contracts, are treated as executory contracts and will be assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, except for those compensation and benefit programs set forth on Plan Schedule 7.1, which shall be deemed rejected as of the Effective Date. All employment contracts and policies and all compensation

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed 05/28/10   Page 33 of 134

and benefit plans, policies, and programs assumed pursuant to the Joint Plan shall vest in and be fully enforceable by the respective Reorganized Debtor in accordance with their terms, except as modified by the provisions of the Joint Plan, or any order of the Bankruptcy Court authorizing and providing for their assumption, or applicable federal law.

11.    General Authorizations.  Pursuant to and in accordance with the Joint Plan, each of the Operating Debtors or Reorganized Debtors is authorized to execute, deliver, file or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Joint Plan and any documents, notes or securities issued pursuant to the Joint Plan, including, without limitation, the Exit Facility Credit Agreement, Term Note A, and all ancillary agreements related to Term Note A.  The Operating Debtors and the Reorganized Debtors and their respective directors, officers, members, agents and attorneys, are authorized and empowered to issue, execute, deliver, file or record any agreement, document or security, including, without limitation, the documents referenced in the Joint Plan, as modified, amended and supplemented, and to take any action necessary or appropriate to implement, effectuate and consummate the Joint Plan in accordance with its terms, or take any or all corporate actions authorized to be taken pursuant to the Joint Plan, including, but

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed 05/28/10  Page 34 of 134

not limited to, any merger, release, amendment, restatement, or replacement of any bylaws, certificates of incorporation or other organization documents of the Operating Debtors, whether or not specifically referred to in the Joint Plan or any exhibit thereto, without further order of the Court, and any or all such documents shall be accepted by each of the respective state filing offices and recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law.

12. <u>Corporate Action</u>. On the Effective Date, the adoption of a new operating agreement or similar constituent documents of the Reorganized Debtors, and all other actions contemplated by the Joint Plan shall be authorized and approved in all respects (subject to provisions of the Joint Plan). All matters provided in the Joint Plan involving the corporate structure of the Operating Debtors or Reorganized Debtors, and any corporate action required by the Operating Debtors or Reorganized Debtors in connection with the Joint Plan, shall be deemed to have occurred and shall be effective without any requirement of further action by the security holders, directors or management of the Operating Debtors or Reorganized Debtors.

13. <u>Plan Documents</u>. There being no objections to any of the documents contained in the Joint Plan, or any amendments, modifications and supplements thereto, and all documents and agreements introduced therein or contemplated by

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed  05/28/10   Page 35 of 134

the Joint Plan (including all exhibits and attachments thereto and documents referred to therein), including, but not limited to, (a) the Exit Facility Credit Agreement and (b) Term Note A, and (c) the credit agreement for Term Note A, the execution, delivery and performance thereof by the Reorganized Debtors are authorized and approved, without need for further corporate action or further order or authorization of the Court, subject to the terms of the Joint Plan. The Operating Debtors and the Reorganized Debtors, as appropriate, are authorized and empowered to make any and all modifications to any and all documents included as part of the Joint Plan and Plan Supplement that may be agreed to by the Plan Proponents and are consistent with the Joint Plan.

14. <u>Discharge</u>. Except as otherwise provided in the Joint Plan or in this Confirmation Order, and subject to the terms of the Joint Plan and the Reorganized Debtors' obligations under the Joint Plan, all consideration distributed under the Joint Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Interests (other than those Claims that are Unimpaired under the Joint Plan) of any nature whatsoever against the Operating Debtors or any of their assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to the Joint Plan on account of such Claims and Interests. Upon the Effective Date, the Operating Debtors, and each of them, shall be deemed discharged and released under section

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed 05/28/10   Page 36 of 134

1141(d)(1)(A) of the Bankruptcy Code from any and all Claims and Interests (other than Claims that are Unimpaired under the Joint Plan), including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, and the Interests shall be terminated. The discharge shall be effective as to each Claim and Interest except as otherwise expressly provided in this Confirmation Order, regardless of whether:

 (a) a proof of claim or interest based on such Claim, Interest, debt or liability is filed or deemed filed under section 501 of the Bankruptcy Code or is filed in the United States Bankruptcy Court;

 (b) a Claim or Interest based on such Claim, Interest, debt or liability is allowed; or

 (c) the holder of a Claim Interest based on such Claim, Interest, debt or liability has accepted the Joint Plan.

 15. <u>Issuance of New Securities</u>. Pursuant to Article V of the Joint Plan, the issuance of the securities set forth in the Joint Plan by the Reorganized Debtors is hereby authorized without further act or action under applicable law, regulation, order or rule.

 16. <u>Cancellation of Notes, Instruments, Debentures and Common Stock</u>. On the Effective Date, except as otherwise provided in the Joint Plan or this

Confirmation Order: (a) the SFHS Secured Credit Documents, the Interests, and any other notes, bonds, indentures or other instruments or documents evidencing or creating any indebtedness or obligations of an Operating Debtor that are Impaired under the Joint Plan shall be cancelled and deemed terminated and (b) the obligations of the Operating Debtors under the foregoing shall be discharged. Upon payment, in full, of the Class 4 Siemens Secured Lender Claim (including the cancellation or collateralization of the Workers Compensation LC as provided for in the Joint Plan), the Siemens Secured Credit Documents shall be canceled and deemed terminated and the obligations of the Operating Debtors under the foregoing shall be discharged. As of the Effective Date, all Interests that have been authorized to be issued, but that have not been issued, shall be deemed cancelled and extinguished without any further action of any party. For the avoidance of doubt, except as set forth in Section 5.12 of the Joint Plan, nothing in the Joint Plan shall serve to release the Physician Guarantors (as defined in the Joint Plan) or any other non-Debtor party from a guarantee in favor of SFHS.

17. <u>Exit Financing Facility and Exit Facility Credit Agreement</u>. In conjunction with the Effective Date, the Reorganized Debtors intend to enter into the Exit Facility Credit Agreement and the related intercreditor, subordination, collateral and guaranty documents contemplated thereby (together with the Exit Facility Credit Agreement, the "Exit Facility Documents").

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed 05/28/10  Page 38 of 134

(a)     On the Effective Date, all of the liens, security interests, and subsidiary guarantees to be created under the Exit Facility Documents shall be deemed approved.  In furtherance of the foregoing, the Reorganized Debtors and the other persons granting such liens and security interests are hereby authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of state, provincial, federal or other law (whether domestic or foreign) that would be applicable in the absence of this Confirmation Order, and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

(b)     The Reorganized Debtors are hereby authorized to enter into the Exit Facility Documents, subject to the terms of the Joint Plan.  The Reorganized Debtors are hereby authorized to incur loans, letters of credit and related obligations, including subsidiary guarantees thereof (as provided for in the Exit Facility Documents) (the "Exit Obligations") and, upon payment, in full, of the Class 4 Siemens Secured Lender Claim (including the cancellation or collateralization of the Workers Compensation LC as provided for in the Joint Plan), and except as may otherwise be provided for in the Exit Facility Documents, grant the lender under the Exit Facility Credit Agreement (the "Exit Lender") a

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed 05/28/10   Page 39 of 134

first priority security interest in and a Lien upon all of the Collateral (as such term is defined in the Exit Facility Documents) to secure all such Exit Obligations due the Exit Lender.

(c)     The Exit Facility Documents are entered into by the Exit Lender in good faith and are in the best interests of the Operating Debtors and their respective Estates.

18.     <u>Exemption from Certain Taxes</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer, or exchange of notes or equity securities under the Joint Plan; (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest; (c) the making or assignment of any lease or sublease; or (d) the making or delivery of any deed or other instrument of transfer pursuant to the Joint Plan shall not be subject to any stamp tax or other similar tax.

19.     <u>Final Fee Applications</u>.  Pursuant to Section 5.11 of the Joint Plan, counsel for the Operating Debtors and the Creditors Committee must file applications for final allowance of Professional Fees no later than 30 days after the Effective Date.     Any Professional who may receive compensation or reimbursement of expenses pursuant to that certain Order Establishing Interim Compensation Procedures for Chapter 11 Professionals (Docket No. 209 entered on October 21, 2008) may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date.

Objections to any applications for final allowance of Professional Fees must be Filed and served on the Operating Debtors by the later of (a) 40 days after the Effective Date, or (b) 21 days after the Filing of an application for final allowance of such Professional Fees.

20. <u>Termination of Injunctions and Automatic Stay</u>. Pursuant to Section 10.6 of the Joint Plan, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall terminate upon the Effective Date.

21. <u>Injunction</u>. Except as otherwise expressly provided in the Joint Plan or this Confirmation Order, the injunctions set forth in Section 10.5 of the Joint Plan are approved. For the avoidance of doubt, SFMCJV, LLC, a Hawaii limited liability company of which one of the Operating Debtors is the sole member, is neither a Debtor, "property of" a Debtor (as that term is used in the Joint Plan), nor is it a "representative" of a Debtor, or other "Exculpated Party" under the Joint Plan, and, accordingly, claims and other remedies asserted against SFMCJV, LLC, are neither released nor enjoined under the Joint Plan, and release, injunction, and other provisions of the Joint Plan shall not be construed to the contrary.

22. <u>Operating Debtors' and Reorganized Debtors' Reserved Litigation Claims</u>. Except as otherwise provided in the Joint Plan, this Confirmation Order, or in any document, instrument, release, or other agreement entered into in

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed 05/28/10  Page 41 of 134

connection with the Joint Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Operating Debtors and their Estates shall retain the Litigation Claims. On the Effective Date, the Litigation Claims shall be vested in the Reorganized Debtors. The Reorganized Debtors, as successors in interest to the Operating Debtors and their Estates, may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) any or all of the Litigation Claims without application to the Bankruptcy Court. Notwithstanding the foregoing, from and after the Effective Date, neither the Reorganized Debtors nor anyone else acting on behalf of the Operating Debtors or their Estates shall commence any suit or other proceeding for the enforcement of the Avoidance Actions.

23. <u>Continuance of the Creditors' Committee</u>. The Creditors' Committee shall continue to exist after the Effective Date, for the purposes specified in the Joint Plan and for the purpose of monitoring and enforcing the Reorganized Debtors' compliance with the Joint Plan, until the initial distribution to Holders of Class 6 Allowed General Unsecured Claims pursuant to section 3.3(b)(x) of the Joint Plan is completed. The professionals retained by the Creditors Committee shall be entitled to compensation from the Reorganized Debtors for services performed and reimbursement of expenses incurred in connection therewith. Such compensation shall not be subject to the approval of the Court and shall be paid by

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed 05/28/10  Page 42 of 134

the Reorganized Debtors in the ordinary course of business. Upon dissolution of the Creditors Committee under the Joint Plan, the individual members of the Creditors' Committee shall be released and discharged of and from all duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases.

24. <u>Compromises and Settlements</u>. All settlements and compromises of claims and causes of action against non-Operating Debtor entities that are embodied in the Joint Plan, including but not limited to the settlement with SFHS, that are approved herein as fair, equitable, reasonable and in the best interests of the Operating Debtors, the Reorganized Debtors and their Estates, and interest holders, shall be, and hereby are, effective and binding on all persons and entities who may have had standing to assert such claims or causes of action, and no person or entity shall possess such standing to assert such claims or causes of action after the Effective Date.

25. <u>Releases Relating to SFHS</u>. Except as otherwise expressly provided in the Joint Plan or this Confirmation Order, the settlements, releases, and injunctions set forth in Section 10.12 of the Joint Plan are approved. All of the settlements and compromises of claims and causes of action against non-Operating Debtor entities and SFHS that are embodied in the Joint Plan, including those set forth in Section 10.12 of the Joint Plan, that are approved herein as fair, equitable,

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed 05/28/10   Page 43 of 134

reasonable and in the best interests of the Operating Debtors, the Reorganized Debtors and their Estates, and interest holders, shall be, and hereby are, effective and binding on all persons and entities who may have had standing to assert such claims or causes of action, and no person or entity shall possess such standing to assert such claims or causes of action after the Effective Date.

26.     <u>Authorization to Consummate Plan</u>.     Notwithstanding Bankruptcy Rule 3020(e), this Confirmation Order shall take effect immediately upon its entry and the Plan Proponents are authorized to consummate the Joint Plan immediately after entry of this Confirmation Order.

27.     <u>Notice of Entry of Confirmation Order and the Effective Date</u>.  Within 5 Business Days of the Effective Date, the Operating Debtors shall serve a notice (the "Effective Date Notice") in substantially the form attached hereto as <u>Exhibit B</u> (the form of which is hereby approved), pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c) on all impaired creditors, interest holders of record and the United States Trustee by first-class mail, postage prepaid.  The Operating Debtors shall also publish the Effective Date Notice in the Honolulu Star-Bulletin and the Honolulu Advertiser.  The notice described herein is adequate under the particular circumstances and no other or further notice is necessary.

28.     <u>Retention of Jurisdiction</u>.  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed 05/28/10   Page 44 of 134

occurrence of the Effective Date, the Court, except as otherwise provided in the Joint Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Joint Plan to the fullest extent permitted by law, including, but not limited to, the matters set forth in Article XI of the Joint Plan.

29. <u>Exemption from Securities Laws</u>. The exemption from the requirements of Section 5 of the Securities Act of 1933, as amended, and any state or local law requiring registration for the offer, issuance, exchange, distribution or transfer of a security provided for in the Joint Plan or registration or licensing of an issuer of, underwriter of, or broker dealer in, such security is authorized by section 1145 of the Bankruptcy Code and shall apply to the extent set forth in the Joint Plan.

30. <u>References to Plan Provisions</u>. The failure specifically to include or reference any particular provision of the Joint Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Joint Plan be confirmed in its entirety.

31. <u>Reversal</u>. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of the Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Joint

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed 05/28/10  Page 45 of 134

Plan prior to the Plan Proponents' receipt of written notice of any such order. Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Joint Plan or any amendments or modifications thereto.

32. <u>Applicable Non-Bankruptcy Law</u>. Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Joint Plan or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

33. <u>Modifications to the Joint Plan</u>. At the request of the Plan Proponents, the Joint Plan is hereby modified pursuant to section 1127(a) of the Bankruptcy Code solely to the extent set forth on <u>Exhibit A</u> hereto.

34. <u>Failure of the Occurrence of the Effective Date</u>. In the event that the Effective Date for the Joint Plan fails to occur, then this Confirmation Order shall be vacated and become null and void *ab initio*.

35. <u>Waiver of 14-Day Stay</u>. The 14-day stays contained in Bankruptcy Rules 3020(e) and 6004(g) are hereby waived, and confirmation of the Joint Plan shall be effective immediately upon entry of this Confirmation Order.



*/s/ Robert J. Faris*
**United States Bankruptcy Judge**
Dated: **05/28/2010**

---

In re CHA Hawaii, LLC, et al., Case No. 08-01369; Findings of Fact, Conclusions of Law, and Order Under 11 U.S.C. §§ 1126 and 112(A) and (B) and Fed.R.Bankr.P. 3020 Confirming the First Amended Joint Plan of Reorganization for Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, and Hawaii Medical Center West, LLC Proposed by the Official Committee of Unsecured Creditors, Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, Hawaii Medical Center West, LLC, and Hawaii Physicians Group, LLC

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF HAWAII

In re:

CHA Hawaii, LLC, et al.,[1]

    Debtors.

This Document Relates to:

ALL CASES EXCEPT CHA
HAWAII, LLC

Case No. 08-01369
(Chapter 11 Cases)
(Jointly Administered)
(Honorable Robert J. Faris)

## REVISED FIRST AMENDED JOINT PLAN OF REORGANIZATION FOR HAWAII MEDICAL CENTER, LLC, HAWAII MEDICAL CENTER EAST, LLC, AND HAWAII MEDICAL CENTER WEST, LLC PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, HAWAII MEDICAL CENTER, LLC, HAWAII MEDICAL CENTER EAST, LLC, HAWAII MEDICAL CENTER WEST, LLC, AND HAWAII PHYSICIANS GROUP, LLC

Dated: May 26, 2010

---

[1] CHA Hawaii, LLC, a Delaware limited liability company (Tax No. 20-3827186); Hawaii Medical Center, LLC, a Hawaii limited liability company (Tax No. 20-3409838); Hawaii Medical Center East, LLC, a Hawaii limited liability company (Tax No. 51-0598670); and Hawaii Medical Center West, LLC, a Hawaii limited liability company (Tax No. 51-0598672).

1585431.4

# EXHIBIT A

| | |
|---|---|
| ALSTON & BIRD LLP | WAGNER CHOI & VERBRUGGE |
| Martin G. Bunin (admitted *pro hac vice*)<br>Craig E. Freeman (admitted *pro hac vice*)<br>William Hao<br>90 Park Avenue<br>New York, New York 10016<br>Telephone: (212) 210-9400<br>Facsimile: (212) 210-9444<br>Email:marty.bunin@alston.com<br>     craig.freeman@alston.com<br>     william.hao@alston.com | Chuck C. Choi<br>745 Fort Street, Suite 1900<br>Honolulu, HI 96813<br>Telephone: (808) 533-1877<br>Facsimile: (808) 566-6900<br>Email: cchoi@hibklaw.com |
| *Counsel for the Official Committee of Unsecured Creditors* | |
| MCDONALD HOPKINS LLC | MOSELEY BIEHL TSUGAWA LAU & MUZZI<br>A HAWAII LIMITED LIABILITY LAW COMPANY |
| Shawn M. Riley (admitted *pro hac vice*)<br>Paul W. Linehan (admitted *pro hac vice*)<br>Michael J. Kaczka (admitted *pro hac vice*)<br>600 Superior Avenue, East, Suite 2100<br>Cleveland, OH 44114-2653<br>Telephone: (216) 348-5400<br>Facsimile: (216) 348-5474<br>Email: sriley@mcdonaldhopkins.com<br>    plinehan@mcdonaldhopkins.com<br>    mkaczka@mcdonaldhopkins.com | Christopher J. Muzzi (6939)<br>Alakea Corporate Tower<br>1100 Alakea Street, 23rd Floor<br>Honolulu, HI 96813<br>Telephone: (808) 531-0490<br>Facsimile: (808) 534-0202<br>Email: cmuzzi@hilaw.us |
| *Co-Counsel to the Debtors and Debtors in Possession* | |
| KESSNER UMEBAYASHI BAIN & MATSUNAGA<br><br>Steven Guttman<br>220 South King Street, Suite 1900<br>Honolulu Hawaii 96813<br>Telephone: (808) 536-1900<br>Email: sguttman@kdubm.com<br>*Counsel for Hawaii Physicians Group, LLC* | |

1585431.4

# TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS AND RULES OF INTERPRETATION ............. 1

ARTICLE II. CLASSIFICATION OF CLAIMS AND INTERESTS .................. 14

ARTICLE III. TREATMENT OF CLAIMS AND INTERESTS .......................... 15

ARTICLE IV. ACCEPTANCE OR REJECTION OF THIS PLAN...................... 23

ARTICLE V. MEANS FOR IMPLEMENTATION OF THIS PLAN.................. 23

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS......................... 29

ARTICLE VII. TREATMENT OF EXECUTORY CONTRACTS AND
          UNEXPIRED LEASES....................................................................... 33

ARTICLE VIII. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT
          AND UNLIQUIDATED CLAIMS ..................................................... 36

ARTICLE IX. CONFIRMATION AND CONSUMMATION OF THIS PLAN .. 37

ARTICLE X. EFFECT OF PLAN CONFIRMATION ........................................... 38

ARTICLE XI. RETENTION OF JURISDICTION................................................. 42

ARTICLE XII. MISCELLANEOUS PROVISIONS ............................................. 44

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed  05/28/10   Page 50 of 134

PLAN SCHEDULES

SCHEDULE 7.1  SCHEDULE OF REJECTED CONTRACTS AND LEASES

1585431.4

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed  05/28/10   Page 51 of 134

# INTRODUCTION

Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, Hawaii Medical Center West, LLC, the Official Committee of Unsecured Creditors appointed in the above-captioned cases, and Hawaii Physicians Group, LLC propose the following plan of reorganization for the resolution of the outstanding Claims (as defined herein) against and Interests (as defined herein) in Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, and Hawaii Medical Center West, LLC. Reference is made to the Disclosure Statement (as that term is defined herein) for a discussion of the history, business, financial forecasts, risk factors, a summary and analysis of this Plan (as that term is defined herein), and certain related matters including, among other things, the proposed substantive consolidation of Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, and Hawaii Medical Center West, LLC for certain limited purposes.

All holders of Claims who are entitled to vote on this Plan are encouraged to read each of the Plan and the Disclosure Statement in its entirety before voting to accept or reject this Plan. Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code (as defined herein) and Rule 3019 of the Bankruptcy Rules (as defined herein), the Plan Proponents (as defined herein) reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

1585431.4

U.S. Bankruptcy Court - Hawaii #08-01369 Dkt # 1316 Filed 05/28/10 Page 52 of 134

# ARTICLE I.

## DEFINED TERMS AND RULES OF INTERPRETATION

*Defined Terms.* As used herein, capitalized terms shall have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

## DEFINED TERMS

**1.1** *Administrative Claim* means a Claim for costs and expenses of administration of the Chapter 11 Cases that is Allowed under section 503(b) of the Bankruptcy Code, including: (a) any actual and necessary costs and expenses incurred after the Petition Date in connection with preserving the Debtors' Estates and operating the businesses of the Debtors (such as wages, salaries, and commissions for services and payments for inventory, leased equipment and premises) and Claims of governmental units for taxes (including tax audit Claims related to tax years commencing after the Petition Date, but excluding Claims relating to tax periods, or portions thereof, ending on or before the Petition Date); (b) the Allowed value of any goods received by the Debtors within 20 days before the Petition Date in which the goods have been sold to the Debtors in the ordinary course of the Debtors' business; (c) compensation for legal, financial, advisory, accounting, and other services and reimbursement of expenses Allowed by the Bankruptcy Court under section 330, 331 or 503(b) of the Bankruptcy Code to the extent incurred prior to the Effective Date; and (d) all fees and charges assessed against the Debtors' Estates under section 1930, chapter 123, of title 28, United States Code.

**1.2** *Affiliate* has the meaning set forth in section 101(2) of the Bankruptcy Code.

**1.3** *Allowed* means, with respect to a Claim or Interest in any Class, an Allowed Claim or Allowed Interest in the particular Class or category specified.

**1.4** *Allowed _____ Claim* means a Claim (a) not listed as disputed, contingent or unliquidated in the Schedules; (b) as to which no objection or request for estimation has been interposed on or before the Effective Date or such other applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been settled, waived, withdrawn, or denied by a Final Order of the Bankruptcy Court; or

1585431.4

(c) that is expressly deemed to be Allowed pursuant to the terms of this Plan. The term "Allowed Claim" shall not, for purposes of computing distributions under this Plan, include interest on such Claim from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code or as otherwise expressly set forth in this Plan.

**1.5** *Allowed Interest* means the Interest of a Holder of equity securities in any of the Debtors that is Allowed.

**1.6** *Amended Adequate Protection Judgment* means the form of Amended Judgment attached as Exhibit A to that certain Stipulation to Amend Adequate Protection Judgment filed on May 26, 2010 as Docket No. 1307.

**1.7** *Avoidance Actions* means any causes of action of the Estates arising under sections 542, 543, 544, 545, 546, 547, 548, 549, 550 or 553 of the Bankruptcy Code, regardless of whether or not such cause of action was commenced prior to the Effective Date.

**1.8** *Ballot* means each of the ballot forms distributed to Holders of Impaired Claims or Interests who are entitled to vote to accept or reject this Plan.

**1.9** *Bankruptcy Code* means title 11 of the United States Code, as now in effect or hereafter amended.

**1.10** *Bankruptcy Court* means the United States Bankruptcy Court for the District of Hawaii, or any other court with jurisdiction over the Chapter 11 Cases.

**1.11** *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

**1.12** *Business Day* means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**1.13** *Cash* means legal tender of the United States of America.

**1.14** *CHA Hawaii* means CHA Hawaii, LLC, a Delaware limited liability company that owns 54% of the membership units of HMC.

**1.15** *CHA LLC* means Cardiovascular Hospitals of America, LLC, a Delaware limited liability company that owns 84.3% of the membership units of CHA Hawaii.

**1.16** *Chapter 11 Cases* means the cases under chapter 11 of the

1585431.4

Bankruptcy Code commenced by the Debtors on the Petition Date.

**1.17** *Claim* means a "claim," as defined in section 101(5) of the Bankruptcy Code against HMC, HMCE and/or HMCW.

**1.18** *Class* means a category of Holders of Claims or Interests, as described in Article II hereof

**1.19** *CMS* shall have the meaning set forth in Section 7.2 of this Plan.

**1.20** *Confirmation Date* means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

**1.21** *Confirmation Hearing* means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**1.22** *Confirmation Order* means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, which order shall be in form and substance satisfactory to the Plan Proponents.

**1.23** *Convenience Claim* means a General Unsecured Claim in the amount of $5,000 or less.

**1.24** *Creditors Committee* means the official committee of unsecured creditors appointed pursuant to section 1102 of the Bankruptcy Code in the chapter 11 cases for CHA Hawaii, HMC, HMCE, and HMCW.

**1.25** *Debtor(s)* means, individually or collectively, HMC, HMCE, and HMCW.

**1.26** *Deficiency Claim* means the unsecured portion of any secured Claim as determined pursuant to section 506(a)(1) of the Bankruptcy Code.

**1.27** *Disclosure Statement* means that certain disclosure statement (including all appendices and schedules thereto) relating to this Plan.

**1.28** *Disputed Claim* means (i) any Claim as to which a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules or this Plan has been interposed, which objection has not been withdrawn or determined by the Bankruptcy Court pursuant to a Final Order, (ii) any Claim listed as contingent, disputed or unliquidated in the Debtors' Schedules; or (iii) any

1585431.4

Claim otherwise disputed by the Reorganized Debtors or the Creditors Committee in accordance with this Plan.

**1.29** *Distribution Record Date* means the Confirmation Date.

**1.30** *Effective Date* means the Business Day that this Plan becomes effective, which shall be a Business Day, selected by the Plan Proponents, which is at least eleven (11) days after the Confirmation Date, or as soon thereafter as is practicable, on which all conditions to the Effective Date have been satisfied or, if permitted by this Plan, waived by the Plan Proponents.

**1.31** *Estate(s)* means, individually, the estate of any of the Debtors created under section 541 of the Bankruptcy Code and collectively, the estates of all of the Debtors created under section 541 of the Bankruptcy Code.

**1.32** *Exculpated Parties* shall have the meaning set forth in Section 10.2 of this Plan.

**1.33** *Exit Facility* means the credit facility provided under that certain credit agreement (and any related documents, agreements, and instruments) to be entered into by the Reorganized Debtors as of the Effective Date as a condition to the Effective Date, subject to the approval of the Plan Proponents, to provide a portion of the funds necessary to make payments required to be made pursuant to this Plan by the Reorganized Debtors on the Effective Date, as well as funds for working capital and other general corporate purposes after the Effective Date.

**1.34** *Exit Facility Credit Agreement* means that certain credit agreement by and among Reorganized Debtors, as borrowers, and the Exit Facility Lender, providing for a revolving credit facility.

**1.35** *Exit Facility Collateral* means the collateral securing the obligations of the Reorganized Debtors under the Exit Facility documents including, but not limited to, the healthcare accounts receivable generated by the Reorganized Debtors in the ordinary course of their businesses.

**1.36** *Exit Facility Lender* means the lender that may be a party to the Exit Facility Credit Agreement.

**1.37** *File, Filed, or Filing* means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

**1.38** *Final Cash Collateral Order* means the Stipulation and Agreed Final

1585431.4

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed 05/28/10  Page 56 of 134

Order (I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §363 (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363, and (II) Granting Related Relief dated September 19, 2008 entered with respect to the Chapter 11 Cases, as amended.

**1.39** *Final Order* means an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors or the Reorganized Debtors, or, in the event that an appeal, writ of certiorari or reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

**1.40** *Fiscal Year Mid Date* means the 31st day in the month of December of the preceding calendar year. For example, the 2011 Fiscal Year Mid Date would be December 31st, 2010.

**1.41** *Fiscal Year End Date* means the 30th day in the month of June of a given calendar year. For example, the 2011 Fiscal Year End Date would be June 30th, 2011.

**1.42** *General Administrative Claims Bar Date* has the meaning set forth in Section 3.1(a)(i)(A) of this Plan.

**1.43** *General Unsecured Claim* means any Claim that is not an SFHS Claim, a Siemens Secured Lender Claim, an Other Secured Claim, an Unimpaired Employee Claim, an Administrative Claim, a Priority Tax Claim, or a Non-Tax Priority Claim. For the avoidance of doubt, Section 502(h) Claims and Deficiency Claims are General Unsecured Claims.

**1.44** *GUC Obligation* shall have the meaning set forth in Section 3.3(b) of this Plan.

**1.45** *GUC Prepayment Option* shall have the meaning set forth in Section

1585431.4

3.3(b) of this Plan.

**1.46** *GUC Principal Payments* shall have the meaning set forth in Section 3.3(b) of this Plan.

**1.47** *HMC* means Hawaii Medical Center, LLC, a Hawaii limited liability company that owns 100% of the membership units in HMCE and HMCW and is a debtor in possession in the Chapter 11 Cases.

**1.48** *HMCE* means Hawaii Medical Center East, LLC, a Hawaii limited liability company and is a debtor in possession in the Chapter 11 Cases.

**1.49** *HMCW* means Hawaii Medical Center West, LLC, a Hawaii limited liability company and is a debtor in possession in the Chapter 11 Cases.

**1.50** *Holder* means a Person holding a Claim or Interest.

**1.51** *HPG* means Hawaii Physicians Group, LLC, a Hawaii limited liability company and owner of 45% of the membership units in HMC.

**1.52** *Impaired* means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.53** *Interest* means an equity interest in any of the Debtors outstanding prior to the Effective Date, including, without limitation, any preferred stock, common stock, stock options or other right to purchase stock of any of the Debtors, together with any warrants, conversion rights, rights of first refusal, subscriptions, commitments, agreements, or other rights to acquire or receive any stock or other equity interests in any of the Debtors prior to the Effective Date, and the legal, equitable, contractual, and other rights relating thereto.

**1.54** *Litigation Claims* means the claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that any Debtor or Estate may hold against any Person, including all Avoidance Actions, but excluding all claims, rights of action, suits or proceedings that are released, waived or extinguished by the Debtors either pursuant to this Plan or a Final Order.

**1.55** *Non-Tax Priority Claims* means all Claims entitled to priority under section 507(a) of the Bankruptcy Code, other than Administrative Expense Claims and Priority Tax Claims.

**1.56** *Other Secured Claim* means a Claim (other than the Siemens Secured

1585431.4

Lender Claim or the SFHS Claim) that is secured by a lien on property in which a Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the applicable Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of the setoff, pursuant to section 553 of the Bankruptcy Code.

**1.57** *Petition Date* means August 29, 2008, the date on which the Debtors filed their petitions for relief commencing the Chapter 11 Cases.

**1.58** *Person* means an individual, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, association, joint venture, trust, estate, unincorporated organization, governmental authority, governmental unit or any agency or political subdivision thereof, or any entity of whatever nature.

**1.59** *Physician Guaranties* means those certain guaranties in favor of SFHS dated as of January 13, 2007 as amended, modified or supplemented from time to time, made by any Person that is a member of or indirectly owns, holds, or controls a membership interest in HPG.

**1.60** *Physician Guarantors* means any Person that is a member of or indirectly owns, holds, or controls a membership interest in Hawaiian Physicians Group, LLC and has executed a Physician Guaranty.

**1.61** *Plan* means this chapter 11 plan of reorganization, including the Exhibits, the Plan Supplement, and Plan Schedules and all supplements, appendices, and schedules thereto, either in its present form or as the same may be altered, amended, or modified from time to time.

**1.62** *Plan Proponents* means the Debtors, the Creditors Committee, and HPG.

**1.63** *Plan Schedule* means any schedule annexed to either this Plan or as an appendix to the Disclosure Statement.

**1.64** *Plan Supplement* means a supplement to this Plan in form and substance satisfactory to the Plan Proponents, which shall be filed with the Bankruptcy Court not later than five days prior to the Confirmation Hearing for the purposes specified in this Plan.

**1.65** *Prepetition Secured Lenders* means collectively Siemens Financial

1585431.4

and SFHS.

**1.66** *Priority Tax Claim* means a Claim of a governmental unit of the kind entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**1.67** *Professional* means any professional employed in the Chapter 11 Cases pursuant to section 327 or 1103 of the Bankruptcy Code, including, but not limited to, the professionals retained by the Creditors Committee (Alston & Bird LLP, Wagner Choi & Verbrugge, and Deloitte Financial Advisory Services LLP), (b) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code, and (c) Dianne M. Okumura, in her capacity as the patient care ombudsman appointed in the Chapter 11 Cases, and her counsel, Lyons, Brandt, Cook & Hiramatsu.

**1.68** *Professional Fees* means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses or other charges, and expenses incurred after the Petition Date and prior to and including the Effective Date.

**1.69** *PTO* means "paid time off" as contemplated by and in accordance with the Debtors' written policies in effect for their employees as of the Effective Date.

**1.70** *Reinstated or Reinstatement* means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim or Interest entitles the Holder of such Claim or Interest so as to leave such Claim or Interest unimpaired, within the meaning of section 1124 of the Bankruptcy Code, or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such after the occurrence of a default (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; and (iv) not otherwise altering the legal, equitable or contractual rights to which such Claim or Interest entitles the Holder of such Claim or Interest; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants

1585431.4

regarding corporate existence, prohibiting certain transactions or actions contemplated by this Plan, or conditioning such transactions or actions on certain factors, shall not be required to be reinstated in order to accomplish Reinstatement.

**1.71** *Reorganized HMC* means HMC on and after the Effective Date, including as converted to and/or reconstituted as a nonprofit corporation.

**1.72** *Reorganized HMCE* means HMCE on and after the Effective Date, including as converted to and/or reconstituted as a nonprofit corporation.

**1.73** *Reorganized HMCW* means HMCW on and after the Effective Date, including as converted to and/or reconstituted as a nonprofit corporation.

**1.74** *Reorganized Debtors* means collectively Reorganized HMC, Reorganized HMCE and Reorganized HMCW.

**1.75** *Schedules* means, with respect to any Debtor, the schedules of assets and liabilities filed by such Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as such schedules have been or may be amended or supplemented by the Debtors from time to time.

**1.76** *Section 502(h) Claim* means any Claim arising under section 502(h) of the Bankruptcy Code.

**1.77** *Section 503(b)(9) Claim* means any Claim arising under section 503(b)(9) of the Bankruptcy Code.

**1.78** *Securities Act* means the Securities Act of 1933, 15 U.S.C. §§ 77c-77aa, as now in effect or hereafter amended.

**1.79** *SFHS* means collectively St. Francis Healthcare System of Hawaii, St. Francis Medical Center and St. Francis Medical Center-West.

**1.80** *SFHS Claim* means the aggregate amount of obligations owing by the Debtors under the SFHS Secured Credit Agreement and the other SFHS Secured Credit Documents as of the Effective Date, including (i) all principal obligations owing under the SFHS Secured Credit Agreement, (ii) all accrued and unpaid interest owing under the SFHS Secured Credit Agreement, (iii) all accrued and unpaid fees and expenses that are chargeable or reimbursable under the SFHS Secured Credit Documents and (iv) all other fees, charges and expenses that are chargeable or reimbursable under the SFHS Secured Credit Documents, in each case to the extent allowable under section 506(b) of the Bankruptcy Code.

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed  05/28/10   Page 61 of 134

**1.81** *SFHS Effective Date Payment* shall have the meaning set forth in Section 3.3(a) of this Plan.

**1.82** *SFHS Leases* means all non-residential real property leases under which SFHS is a lessor to any of the Debtors.

**1.83** *SFHS Plan* shall have the meaning set forth in Section 12.14 of this Plan.

**1.84** *SFHS Pre-Effective Date Payment* shall have the meaning set forth in Section 3.3(a) of this Plan.

**1.85** *SFHS Secured Credit Agreement* means that certain Loan Agreement dated as of January 13, 2007, as amended, modified or supplemented from time to time, by and among HMC, as borrower, and SFHS, as lenders.

**1.86** *SFHS Secured Credit Documents* means, collectively, the SFHS Secured Credit Agreement and all other agreements, instruments, notes, interest pledges, guaranties and other documents executed in connection therewith, including, without limitation, the SFHS Secured Credit Guaranties and all collateral and security documents executed by the Debtors and certain Non-Debtor Affiliates in favor of SFHS.

**1.87** *SFHS Secured Credit Guaranties* means those certain guaranties and those certain interest pledges dated as of January 13, 2007 as amended, modified or supplemented from time to time, made by CHA Hawaii, HPG and certain individuals, as guarantors of all SFHS Secured Obligations, in favor of SFHS.

**1.88** *SFHS Secured Obligations* means all validly perfected obligations of the Debtors arising under the SFHS Secured Credit Agreement or any other SFHS Secured Credit Document, including all loans, advances, debts, liabilities, fees, charges, expenses and obligations for the performance of covenants, tasks or duties, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, and whether arising by reason of an extension of credit, loan, foreign exchange risk, guaranty, indemnification, or in any other manner.

**1.89** *Siemens Financial* means Siemens Financial Services, Inc.

**1.90** *Siemens Leases* means certain master lease agreements by and among Siemens Medical, HMC and HMCW.

**1.91** *Siemens Medical* means Siemens Medical Solutions USA, Inc.

1585431.4

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed 05/28/10   Page 62 of 134

**1.92** ***Siemens Secured Credit Agreement*** means that certain Loan and Security Agreement dated as of January 13, 2007, as amended, modified or supplemented from time to time, by and among HMC, HMCE, HMCW, as borrowers, and Siemens Financial.

**1.93** ***Siemens Secured Credit Documents*** means, collectively, the Siemens Secured Credit Agreement and all other agreements, instruments, notes, guarantees and other documents executed in connection therewith, including, without limitation, the Siemens Secured Credit Guaranties and all collateral and security documents executed by the Debtors and certain Non-Debtor Affiliates in favor of Siemens Financial.

**1.94** ***Siemens Secured Credit Guaranties*** means those guaranties dated as of January 13, 2007 as amended, modified or supplemented from time to time, made by HMCW, HMCE, CHA Hawaii, respectively, as guarantors of all Siemens Secured Obligations, in favor of Siemens Financial.

**1.95** ***Siemens Secured Lender Claim*** means the aggregate amount of the Siemens Secured Obligations owing by the Debtors under the Siemens Secured Credit Agreement and the other Siemens Secured Credit Documents as of the Effective Date, including (i) all principal obligations owing under the Siemens Secured Credit Agreement, (ii) all accrued and unpaid interest owing under the Siemens Secured Credit Agreement, (iii) all accrued and unpaid fees and expenses that are chargeable or reimbursable under the Siemens Secured Credit Documents, and (iv) all other fees, charges and expenses that are chargeable or reimbursable under the Siemens Secured Credit Documents, in each case to the maximum extent allowable under section 506(b) of the Bankruptcy Code.

**1.96** ***Siemens Secured Obligations*** means all obligations of the Debtors arising under the Siemens Secured Credit Agreement or any other Siemens Secured Credit Document, including all loans, advances, debts, liabilities, fees, charges, expenses and obligations for the performance of covenants, tasks or duties, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, and whether arising by reason of an extension of credit, loan, foreign exchange risk, guaranty, indemnification, or in any other manner

**1.97** ***Siemens Services Agreements*** means the agreements with Siemens Medical for the provision of certain services related to certain equipment located at HMCE and HMCW.

**1.98** ***Substantive Consolidation Order*** means an order, or provision of the

1585431.4

Confirmation Order, substantively consolidating the Chapter 11 Cases for certain purposes, as provided in Section 5.1 of this Plan.

**1.99** *Term Note A* shall have the meaning ascribed to such term in Section 3.3(a) of this Plan.

**1.100** *.Term Note A Interest Rate* shall have the meaning ascribed to such term in Section 3.3(a) of this Plan.

**1.101** *Unimpaired Claim* means a Claim that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.102** *Unimpaired Employee Claims* means the Claims of the Debtors' employees who are employed with the Reorganized Debtors as of the Effective Date with respect to any such employees' PTO accruals.

**1.103** *.Workers Compensation LC* means that certain irrevocable standby letter of credit No. LCA03120701433NY issued by The Royal Bank of Scotland on March 12, 2007 in favor of the State of Hawaii Department of Labor and Industrial Relations that is scheduled to expire on December 31, 2011.

**1.104** *Year One* shall have the meaning ascribed to it in Section 3.3(b) of this Plan.

*Rules of Interpretation and Computation of Time.* For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule Filed or to be Filed means such document or schedule, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in this Plan to Sections, Articles, Schedules, and paragraphs are references to Sections, Articles, Schedules, and paragraphs of or to this Plan; (f) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of formation,

1585431.4

limited liability operating agreement, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (j) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

*Exhibits, Plan and Schedules.* All Exhibits and Plan Schedules are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits and Plan Schedules shall be timely filed with the Bankruptcy Court in accordance with this Plan. Holders of Claims and Interests may obtain a copy of the filed Exhibits and Plan Schedules upon written request to counsel for the Debtors. Upon their filing, the Exhibits and Plan Schedules may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours. The documents contained in the Exhibits and Plan Schedules shall be approved by the Bankruptcy Court pursuant to the Confirmation Order. All Exhibits and Plan Schedules are also accessible at http://www.kccllc.net/chahawaii.

# ARTICLE II.

## CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified.

This Plan constitutes a single plan of reorganization for HMC, HMCE, and HMCW. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date. This Plan is <u>not</u> a plan of reorganization for CHA Hawaii.

**2.1**    *Unclassified Claims* (not entitled to vote on this Plan).

         (a)      Administrative Claims.

         (b)      Priority Tax Claims.

**2.2**    *Unimpaired Classes of Claims* (Classes 1, 2, 3 and 4 are deemed to have accepted this Plan and, therefore, not entitled to vote on this Plan).

         (a)      Class 1: Non-Tax Priority Claims.

         (b)      Class 2: Other Secured Claims.

         (c)      Class 3: Unimpaired Employee Claims.

         (d)      Class 4: Siemens Secured Lender Claim.

**2.3**    *Impaired Classes of Claims* (Classes 5, 6 and 7 are entitled to vote on this Plan).

         (a)      Class 5: SFHS Claim.

1585431.4

(b)      Class 6: General Unsecured Claims (other than Convenience Claims).

(c)      Class 7: Convenience Claims.

**2.4      *Impaired Class of Interests*** (Class 8 is deemed to reject this Plan and, therefore, is not entitled to vote on this Plan).

(a)      Class 8: Interests.

# ARTICLE III.

## TREATMENT OF CLAIMS AND INTERESTS

**3.1      *Unclassified Claims.***

(a)      Administrative Claims. Subject to the provisions of sections 330, 331 and 503(b) of the Bankruptcy Code, each Allowed Administrative Claim (including Allowed Section 503(b)(9) Claims) shall be paid by the Reorganized Debtors in full, in Cash, 30 days after the later of (i) the Effective Date, (ii) the due date thereof in accordance with its terms, (iii) the date upon which such Administrative Claim becomes an Allowed Claim, (iv) for any liability incurred in the ordinary course of a Debtor's business, the date upon which such liability is payable in the ordinary course of such Debtor's business, consistent with past practices or (v) such other date as may be agreed upon between the Holder of such Allowed Administrative Claim and the Reorganized Debtors.

(i)      *Bar Dates For Administrative Claims.*

(A)      *General Administrative Claim Bar Date.* Except as otherwise provided herein, unless previously Filed or paid, requests for payment of Administrative Claims (other than for an Administrative Claim (i) incurred in the ordinary course of the Debtors' postpetition business; (ii) for taxes imposed by governmental units and (iii) for Professionals) must be Filed and served on the Debtors or Reorganized Debtors no later than 60 days after the Effective Date (the "General Administrative Claims Bar Date"); provided, however, that the General Administrative Claims Bar Date may be extended from time to time upon mutual

1585431.4

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed  05/28/10   Page 67 of 134

agreement of the Reorganized Debtors and the applicable Holder of an Administrative Claim, or pursuant to an Order of the Bankruptcy Court.

(B)     *Ordinary Course Liabilities*.     Holders of Administrative Claims based on liabilities incurred post-petition in the ordinary course of the Debtors' business (other than Claims of governmental units for taxes or Claims and/or penalties related to such taxes) shall not be required to File any request for payment of such Claims. Such Administrative Claims shall be paid by the Reorganized Debtors in the ordinary course of business, as appropriate, pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claim or pursuant to past practices, without any further action by the Holders of such Claims, subject to any applicable defenses of the Reorganized Debtors.

(C)     *Tax Claims*.     All requests for payment of Administrative Claims for postpetition federal, state and local taxes, for which no bar date has otherwise been previously established, must be Filed on or before the later of (i) 60 days following the Effective Date; and (ii) 120 days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit. Any Holder of any Administrative Claim for postpetition federal, state and local taxes that is required to File a request for payment of such taxes and that does not File such a Claim by the applicable bar date shall be forever barred from asserting any such Administrative Claim against any of the Debtors or Reorganized Debtors, or any of their respective properties.

(D)     *Professional Fees*. All requests for payment of Professional Fees are addressed in Section 5.11 of this Plan.

(ii)     *Deadline For Objections*.     Holders of Administrative Claims (including, without limitation, the holders of any

1585431.4

Administrative Claims for postpetition federal, state or local taxes, but excluding Claims of Professionals) that are required to File a request for payment of such Claims and that do not File such requests by the applicable bar date shall be forever barred from asserting such Claims against any of the Debtors or the Reorganized Debtors or any of their respective properties. Unless extended by the Bankruptcy Court or by agreement of the Reorganized Debtors and the Filing party, objections to such request must be Filed and served on the requesting party by the later of 120 days after the Effective Date or (b) 60 days after the Filing of the applicable request for payment of an Administrative Claim.

(b)     *Priority Tax Claims.*  Each Holder of an Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim regular installment payments from the Reorganized Debtors in Cash (i) of a total value, as the Effective Date, equal to the Allowed amount of such Allowed Priority Tax Claim, (ii) over a period not later than five years from the Petition Date; and (iii) at the appropriate non-bankruptcy interest rate pursuant to section 511 of the Bankruptcy Code.

### 3.2     *Unimpaired Classes of Claims.*

(a)     Class 1:  Non-Tax Priority Claims. Thirty days after the later of (a) the Effective Date and (b) the date on which such Non-Tax Priority Claim is Allowed by the Bankruptcy Court, each Holder of an Allowed Non-Tax Priority Claim shall, at the option of the Reorganized Debtors (i) receive a Cash payment from the Reorganized Debtors in full satisfaction of its Allowed Non-Tax Priority Claim or (ii) have its Allowed Non-Tax Priority Claim Reinstated against the Reorganized Debtors.

(b)     Class 2:   Other Secured Claims. Unless the applicable Holder of an Allowed Other Secured Claim and the Reorganized Debtors agree to a different treatment, each Holder of an Allowed Other Secured Claim shall (a) receive from the Reorganized Debtors, 30 days after the Effective Date, in full satisfaction of its Allowed Other Secured Claim, at the option of the Reorganized Debtors: (i) the net proceeds of the sale of the property securing such Allowed Other Secured Claim, up to the allowed amount of such Allowed Other Secured Claim; (ii) the return of property securing such Allowed Other Secured Claim; (iii) payments in accordance with the provisions of any agreement relating to the property, on substantially the same terms as such agreement; or (iv) Cash equal to the value of the property securing such Allowed Other Secured Claim, up

1585431.4

to the value of the Allowed Other Secured Claim, or (b) have its Allowed Other Secured Claim Reinstated against the Reorganized Debtors.

   (c) Class 3: Unimpaired Employee Claims: On the Effective Date, all PTO that was accrued as of the Petition Date by any employee of the Debtors employed by the Reorganized Debtors as of the Effective Date shall be Reinstated against the Reorganized Debtors.

   (d) Class 4: Siemens Secured Lender Claim. The Siemens Secured Lender Claim shall be Allowed and paid in full in Cash on the Effective Date by the Reorganized Debtors. In addition, on the Effective Date, the Reorganized Debtors shall either (i) cause the cancellation of the Workers Compensation LC, or (ii) fully collateralize the Workers Compensation LC with a cash deposit in all respects acceptable to Siemens Financial.

### 3.3 *Impaired Classes of Claims.*

   (a) Class 5: SFHS Claim. In full satisfaction of the SFHS Claim, on the Effective Date, the Reorganized Debtors shall deliver to SFHS: (i) Cash in the amount of $4,746,240 plus the amount, if any, of cash collateral of SFHS held by the Debtors as of the Effective Date constituting proceeds of prepetition collateral of SFHS (collectively, the "SFHS Effective Date Payment");[2] and (ii) a promissory note ("Term Note A") from and payable by the Reorganized Debtors in a principal amount equal to the amount outstanding under the SFHS Secured Credit Agreement[3] as of the Petition Date less the sum of the SFHS Pre-Effective Date Payment and the SFHS Effective Date Payment. Term Note A shall bear interest from the Effective Date at the rate of 8.04% per annum (the "Term Note A Interest Rate") and be paid semi-annually (twice a year) on the Fiscal Year Mid Date and the Fiscal Year End Date beginning on the Fiscal Year Mid Date immediately following the Effective Date; provided, however, that the first semi-annual payment shall be made in two equal installments on December 31, 2010 and March 31, 2011. The principal amount of Term Note A shall be due and payable on the seventh anniversary of the Effective Date. Term Note A shall have a default interest rate of 10.04%. Term Note A shall be secured by liens

---

[2] In the event that the Bankruptcy Court enters the Amended Adequate Protection Judgment, then on June 1, 2010 the Debtors shall pay to SFHS the amount then currently held by the Debtors constituting proceeds of prepetition collateral of SFHS (currently projected to be approximately $1.7 million) ("SFHS Pre-Effective Date Payment") which shall be applied to and reduce the principal amounts outstanding under the SFHS Secured Credit Agreement as of the Petition Date.

[3] As of the Petition Date, the amount outstanding under the SFHS Secured Credit Agreement consisted of the Term Loan (as defined in the SFHS Secured Credit Agreement) in the principal amount of $40,287,996 and the Working Capital Loan (as defined in the SFHS Secured Credit Agreement) in the amount of $6,368,947.

1585431.4

against the same assets of the Reorganized Debtors as described in the SFHS Secured Credit Documents. Term Note A shall also be secured with a lien against the Reorganized Debtors' cash and accounts, including, without limitation, health-care insurance receivables, which lien shall be junior to liens granted in favor of the Exit Facility Lender and shall be subject to an intercreditor agreement between SFHS and the Exit Facility Lender in a form reasonably acceptable to SFHS and the Exit Facility Lender. The loan agreement and ancillary documents for Term Note A shall have standard covenants and standard commercial loan provisions reasonably acceptable to SFHS, the Debtors and the Creditors Committee. Term Note A shall permit a working capital facility, in an amount not to exceed $14 million, to have a first priority security interest in health-care insurance receivables.

(b)  Class 6: General Unsecured Claims (other than Convenience Claims). In full satisfaction, settlement of and in exchange for Allowed General Unsecured Claims (other than Allowed Convenience Claims), the Reorganized Debtors, on account of (i) 100% of the total amount of Allowed General Unsecured Claims (excluding Allowed Section 502(h) Claims and Allowed Deficiency Claims)[4] up to $21,000,000; (ii) 50% of the total amount of Allowed General Unsecured Claims (excluding Allowed Section 502(h) Claims and Allowed Deficiency Claims) in excess of $21,000,000; (iii) any Allowed Section 502(h) Claims; and (iv) any Allowed Deficiency Claims (i, ii, iii, and iv together the "GUC Obligation"), shall pay, in Cash, to each Holder of an Allowed General Unsecured Claim (other than an Allowed Convenience Claim) the remaining balance of the amount of such Holder's pro rata share of the GUC Obligation in full (the "GUC Principal Payments") as follows:

(x)  on the Fiscal Year End Date of the first fiscal year immediately following the first fiscal year containing the Effective Date ("Year One"), the lesser of (a) the then outstanding balance of the amount of such Holder's pro rata share of the GUC Obligation and (b) such Holder's pro rata share of $1,500,000 plus the Term Note A Interest Rate multiplied by the amount of any Deficiency Claim; and

---

[4]  Except as otherwise set forth herein, the Plan Proponents do not expect any Allowed Section 502(h) Claims or any Allowed Deficiency Claims.

1585431.4

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed 05/28/10  Page 71 of 134

(y)   semi-annually (twice a year, on the Fiscal Year Mid Date and the Fiscal Year End Date), beginning on the Fiscal Year Mid Date of the second fiscal year following Year One as follows: during the second fiscal year through the fourth fiscal year following Year One, the lesser of (a) the then outstanding balance of the amount of such Holder's pro rata share of the GUC Obligation and (b) such Holder's pro rata share of $750,000 plus 50% of the Term Note A Interest Rate multiplied by the amount of any Allowed Deficiency Claim; during the fifth fiscal year through the ninth fiscal year following Year One, the lesser of (a) the then outstanding balance of the amount of such Holder's pro rata share of the GUC Obligation and (b) such Holder's pro rata share of $1,000,000 plus 50% of the Term Note A Interest Rate multiplied by the amount of any Allowed Deficiency Claim; during the tenth fiscal year through the thirteenth fiscal year following Year One, the lesser of (a) the then outstanding balance of the amount of such Holder's pro rata share of the GUC Obligation and (b) such Holder's pro rata share of $1,250,000 plus 50% of the Term Note A Interest Rate multiplied by the amount of any Allowed Deficiency Claim; on the Fiscal Year Mid Date of the fourteenth fiscal year following Year One, the lesser of (a) the then outstanding balance of the amount of such Holder's pro rata share of the GUC Obligation and (b) such Holder's pro rata share of $1,250,000 plus 50% of the Term Note A Interest Rate multiplied by the amount of any Allowed Deficiency Claim; and on the Fiscal Year End Date of the fourteenth fiscal year following Year One, the then outstanding balance (if any) of the amount of such Holder's pro rata share of the GUC Obligation.

*Prepayment Option for Reorganized Debtors to Pay Holders of Allowed General Unsecured Claims (other than Allowed Convenience Claims) at a Discount.* Provided that the Reorganized Debtors are then current with and have made all distributions then required by this Plan to the Holders of Allowed General Unsecured Claims[5], the Reorganized Debtors may pre-pay and satisfy all the then remaining GUC Principal Payments due to the Holders of Allowed General Unsecured Claims at a discount (the "GUC Prepayment Option") by paying to

---

[5]   For the avoidance of doubt, these distributions are all distributions required by this Plan to the Holders of Allowed General Unsecured Claims through and including the date on which the GUC Prepayment Option is exercised.

1585431.4

each Holder of an Allowed General Unsecured Claim (other than an Allowed Convenience Claim) in Cash: (i) through and including the Fiscal Year End Date following the Effective Date, 57.14% of the then entire outstanding balance owed under this Plan to such Holder of an Allowed General Unsecured Claim (other than an Allowed Convenience Claim); (ii) after the first Fiscal Year End Date following the Effective Date, through and including the second Fiscal Year End Date following the Effective Date, 58.82% of the then entire outstanding balance owed under this Plan to such Holder of an Allowed General Unsecured Claim (other than an Allowed Convenience Claim); (iii) after the second Fiscal Year End Date following the Effective Date, through and including the third Fiscal Year End Date following the Effective Date, 62.50% of the then entire outstanding balance owed under this Plan to such Holder of an Allowed General Unsecured Claim (other than an Allowed Convenience Claim); (iv) after the third Fiscal Year End Date following the Effective Date, through and including the fourth Fiscal Year End Date following the Effective Date, 66.67% of the then entire outstanding balance owed under this Plan to such Holder of an Allowed General Unsecured Claim (other than an Allowed Convenience Claim); (v) after the fourth Fiscal Year End Date following the Effective Date, through and including the fifth Fiscal Year End Date following the Effective Date, 71.43% of the then entire outstanding balance owed under this Plan to such Holder of an Allowed General Unsecured Claim (other than Allowed Convenience Claim); (vi) after the fifth Fiscal Year End Date following the Effective Date, through and including the sixth Fiscal Year End Date following the Effective Date, 76.92% of the then entire outstanding balance owed under this Plan to such Holder of an Allowed General Unsecured Claim (other than an Allowed Convenience Claim); (vii) after the sixth Fiscal Year End Date following the Effective Date, through and including the seventh Fiscal Year End Date following the Effective Date, 83.33% of the then entire outstanding balance owed under this Plan to such Holder of an Allowed General Unsecured Claim (other than an Allowed Convenience Claim); (viii) after the seventh Fiscal Year End Date following the Effective Date, through and including the eighth Fiscal Year End Date following the Effective Date, 90.91% of the then entire outstanding balance owed under this Plan to such Holder of an Allowed General Unsecured Claim (other than an Allowed Convenience Claim).

(c)     Class 7:  Convenience Claims.   All Allowed General Unsecured Claims in the amount of $5,000 or less shall be deemed Allowed Convenience Claims.  On the Effective Date, each Holder of an Allowed Convenience Claim shall receive, in full satisfaction, settlement of and in exchange for, such Holder's Allowed Convenience Claim, a Cash distribution from the

Reorganized Debtors in the amount of 50% of such Holder's Allowed Convenience Claim.

*Opt-in Provision.* Each Holder of an Allowed General Unsecured Claim in an amount greater than $5,000 may elect to have such Holder's Allowed General Unsecured Claim reduced to $5,000 and treated as an Allowed Convenience Claim. Each Holder of an Allowed General Unsecured Claim in an amount greater than $5,000 who elects to have such Holder's Allowed General Unsecured Claim treated as an Allowed Convenience Claim shall receive a $2,500 Cash distribution (50% of $5,000) from the Reorganized Debtors on the Effective Date. Such election may be made on such Holder's Ballot.

**3.4** *Impaired Class of Interests.* On the Effective Date, all Interests in each of the Debtors shall be deemed cancelled and extinguished. Holders of Interests shall not receive or retain under this Plan on account of their Interests any property.

**3.5** *Special Provision Regarding Unimpaired Claims.* Except as otherwise explicitly provided in this Plan, nothing herein shall affect the Debtors' or the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed 05/28/10   Page 74 of 134

# ARTICLE IV.

## ACCEPTANCE OR REJECTION OF THIS PLAN

**4.1** *Impaired Classes of Claims and Interests Entitled to Vote.* Class 5, Class 6, Class 7 and Class 8 are Impaired by this Plan. Holders in each Impaired Class of Claims (Class 5, Class 6, and Class 7) are entitled to vote as a class to accept or reject this Plan. Class 8 is deemed to reject this Plan and is not entitled to vote.

**4.2** *Acceptance by an Impaired Class.* In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall be deemed to have accepted this Plan if this Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

**4.3** *Presumed Acceptances by Unimpaired Classes.* Class 1, Class 2, Class 3 and Class 4 are Unimpaired by this Plan. Under section 1126(f) of the Bankruptcy Code, Holders of Claims in Class 1, Class 2, Class 3, and Class 4 are conclusively presumed to have accepted this Plan, and the votes of the Holders of such Claims shall not be solicited.

# ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THIS PLAN

**5.1** *Substantive Consolidation for Purposes of Treating Impaired Claims.*

(a) *Substantive Consolidation.* This Plan contemplates and is predicated upon entry of an order substantively consolidating the Debtors solely for the purposes of this Plan, that is, for voting, confirmation and distribution purposes. This Plan does not contemplate the substantive consolidation of the Debtors for any other purpose. On the Effective Date (i) all guarantees of any Debtor of the payment, performance, or collection of another Debtor shall be deemed eliminated and cancelled, (ii) any obligation of any Debtor and all guarantees executed by one or more of the other Debtors shall be treated as a single obligation and any obligation of two or more Debtors, and all multiple

1585431.4

Impaired Claims against such entities on account of such joint obligations shall be treated and Allowed only as a single Impaired Claim against the consolidated Debtors and (iii) each Claim filed against any Debtor shall be deemed filed against the consolidated Debtors and shall be deemed a single Claim against and a single obligation of the consolidated Debtors. On the Effective Date, and in accordance with the terms of this Plan and the consolidation of the assets and liabilities of the Debtors, all Claims based upon guarantees of collection, payment, or performance made by the Debtors as to the obligations of another Debtor shall be released and of no further force and effect. Except as set forth in this Section 5.1, such substantive consolidation shall not (other than for purposes related to this Plan) (i) affect the legal and corporate structures of the Reorganized Debtors, (ii) cause any Debtor to be liable for any Impaired Claim or Unimpaired Claim under this Plan for which it otherwise is not liable, and the liability for any such Claim shall not be affected by such substantive consolidation, (iii) affect Interests in Debtors, (iv) affect any obligations under any leases or contracts assumed in this Plan or otherwise subsequent to the filing of the Chapter 11 Cases or (v) affect any obligations to pay quarterly fees to the United States Trustee. On the Effective Date, all Claims of a Debtor against another Debtor shall be deemed extinguished.

        (b) *Substantive Consolidation Order*. Unless the Bankruptcy Court has approved the substantive consolidation of the Chapter 11 Cases by a prior order, this Plan shall serve as, and shall be deemed to be, a motion for entry of an order substantively consolidating the Debtors as provided in Section 5.1 hereof. If no objection to substantive consolidation is timely filed and served by any Holder of an Impaired Claim affected by this Plan as provided herein on or before the deadline for objection to confirmation of this Plan, the Substantive Consolidation Order (which may be the Confirmation Order) may be entered by the Bankruptcy Court. If any such objections are timely filed and served, a hearing with respect to the substantive consolidation of the Chapter 11 Cases and the objections thereto shall be scheduled by the Bankruptcy Court, which hearing may, but is not required to, coincide with the Confirmation Hearing.

        (c) *Vesting of Assets in the Reorganized Debtors*. As of the Effective Date, pursuant to the provisions of section 1141(b) and (c) of the Bankruptcy Code, all assets of the Debtors of any nature whatsoever, including, without limitation, all property of the Debtors' Estates including, without limitation, Cash, causes of action, accounts receivable, tax refunds, claims, rights, interests and property (real and personal, tangible and intangible), and proceeds of all of the foregoing, shall vest in the Reorganized Debtors free and clear of all Claims, liens, encumbrances, charges, Interests, except as otherwise expressly

1585431.4

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed  05/28/10   Page 76 of 134

provided in this Plan or the Confirmation Order, and subject to the terms and conditions of this Plan and the obligations of the Reorganized Debtors under this Plan.

(d)  *Payments by Reorganized Debtors*.  On and after the Effective Date, all payments and distributions required by this Plan shall be made by the Reorganized Debtors.

### 5.2  *Intentionally Omitted*

### 5.3  *Transactions Authorized Under this Plan*

(a)  *General*.  The Plan Proponents and the Reorganized Debtors are authorized to take such actions as may be necessary or appropriate to effectuate this Plan and Confirmation Order.  On and after the Effective Date, the Reorganized Debtors shall make all payments and distributions required by this Plan in accordance with the terms of this Plan.

(b)  *Reorganized Debtors Conversion to Nonprofit Corporations*.  In the event that the Debtors have not already converted to Hawaii nonprofit corporations as of the Effective Date, the Reorganized Debtors, on the Effective Date or as soon as reasonably practicable thereafter, shall adopt plans of conversion, file articles of conversion, and take such other steps as are necessary to cause the Reorganized Debtors to become organized as Hawaii nonprofit corporations.  Upon the Filing of this Plan, the Debtors shall immediately commence taking the requisite steps to convert the Debtors to nonprofit corporations under applicable Hawaii law.

### 5.4  *Continued Corporate Existence and Vesting of Assets in the Reorganized Debtors.*

Except as otherwise provided in this Plan, and subject to the terms and conditions of this Plan and the obligations of the Reorganized Debtors under this Plan, on and after the Effective Date, all property of the Debtors' Estates, including all claims, rights, and causes of action and any property acquired by the Debtors under or in connection with this Plan, shall vest in the Reorganized Debtors free and clear of all Claims, liens, charges, other encumbrances, and Interests.  On and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code

1585431.4

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed  05/28/10  Page 77 of 134

or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order. Without limiting the foregoing, the Reorganized Debtors may pay the charges that they respectively incur on or after the Effective Date for professionals' fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

### 5.5 *Corporate Governance, Tax Exemption and Corporate Action.*

(a) *Corporate Governance.* On the Effective Date, the Reorganized Debtors shall each (i) adopt articles of incorporation and by-laws in form and substance acceptable to the Plan Proponents and consistent with this Plan and (ii) appoint an initial board of directors and initial officers consisting of the individuals selected in accordance with this Plan. The initial board of directors of each of the Reorganized Debtors shall consist of nine voting members. With respect to the initial board of directors of each of the Reorganized Debtors, HPG shall appoint three voting board members, the Creditors Committee shall appoint one voting board member (who shall not be a member of HPG), and SFHS shall appoint three voting board members (one of whom shall be an employee of SFHS and two of whom shall be members of the community). The remaining two voting board members of the initial board of directors of each of the Reorganized Debtors shall consist of persons jointly appointed by and acceptable to each of HPG, the Creditors Committee and SFHS. The individuals selected to serve on the initial board of directors of each of the Reorganized Debtors will be listed in the Plan Supplement. CHA Hawaii shall have no involvement in the management of the Reorganized Debtors and shall not have any board observer status. Management of the Reorganized Debtors may hold non-voting roles on the boards of the Reorganized Debtors. The Debtors' current onsite (in Hawaii) day-to-day management will continue as the management of the Reorganized Debtors. The individuals who will serve as officers of each of the Reorganized Debtors will be listed in the Plan Supplement. The boards of the Reorganized Debtors shall evaluate the performance of the chief executive officer of the Reorganized Debtors no later than the first anniversary of the Effective Date based on the business plan and projections supporting this Plan.

(b) *Tax Exemption.* Upon conversion to nonprofit corporate form, the Debtors or Reorganized Debtors, as the case may be, shall apply for exemption from federal income tax under section 501(c)(3) of the Internal Revenue Code and for exemption from the Hawaii General Excise Tax (and, as appropriate, other state and/or local taxes).

1585431.4

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed 05/28/10  Page 78 of 134

(c)     *Corporate Action.*  On the Effective Date, the adoption of any new organizing documents, the selection of directors and officers for the Reorganized Debtors, and all other actions contemplated by this Plan shall be authorized and approved in all respects (subject to the provisions of this Plan). All matters provided for in this Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with this Plan, shall be deemed to have timely occurred in accordance with applicable law and shall be in effect, without any requirement of further action by the security holders or directors of the Debtors or the Reorganized Debtors. On the Effective Date, the appropriate officers of the Reorganized Debtors shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by this Plan in the name of and on behalf of the Reorganized Debtors.

**5.6     *Cancellation of Notes, Instruments, and Interests.***  On the Effective Date, except as otherwise provided for in this Plan, (a) the SFHS Secured Credit Documents and the Siemens Secured Credit Documents and any other notes, guarantees, or other instruments or documents evidencing or creating any indebtedness or obligations of a Debtor that are Impaired under this Plan shall be cancelled, and (b) the obligations of the Debtors under any agreements, guarantees, or certificates of designation governing the Siemens Secured Lender Claim, SFHS Claim, General Unsecured Claims and any other Claims or any notes, guarantees, or other instruments or documents evidencing or creating any Claims against a Debtor that are Impaired under this Plan shall be discharged, subject to the terms of this Plan and the obligations of the Reorganized Debtors under this Plan. For the avoidance of doubt, except as set forth in Section 5.12 of this Plan, nothing in this Plan shall serve to release the Physician Guarantors or any other non-Debtor party from a guarantee in favor of SFHS.

**5.7     *Issuance and Distribution of New Notes and Related Matters.***  On the Effective Date, (i) the Debtors shall issue to SFHS the Term Note A, without the need for further approval under any applicable law, regulation, order, or rule and such issuance shall be exempt from registration under applicable securities laws pursuant to section 1145(a) of the Bankruptcy Code and (ii) the Reorganized Debtors shall issue or distribute all other instruments, certificates and other documents required to be issued or distributed by any of the Reorganized Debtors pursuant to this Plan without the need for further approval under any applicable law, regulation, order, or rule and with exemption from registration under applicable securities laws pursuant to section 1145(a) of the Bankruptcy

1585431.4

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed  05/28/10  Page 79 of 134

Code. Without limiting the effect of section 1145 of the Bankruptcy Code, all documents, agreements, and instruments entered into on or as of the Effective Date contemplated by or in furtherance of this Plan shall become effective and binding in accordance with their respective terms and conditions upon the parties thereto.

**5.8** **_Exit Financing._** The Plan Proponents believe that the Debtors require Exit Financing to exit bankruptcy. Subject to the approval of the Exit Facility by the Plan Proponents, the Debtors or the Reorganized Debtors, as applicable, shall be authorized to (a) enter into the Exit Facility, (b) grant any liens and security interests and incur or guarantee the indebtedness as required under the Exit Facility, and (c) issue, execute and deliver all documents, instruments and agreements necessary to implement and effectuate borrowings under the Exit Facility.

**5.9** **_United States Trustee Professional Fees._** During the pendency of the Chapter 11 Cases, the Reorganized Debtors shall be obligated to pay accrued quarterly post-confirmation fees pursuant to 28 U.S.C. § 1930(a)(6) regarding the Chapter 11 Cases.

**5.10** **_Sources of Cash for Plan Distributions._** Except as otherwise provided in this Plan or the Confirmation Order, all Cash necessary for the Reorganized Debtors to make payments pursuant to this Plan shall be obtained from existing Cash balances, the operations of the Debtors and the Reorganized Debtors, and borrowings under the Exit Facility Credit Agreement.

**5.11** **_Professional Fees._** All Professional Fees incurred prior to and including the Effective Date shall be subject to final allowance or disallowance upon application to the Bankruptcy Court pursuant to sections 330 or 503(b)(4) of the Bankruptcy Code. Final applications for Professional Fees for services rendered in connection with the Chapter 11 Cases shall be filed with the Bankruptcy Court no later than 30 days after the Effective Date.

**5.12** **_Physician Guaranties._** On the Effective Date, St. Francis shall offer the Physician Guarantors the opportunity to enter into amended and restated Physician Guaranties that will include the following terms:

        (i)     Such Physician Guaranty shall be reduced by the applicable PG Pro Rata Share of the Effective Date Physician Guaranty Reduction Amount and any Additional Physician Guaranty

Reduction Amount. Each Physician Guarantor's pro rata share of the Effective Date Physician Guaranty Reduction Amount and any Additional Physician Guaranty Reduction Amount shall be equal to a percentage calculated as such Physician Guarantor's maximum liability under his or her Physician Guaranty divided by the aggregate amount of all Physician Guaranties (the "PG Pro Rata Share"). In the event that the Effective Date occurs and SFHS receives the payments due to it on the Effective Date, then the "Effective Date Physician Guaranty Reduction Amount" shall be an amount equal to (a) $5,746,240, plus (b) the amount of cash held by the Debtors constituting proceeds of prepetition collateral of SFHS delivered to SFHS on June 1, 2010 and the Effective Date.

(ii)     Provided that the Reorganized Debtors are in compliance with the loan agreement and related documents for Term Note A, including without limitation the payment of interest on Term Note A, and are in compliance their obligations under the SFHS Leases, then (a) each dollar of principal of the Term Note A, up to $5 million, that is repaid after the payments made on the Effective Date and prior to the maturity date of Term Note A shall result in $1 of "Additional Physician Guaranty Reduction Amount"; and (b) each dollar of principal repaid after the payments made to SFHS on the Effective Date and the repayment of $5 million of the principal of Term Note A, but prior to the maturity date for Term Note A, shall result in $2 of Additional Physician Guaranty Reduction Amount.

(iii)    At any time, each Physician Guaranty may be satisfied upon such Physician Guarantor donating cash to the Reorganized Debtors in an amount equal to 50% of the remaining amount of such Physician Guarantor's Physician Guaranty, which funds will be used by the Reorganized Debtors to fund operations or capital expenditures.

## ARTICLE VI.

## PROVISIONS GOVERNING DISTRIBUTIONS

**6.1     *Distributions to Holders of Impaired Claims.*** Except as otherwise provided herein or as otherwise ordered by the Bankruptcy Court, distributions to be made on account of Impaired Claims that are Allowed as of the

1585431.4

Effective Date shall be made according to the terms of this Plan. Any distribution to be made on the Effective Date pursuant to this Plan shall be deemed as having been made on the Effective Date if such distribution is made on the Effective Date or as soon thereafter as is practicable. Any payment or distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

**6.2** ***Disputed General Unsecured Claims.*** Holders of General Unsecured Claims that become Allowed Claims after the Effective Date shall receive distributions from the Reorganized Debtors on account of such Allowed General Unsecured Claims as provided for in this Plan. The first distribution to the Holder of an Allowed General Unsecured Claim that becomes Allowed after the Effective Date shall include and make-up the distributions that would have been made up to that point had such Holder's Allowed General Unsecured Claim been Allowed on the Effective Date.

**6.3** ***No Interest on Claims.*** Unless otherwise specifically provided for in this Plan, the Confirmation Order or other order of the Bankruptcy Court, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

**6.4** ***Distributions by Reorganized Debtors.*** All distributions required to be made to Holders of Allowed Claims under this Plan shall be made by the Reorganized Debtors.

**6.5** ***Delivery of Distributions and Undeliverable or Unclaimed Distributions.***

(a) *Delivery of Distributions in General.* Distributions to Holders of Allowed Claims shall be made at the addresses set forth in the Debtors' records unless such addresses are superseded by proofs of Claim or transfers of Claim filed pursuant to Bankruptcy Rule 3001.

(b) *Undeliverable and Unclaimed Distributions.*

(i) Holding of Undeliverable and Unclaimed Distributions. If the distribution to any Holder of an Allowed Claim is returned to the Reorganized Debtors as undeliverable or is otherwise unclaimed, no further distributions shall be made, as the case may be, to

1585431.4

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed 05/28/10  Page 82 of 134

such Holder unless and until the Reorganized Debtors are notified in writing of such Holder's then current address.

(ii) <u>After Distributions Become Deliverable</u>. The Reorganized Debtors shall make all distributions that have become deliverable or have been claimed as soon as practicable after such distribution has become deliverable.

(iii) <u>Failure to Claim Undeliverable Distributions</u>. Any Holder of an Allowed Claim that does not assert a claim pursuant to this Plan for an undeliverable or unclaimed distribution within (i) one year after the Effective Date or (ii) one year after the date on which such undeliverable or unclaimed distribution was mailed, whichever is later, shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed distribution against the Debtors or their Estates, the Reorganized Debtors or their property. Any Cash for distribution on account of Claims for undeliverable or unclaimed distributions shall become property of the Reorganized Debtors and eligible for re-distribution to Holders of Allowed General Unsecured Claims. Nothing contained in this Plan shall require the Reorganized Debtors, as the case may be, to attempt to locate any Holder of an Allowed Claim.

**6.6** *Record Date for Distributions.* The Reorganized Debtors shall have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and shall be entitled for all purposes herein to recognize and distribute only to those Holders of Allowed Claims that are Holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date. The Reorganized Debtors shall instead be entitled to recognize and deal for all purposes under this Plan with only those record Holders stated on the official claims register as of the close of business on the Distribution Record Date.

**6.7** *Allocation of Plan Distributions between Principal and Interest.* To the extent that any Allowed Claim entitled to a distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, for all income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent that the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

1585431.4

**6.8** *Means of Cash Payment.* Payments of Cash made pursuant to this Plan shall be in U.S. dollars and shall be made, at the option and in the sole discretion of the Reorganized Debtors by (a) checks drawn on or (b) wire transfer from a domestic bank selected by the Reorganized Debtors. Cash payments to foreign creditors may be made, at the option of the Reorganized Debtors in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**6.9** *Withholding and Reporting Requirements.* In connection with this Plan and all distributions hereunder, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Reorganized Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. All Persons holding Claims or Interests shall be required to provide any information necessary to affect information reporting and the withholding of such taxes. Notwithstanding any other provision of this Plan, (a) each Holder of an Allowed Claim that is to receive a distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Reorganized Debtors for the payment and satisfaction of such tax obligations.

**6.10** *Setoffs.* Subject to approval of the Bankruptcy Court, the Reorganized Debtors may, pursuant to and solely in accordance with section 553 of the Bankruptcy Code or applicable nonbankruptcy laws, but shall not be required to, set off against any Claim, the payments or other distributions to be made pursuant to this Plan in respect of such Claim, or claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the Holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claim that the Debtors or the Reorganized Debtors may have against such Holder. Absent the consent of the Debtors or the Reorganized Debtors, or unless otherwise authorized pursuant to an order of the Bankruptcy Court, no party receiving a distribution under this Plan may offset such distribution against any obligations such party may have to the Debtors or the Reorganized Debtors. Without limiting any other rights of the Debtors or the

1585431.4

Reorganized Debtors provided for in this Plan, and except as otherwise set forth in this Plan (including, without limitation, with respect to the Exculpated Parties) any distributions under this Plan shall also remain subject to any causes of action, counterclaims, security interests, or other rights of the Debtors or the Reorganized Debtors with respect to such distributions and the matters giving rise to such distributions.

## ARTICLE VII.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.1** *Assumption of Executory Contracts and Unexpired Leases.* On the Effective Date, all executory contracts or unexpired leases to which any of the Debtors is a party shall be deemed automatically assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such executory contracts or unexpired leases (i) shall have been previously rejected by the Debtors by Final Order of the Bankruptcy Court, (ii) shall be the subject of a motion to reject pending on or before the Effective Date, (iii) are listed on Plan Schedule 7.1 which shall be the schedule of executory contracts or unexpired leases rejected pursuant to this Plan, or (iv) are otherwise rejected pursuant to the terms of this Plan. Plan Schedule 7.1 shall be Filed no later than five Business Days prior to the Confirmation Date. The Plan Proponents reserve the right to amend Plan Schedule 7.1 at any time prior to the Confirmation Date. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections and assumptions contemplated hereby pursuant to sections 365(a) and 1123 of the Bankruptcy Code as of the Effective Date. Each executory contract and unexpired lease assumed pursuant to this Article VII shall revest in and be fully enforceable by the respective Reorganized Debtor in accordance with its terms, except as modified by the provisions of this Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption or applicable federal law. Neither the exclusion nor the inclusion by the Plan Proponents of a contract or lease on Plan Schedule 7.1 nor anything contained in this Plan shall constitute an admission by the Plan Proponents that such lease or contract is an unexpired lease or executory contract that any Debtor or Non-Debtor Affiliate has any liability thereunder. The Plan Proponents reserve the right, subject to notice, to amend, modify, supplement, or otherwise change Plan Schedule 7.1 on or before the Effective Date.

1585431.4

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed 05/28/10   Page 85 of 134

**7.2** *Assumption of Medicare Provider Agreement(s).* The Reorganized Debtors shall expressly assume all of the Debtors' Medicare provider agreement(s) and numbers with the Centers for Medicare and Medicaid Services ("CMS"). The Reorganized Debtors shall cure any defaults under such agreements, pursuant to 11 U.S.C. § 365, by paying such defaults in the ordinary course (or such defaults shall be cured by CMS' collection of any amount due via offset or recoupment in the ordinary course). Because any amount due shall be collected in the ordinary course, CMS shall not be required to file any separate claim in the bankruptcy to collect any amounts due to CMS under the Medicare program, whether via a proof of claim, claim for cure, or administrative claim. The terms of the Debtors' participation in the Medicare program are governed by the Medicare Act and federal law and shall not be modified by the terms of this Plan or the Confirmation Order, including but not limited to any language in this Plan or the Confirmation Order granting security interests to other parties in the Debtors' healthcare accounts receivable, granting releases or imposing injunctions. Notwithstanding any other provision to this Plan or the Confirmation Order, nothing in this Plan or the Confirmation Order shall release (or operate to enjoin) any claim of the United States against any non-debtor, nor shall this Plan or the Confirmation Order operate to release or enjoin any claim, recoupment, and/or right of setoff of the United States against the Debtors, except as provided expressly by the Bankruptcy Code.

**7.3** *SFHS Leases.* The SFHS Leases shall be assumed pursuant to this Plan by the Reorganized Debtors and, notwithstanding anything to the contrary in this Plan, shall not be included on Plan Schedule 7.1.

**7.4** *Claims Based on Rejection of Executory Contracts and Unexpired Leases.* Plan Schedule 7.1 lists the executory contracts and non-residential real property leases to be rejected by the Debtors pursuant to this Plan. Plan Schedule 7.1 shall be Filed not later than five Business Days prior to the Confirmation Date. Any Claim arising from the rejection of an executory contract or non-residential real property lease listed on Plan Schedule 7.1 must be Filed within 30 days after the Effective Date or shall be forever barred from assertion against the Debtors or the Reorganized Debtors, their Estates or property. If the Plan Proponents amend Plan Schedule 7.1 after the Confirmation Date to add any executory contract or non-residential real property lease to be rejected, the non-Debtor party to any such executory contract or non-residential real property lease so added to Plan Schedule 7.1 after the Confirmation Date shall have 30 days after the Effective Date to File a Claim arising from the rejection of such executory contract or non-residential real property lease, after which, any such Claim shall be

1585431.4

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed  05/28/10  Page 86 of 134

forever barred from assertion against the Debtors or the Reorganized Debtors, their Estates or property.

**7.5    _Cure of Defaults of Assumed Executory Contracts and Unexpired Leases._**    Except as otherwise expressly provided hereunder, any monetary amounts by which each executory contract or unexpired lease to be assumed pursuant to this Plan is in default shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash within 60 days after the Effective Date or on such other terms as the parties to each such executory contract or unexpired lease may otherwise agree, subject to the review and approval of the Plan Proponents. In the event of a dispute regarding (a) the amount of any cure payments, (b) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

**7.6    _Treatment of Bank of Hawaii's Lease._**    HMC and HMCW are parties to a certain Equipment Lease Agreement (the "Lease") with Bank of Hawaii ("BOH").  Reorganized HMC and Reorganized HMCW shall assume the Lease upon the Effective Date of this Plan.

**7.7    _Treatment of Siemens Medical Leases._**    The Siemens Leases and the Siemens Service Agreements shall be deemed assumed as of the Effective Date by the Reorganized Debtors. All cure payments required by section 365(b)(1) of the Bankruptcy Code (in an amount to be provided by Siemens Financial and Siemens Medical prior to the Confirmation Hearing) relating to the Siemens Leases and Siemens Service Agreements shall be paid on or prior to the Effective Date.

**7.8    _Licensing Requirements._**    The Reorganized Debtors shall, as of the Effective Date, comply with all the proper state and federal regulatory requirements, including but not limited to, acquiring any certificates of need, licenses, permits, notices and approvals necessary to operate without restriction as healthcare facilities and to participate in Medicare, Medicaid, and any other government health benefit program in which the Debtors are currently participants under federal and Hawaii law.

1585431.4

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed 05/28/10   Page 87 of 134

**7.9** *Collective Bargaining Agreements*. The Debtors' collective bargaining agreements will be assumed by the Reorganized Debtors.

## ARTICLE VIII.

## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS

**8.1** *Objection Deadline; Prosecution of Objections.* No later than 150 days after the Effective Date (unless such deadline is extended by an order of the Bankruptcy Court), the Reorganized Debtors and the Creditors Committee (with the assistance and cooperation of the Reorganized Debtors) may file objections to Claims with the Bankruptcy Court and serve such objections upon the Holders of each of the Claims to which objections are made; provided, however, that the Reorganized Debtors and Creditors Committee shall not object to any Claims that are Allowed pursuant to this Plan. The Reorganized Debtors and the Creditors Committee (with the assistance and cooperation of the Reorganized Debtors) shall be authorized to resolve all Disputed Claims through settling or by litigating to judgment in the Bankruptcy Court or such other court having jurisdiction over the validity, nature, and/or amount thereof. After the Effective Date, the Reorganized Debtors and the Creditors Committee shall have the authority to object to, settle, compromise or litigate to judgment any and all Claims, including Administrative Claims. Notwithstanding anything in this Plan to the contrary, any settlements or compromises with respect to Claims shall be subject to the approval of the Bankruptcy Court.

**8.2** *No Distributions Pending Allowance.* Notwithstanding any other provision of this Plan, no payments or distributions shall be made by the Reorganized Debtors with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

**8.3** *Distribution After Allowance.* The Reorganized Debtors shall make any applicable payment or distribution to the Holder of any Disputed Claim that has become an Allowed Claim as soon as practicable after the date such Disputed Claim becomes an Allowed Claim.

## ARTICLE IX.

1585431.4

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed  05/28/10   Page 88 of 134

# CONFIRMATION AND CONSUMMATION OF THIS PLAN

**9.1** *Conditions to Confirmation.* Confirmation of this Plan shall be subject to satisfaction of the following conditions at or prior to the time the Confirmation Order is entered:

(a) The Confirmation Order shall be acceptable in form and substance to the Plan Proponents; and

(b) The Confirmation Order shall authorize the Reorganized Debtors to take all actions necessary or appropriate to implement this Plan.

**9.2** *Conditions to Effective Date.* The following conditions precedent must be satisfied or waived on or prior to the Effective Date in accordance with Section 9.3 of this Plan:

(a) The Confirmation Order confirming this Plan, as such Plan may have been modified and/or amended, shall have been entered and become a Final Order in form and substance acceptable to the Plan Proponents;

(b) The Exit Facility Credit Agreement, in form and substance acceptable to the Plan Proponents, shall have been executed and delivered and all conditions precedent thereto shall have been satisfied;

(c) The Confirmation Order shall not then be stayed, vacated or reversed;

(d) SFHS shall have received the Pre-Effective Date Payment; and

(e) The Effective Date shall occur no later than July 1, 2010, unless the failure of the Effective Date to occur by July 1, 2010 is due to SFHS having failed to have entered into an intercreditor agreement with the Exit Facility Lender pursuant to section 3.3(a) of this Plan, in which case, the Effective Date shall occur no later than August 1, 2010.

**9.3** *Waiver of Conditions.* Except for (i) the condition set forth in Section 9.2(c) of this Plan, which may not be waived, and (ii) the condition set

1585431.4

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed  05/28/10   Page 89 of 134

forth in Section 9.2(d) and (e) of this Plan, which may only be waived or modified with the written consent of SFHS, each of the conditions set forth in Section 9.2 of this Plan may be waived in whole or in part by the Plan Proponents, without any other notice to parties in interest or the Bankruptcy Court and without a hearing.

**9.4** *Cram down.* In the event that any Impaired Class of Claims or Interests does not accept, or is deemed to have rejected, this Plan pursuant to section 1126 of the Bankruptcy Code, the Plan Proponents shall request confirmation of this Plan under section 1129(b) of the Bankruptcy Code with respect to such Class. The Plan Proponents reserve the right to modify this Plan to the extent, if any, confirmation pursuant to 1129(b) of the Bankruptcy Code requires modification.

**ARTICLE X.**

**EFFECT OF PLAN CONFIRMATION**

**10.1** *Binding Effect.* This Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims and Interests, and their respective successors and assigns, including, but not limited to, the Reorganized Debtors.

**10.2** *Exculpation.* **Except as otherwise provided in this Plan, the Plan Proponents and each of the Plan Proponents' members, attorneys, financial advisors, agents, officers, directors, and representatives (collectively, the "Exculpated Parties") shall not have or incur any liability for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, CHA Hawaii's chapter 11 case, the formulation, negotiation, or implementation of this Plan, the solicitation of acceptances of this Plan, or the administration of this Plan, except for acts or omissions that are the result of fraud, gross negligence, or willful misconduct or willful violation of federal or state securities laws or the Internal Revenue Code, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan. Nothing in this Section 10.2 of this Plan shall limit the obligations of the Reorganized Debtors under this Plan.**

**10.3** *Discharge of Claims and Termination of Interests.* **Except as otherwise provided herein or in the Confirmation Order and subject to the terms of this Plan and the obligations of the Reorganized Debtors under this Plan, all consideration distributed under this Plan shall be in exchange for,**

38

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed 05/28/10  Page 90 of 134

and in complete satisfaction, settlement, discharge, and release of, all Claims and Interests of any nature whatsoever against the Debtors or any of their assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests. Upon the Effective Date, subject to the terms of this Plan and the obligations of the Reorganized Debtors under this Plan, each of the Debtors and the Reorganized Debtors shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims and Interests, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code.

      **10.4** *Preservation of Rights of Action and Settlement of Litigation Claims.* Except as otherwise provided in this Plan, the Confirmation Order, or in any document, instrument, release, or other agreement entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors and their Estates shall retain the Litigation Claims. The Reorganized Debtors, as the successors in interest to the Debtors and the Estates, may enforce, sue on, settle or compromise (or decline to do any of the foregoing) any or all of the Litigation Claims without application to the Bankruptcy Court. Notwithstanding the foregoing, from and after the Effective Date, neither the Reorganized Debtors nor anyone else acting on behalf of the Debtors, or the Estates shall commence any suit or other proceeding for the enforcement of Avoidance Actions.

      **10.5** *Injunction.* Except as otherwise provided in this Plan, from and after the Effective Date, all Persons, except for CMS and the United States Department of Health and Human Services, who have held, hold, or may hold Claims against or Interests in the Debtors that are discharged or terminated under this Plan are permanently enjoined from taking any of the following actions against the Debtors, their Estates, the Reorganized Debtors, any of their property, or any of the Exculpated Parties (to the extent that such Exculpated Parties are entitled to exculpation pursuant to Section 10.2 of this Plan) on account of any such Claims or Interests: (A) commencing or continuing, in any manner or in any place, any action, or other proceeding; (B) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (C) creating, perfecting, or enforcing any lien or encumbrance; (D) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (E) commencing or continuing, in any manner or in any place,

1585431.4

any action that does not comply with or is inconsistent with the provisions of this Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of this Plan. By accepting distributions pursuant to this Plan, each Holder of an Allowed Claim or an Allowed Interest shall be deemed to have specifically consented to the injunctions set forth in this Section 10.5 of this Plan. Nothing in this Section 10.5 of this Plan shall limit the obligations of the Reorganized Debtors under this Plan. For the avoidance of doubt, nothing in this Plan shall enjoin SFHS from enforcing the Physician Guaranties or any other guarantee of a non-Debtor party in favor of SFHS.

10.6 *Term of Bankruptcy Injunction or Stays.* All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

10.7 *Termination of Subordination Rights and Settlement of Related Claims.* The classification and manner of satisfying all Claims or Interests under this Plan take into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510(b) or 510(c) of the Bankruptcy Code, or otherwise. All subordination rights that a Holder of a Claim may have with respect to any distribution to be made pursuant to this Plan shall be discharged and terminated, and all actions related to the enforcement of such subordination rights shall be permanently enjoined. Accordingly, distributions pursuant to this Plan to Holders of Allowed Claims shall not be subject to payment to a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment, or other legal process by a beneficiary of such terminated subordination rights.

10.8 *Continuation of the Creditors Committee.* The Creditors Committee shall continue to exist after the Effective Date, for the purposes specified in this Plan and for the purpose of monitoring and enforcing the Reorganized Debtors' compliance with this Plan, until the initial distribution to Holders of Class 6 Allowed General Claims pursuant to section 3.3(b)(x) of this Plan is completed. The professionals retained by the Creditors Committee shall be entitled to compensation from the Reorganized Debtors for services performed and reimbursement of expenses incurred in connection therewith. Such compensation shall not be subject to the approval of the Bankruptcy Court and shall be paid by the Reorganized Debtors in the ordinary course of business. Upon completion of

1585431.4

its duties under this Plan, the Creditors Committee shall be dissolved and disbanded, at which time the individual members of the Committee shall be released and discharged of and from all duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases.

**10.9 *Good Faith.*** Confirmation of this Plan shall constitute a finding that: (i) this Plan has been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code, and (ii) all Persons' solicitations of acceptances or rejections of this Plan have been in good faith and in compliance with applicable provisions of the Bankruptcy Code.

**10.10 *Survival of Settlements.*** Except as specifically set forth in this Plan, all Bankruptcy Court-approved settlements shall survive consummation of this Plan.

**10.11 *Rights Claims and Defenses of the United States.*** Nothing in this Plan affects: any rights, claims or defenses of the United States against the Debtors, Reorganized Debtors, or Plan Proponents under the False Claims Act, 31 U.S.C. § 3729 et seq., the Program Frauds Civil Remedies Act, 31 U.S.C. § 3801 et seq., the Civil Monetary Penalties Statute, 42 U.S.C. § 1320a-7a, or for common law fraud; any criminal liability; and any rights, claims or defenses of the United States Department of Health and Human Services and CMS not specifically released, relinquished, or addressed in this Plan.

**10.12 *Releases Relating to SFHS*.** Upon the Effective Date, the Plan shall constitute a settlement and compromise of all Claims, rights, and causes of action, whether known or unknown, foreseen, or unforeseen, then existing or hereafter arising, in law, equity or otherwise, including without limitation all Avoidance Actions and claims arising under or related to the Transition Services Agreement between HMC and St. Francis Health Care System of Hawaii, dated as of January 13, 2007 (the "Transition Services Agreement") that the Debtors, the Estates, and the Reorganized Debtors may have against SFHS that arose prior to the Effective Date (the "Compromised SFHS Claims"). Effective as of the Effective Date, the Debtors, Reorganized Debtors, the Creditors Committee and the Estates shall forever release, waive, and discharge any such Compromised SFHS Claims against SFHS, whether known or unknown, foreseen, or unforeseen, then existing or hereafter arising, in law, equity or otherwise. Effective as of the Effective Date, the Debtors, the Reorganized Debtors, the Creditors Committee, and the Estates are permanently enjoined from taking any of the following actions

1585431.4

against SFHS or any of SFHS' property on account of any such Compromised SFHS Claims: (A) commencing or continuing, in any manner or in any place, any action, or other proceeding; (B) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (C) creating, perfecting, or enforcing any lien or encumbrance; (D) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (E) commencing or continuing, in any manner or in any place, any action. On the Effective Date, SFHS shall be deemed to have released the Debtors and the Reorganized Debtors from claims relating, to the Transition Services Agreement, any Disproportionate Share Hospital payments received by the Debtors for periods prior to January 13, 2007, claims arising from the rejection of the lease for the fifth floor of the Weinberg building, and claims arising under the existing spiritual services agreement between SFHS and the Debtors.

## ARTICLE XI.

## RETENTION OF JURISDICTION

**11.1** *Retention of Jurisdiction*.   Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)     allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim or Priority Tax Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

(b)     resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which any Debtor is a party or with respect to which any Debtor or Reorganized Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

(c)     ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

1585431.4

(d)      decide or resolve any motions, adversary proceedings, contested, or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(e)      enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

(f)      resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to this Plan, or any entity's rights arising from or obligations incurred in connection with this Plan or such documents;

(g)      approve any modification of this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or approve any modification of the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

(h)      hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under sections 330, 331, 503(b), or 1103 of the Bankruptcy Code, which shall be payable by the Debtors or the Reorganized Debtors only upon allowance thereof pursuant to the order of the Bankruptcy Court; provided, however, that the professional fees and expenses of the Reorganized Debtors and the Creditors Committee incurred after the Effective Date, including counsel fees, shall be paid by the Reorganized Debtors in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(i)      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation, or enforcement of this Plan or the Confirmation Order;

43

1585431.4

(j)     hear and determine causes of action by or on behalf of the Debtors or the Reorganized Debtors or by the Creditors Committee;

(k)     hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(l)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated, or distributions pursuant to this Plan are enjoined or stayed;

(m)     determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement, or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

(n)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases;

(o)     hear and determine all matters related to property of the Estates.

(p)     hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code; and

(q)     enter an order closing the Chapter 11 Cases.

## ARTICLE XII.

## MISCELLANEOUS PROVISIONS

**12.1** *Effectuating Documents and Further Transactions.*  Each of the Plan Proponents are authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

1585431.4

**12.2** *Corporate Action.* Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under this Plan that would otherwise require approval of the member interest owners or directors of one or more of the Debtors or the Reorganized Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as appropriate) pursuant to the applicable general corporation or limited liability company law of the states in which the Debtors or the Reorganized Debtors are incorporated without any requirement of further action by the stockholders, member interest owners or directors of the Debtors or the Reorganized Debtors.

**12.3** *Exemption from Transfer Taxes.* Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer, or exchange of notes or equity securities under this Plan; (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest; (c) the making or assignment of any lease or sublease; or (d) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, including, without limitation, any merger agreements; agreements of consolidation, restructuring, disposition, liquidation, or dissolution, deeds, bills of sale, and transfers of tangible property, shall not be subject to any stamp tax, recording tax, personal property tax, real estate transfer tax, sales, or use tax or other similar tax. Unless the Bankruptcy Court orders otherwise, all sales, transfers, and assignments of owned and leased property approved by the Bankruptcy Court on or prior to the Effective Date, shall be deemed to have been in furtherance of, or in connection with, this Plan.

**12.4** *Payment of Statutory Fees.* All fees payable by the Debtors pursuant to section 1930 of title 28, United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Reorganized Debtors on the Effective Date and thereafter until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

**12.5** *Amendment or Modification of this Plan.* Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, the Plan Proponents may alter, amend, or modify this Plan at any time prior to or after the Confirmation Date, but prior to the substantial consummation of this Plan, provided however, that the Plan Proponents may not modify or amend the provisions in sections 3.3(a), 7.3, 9.2(d), 9.2(e), and 9.3 of this Plan without the written consent of SFHS. A Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended

1585431.4

or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

**12.6** ***Severability of Plan Provisions.*** If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such- term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**12.7** ***Successors and Assigns.*** This Plan shall be binding upon and inure to the benefit of the Debtors, and their respective successors and assigns, including, without limitation, the Reorganized Debtors. The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

**12.8** ***Revocation, Withdrawal, or Non-Consummation.*** The Plan Proponents reserve the right to revoke or withdraw this Plan as to any or all of the Debtors prior to the Confirmation Date and to file subsequent plans of reorganization, except as set forth in section 12.14 of this Plan. If the Plan Proponents revoke or withdraw this Plan as to any or all of the Debtors, or if confirmation or consummation as to any or all of the Debtors does not occur, then, with respect to such Debtors, (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or leases affected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (c) nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtors or any other Person, (ii) prejudice in any manner the rights of such Debtors, the Creditors Committee, HPG or any other Person, or (iii) constitute an admission of any sort

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed  05/28/10   Page 98 of 134

by the Debtors, the Creditors Committee, HPG or any other Person, except as set forth in section 12.14 of this Plan.

**12.9** *Notice.* All notices, requests, and demands to or upon the Debtors or the Reorganized Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Hawaii Medical Center, LLC
Hawaii Medical Center East, LLC
Hawaii Medical Center West, LLC
2230 Liliha Street
Honolulu, HI 96817
Attn: Salim Hasham
With copies to:

ALSTON & BIRD LLP                    WAGNER CHOI & VERBRUGGE

Martin G. Bunin (admitted *pro hac vice*)    Chuck C. Choi
Craig E. Freeman (admitted *pro hac vice*)   745 Fort Street, Suite 1900
William Hao                          Honolulu, HI 96813
90 Park Avenue                       Telephone: (808) 533-1877
New York, New York 10016             Facsimile: (808) 566-6900
Telephone: (212) 210-9400            Email:cchoi@hibklaw.com
Facsimile: (212) 210-9444
Email: marty.bunin@alston.com
        craig.freeman@alston.com
        william.hao@alston.com

*Counsel for the Official Committee of*
*Unsecured Creditors*

47

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed 05/28/10  Page 99 of 134

MCDONALD HOPKINS LLC

Shawn M. Riley (admitted *pro hac vice*)
Paul W. Linehan (admitted *pro hac vice*)
Michael J. Kaczka (admitted *pro hac vice*)
600 Superior Avenue, East, Suite 2100
Cleveland, OH 44114-2653
Telephone: (216) 348-5400
Facsimile: (216) 348-5474
Email: sriley@mcdonaldhopkins.com
        plinehan@mcdonaldhopkins.com
        mkaczka@mcdonaldhopkins.com

*Co-Counsel to the Debtors and Debtors in Possession*

MOSELEY BIEHL TSUGAWA
LAU & MUZZI
A HAWAII LIMITED LIABILITY
LAW COMPANY

Christopher J. Muzzi (6939)
Alakea Corporate Tower
1100 Alakea Street, 23rd Floor
Honolulu, HI 96813
Telephone: (808) 531-0490
Facsimile: (808) 534-0202
Email: cmuzzi@hilaw.us

KESSNER UMEBAYASHI BAIN &
MATSUNAGA

Steven Guttman
220 South King Street, Suite 1900
Honolulu Hawaii 96813
Telephone: (808) 536-1900
Email: sguttman@kdubm.com

*Counsel for Hawaii Physicians Group, LLC*

**12.10 Governing Law.** Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Hawaii, without giving effect to the principles of conflicts of law of such jurisdiction.

**12.11 *Tax Reporting and Compliance.*** The Reorganized Debtors are hereby authorized, on behalf of each of the Debtors, to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through, and including, the Effective Date.

1585431.4

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed  05/28/10  Page 100 of 134

12.12 *Exhibits.*  All exhibits to this Plan, including the Exhibits and Plan Schedules, are incorporated and are a part of this Plan as if set forth in full herein.

12.13 *Filing of Additional Documents.*  On or before substantial consummation of this Plan, the Plan Proponents shall File such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

12.14 *Additional Matters Relating to SFHS.*  Within ten days after the occurrence of the Effective Date, the Reorganized Debtors shall enter into a new agreement for the provision of "spiritual services" by SFHS on terms and conditions substantially similar to the previous agreement and a non-competition agreement with SFHS regarding the provision of hospice and home care services. In addition, the chief executive officer of the Reorganized Debtors shall serve on the Ethics Committee for SFHS.  In the event the Confirmation Order is entered, but the Effective Date does not occur, the Debtors shall be deemed to have consented to confirmation of the Second Amended Joint Plan of Reorganization for Hawaii Medical Center, LLC, Hawaii Medical Center West, LLC, and Hawaii Medical Center East, LLC Proposed by St. Francis Healthcare System of Hawaii, St. Francis Medical Center, and St. Francis Medical Center – West, dated March 12, 2010 (Docket No. 1117) ("SFHS Plan").  The rights of the Creditors Committee to object to confirmation of the SFHS Plan are preserved in all respects.

1585431.4

Dated: May 26, 2010

Respectfully submitted,

**Official Committee of Unsecured Creditors**

By: /s/ Alyssa Park
    Alyssa Park
    President of Clinical Laboratories of Hawaii LLP
    Chair of the Official Committee of Unsecured
    Creditors

**Hawaii Medical Center, LLC, Hawaii Medical
Center East, LLC, and Hawaii Medical
Center West, LLC**

By: /s/ Salim Hasham
    Salim Hasham
    Chief Operating and Restructuring Officer

**Hawaii Physicians Group, LLC**

By: /s/ Henry Louie
    Henry Louie, M.D.
    President

| | |
|---|---|
| ALSTON & BIRD LLP<br><br>Martin G. Bunin (admitted *pro hac vice*)<br>Craig E. Freeman (admitted *pro hac vice*)<br>William Hao<br>90 Park Avenue<br>New York, New York 10016<br>Telephone: (212) 210-9400<br>Facsimile: (212) 210-9444<br>Email: marty.bunin@alston.com<br>      craig.freeman@alston.com<br>      william.hao@alston.com | WAGNER CHOI & VERBRUGGE<br><br>Chuck C. Choi<br>745 Fort Street, Suite 1900<br>Honolulu, HI 96813<br>Telephone: (808) 533-1877<br>Facsimile: (808) 566-6900<br>Email:cchoi@hibklaw.com |
| *Counsel for the Official Committee of Unsecured Creditors* | |
| MCDONALD HOPKINS LLC<br><br>Shawn M. Riley (admitted *pro hac vice*)<br>Paul W. Linehan (admitted *pro hac vice*)<br>Michael J. Kaczka (admitted *pro hac vice*)<br>600 Superior Avenue, East, Suite 2100<br>Cleveland, OH 44114-2653<br>Telephone: (216) 348-5400<br>Facsimile:  (216) 348-5474<br>Email:  sriley@mcdonaldhopkins.com<br>      plinehan@mcdonaldhopkins.com<br>      mkaczka@mcdonaldhopkins.com | MOSELEY BIEHL TSUGAWA LAU & MUZZI<br>A HAWAII LIMITED LIABILITY LAW COMPANY<br><br>Christopher J. Muzzi (6939)<br>Alakea Corporate Tower<br>1100 Alakea Street, 23rd Floor<br>Honolulu, HI 96813<br>Telephone: (808) 531-0490<br>Facsimile:  (808) 534-0202<br>Email:  cmuzzi@hilaw.us |
| *Co-Counsel to the Debtors and Debtors in Possession* | |
| KESSNER UMEBAYASHI BAIN & MATSUNAGA<br><br>Steven Guttman<br>220 South King Street, Suite 1900<br>Honolulu Hawaii 96813<br>Telephone: (808) 536-1900<br>Email: sguttman@kdubm.com | |
| *Counsel for Hawaii Physicians Group, LLC* | |

# SCHEDULE 7.1

| Debtor | Name of Other Parties to Lease or Contract | Address from Vendor No. | Address | Description of contract or lease and nature of debtor's interest. State whether lease is of nonresidential real property. State contract number of any government contract. |
|---|---|---|---|---|
| Hawaii Medical Center, LLC; | 3M Health Information Systems | 3M / 2807 PAYSPHERE CIR / CHICAGO, IL 60674-0000 | | Software license Amendment |
| Hawaii Medical Center East, LLC Hawaii Medical Center West, LLC | A&A Services | A&A SERVICES / PO BOX 2376 / WAIANAE, HI 96792 | | Wet waste food disposal services |
| Hawaii Medical Center East, LLC; | A&A Services | A&A SERVICES / PO BOX 2376 / WAIANAE, HI 96792 | | Provide designated 65-95 gallon receptacles to pick-up recyclable paper, glass, and aluminum containers. |
| Hawaii Medical Center, LLC; | A&A Services | A&A SERVICES / PO BOX 2376 / WAIANAE, HI 96792 | | Provide designated 65-95 gallon receptacles to pick-up recyclable paper, glass, and aluminum containers. |
| Hawaii Medical Center West, LLC | A&A Services | A&A SERVICES / PO BOX 2376 / WAIANAE, HI 96792 | | |
| Hawaii Medical Center West, LLC | Abla, Danilo | DANILO ABLAN, M.D. / 667 ELEPAIO STREET / HONOLULU, HI 96816 | | Chief Medical Officer of Hawaii Medical Center West, LLC |
| Hawaii Medical Center, LLC; | Absolute | ABSOLUTE! / 2021 E HENNEPIN AVE / SUITE LL20 / MINNEAPOLIS, MN 55413 | | Lawson antifusion |
| Hawaii Medical Center East, LLC Hawaii Medical Center West, LLC | Access Information Mgt (fka) Filminders of Hawaii LLC | FILMINDERS OF HI LLC / PO BOX 31000 / HONOLULU, HI 96849-5551 | | Offsite storage |
| Hawaii Medical Center East, LLC Hawaii Medical Center West, LLC | Access pka Shredex CRD, LLC | SHREDEX CRD LLC / 98-736A MOANALUA LOOP / AIEA, HI 96701 | | Shredding collection and destruction services. |
| Hawaii Medical Center East, LLC Hawaii Medical Center West, LLC | Akamai Transcription, LLC | AKAMAI TRANSCRIPTION LLC / PAT HATSUSHIRO / 47-650HUI KELU STREET / KANEOHE, HI 96744 | | Medical transcription services. |
| Hawaii Medical Center, LLC; | Alcon | | 6201 South Freeway, Ft. Worth, TX 76134 | Intraocular lens implant consignment |
| Hawaii Medical Center East, LLC | Alcon Laboratories | ALCON LABORATORIES INC / 529 Koula Street / HONOLULU, HI 96813 | | 4 Torisonal hand-pieces and 1 Infinity 2x Upgrade Kit for $15,500 (set of $21,495 Week-In of 4 Neotonic hand-pieces/discount) |

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed  05/28/10   Page 105 of 134

| Debtor | Named of Other Parties to Lease or Contract | Address (from Vendor No.) | Address | Description of contract or lease and nature of debtor's interest. State whether lease is of nonresidential real property. State contract number of any government entity. |
|---|---|---|---|---|
| Hawaii Medical Center East, LLC | Aloha Critical Care Associates LLP (ACCA LLP) | ALOHA CRITICAL CARE ASSOCIATES LLP MAIL CODE #2666 HONOLULU, HI 96807-1380 | | Intensivist professional services. |
| Hawaii Medical Center, LLC; | Atres Medical Staffing | ALTRES STAFFING, INC. P.O. BOX 1410 HONOLULU, HI 96807 | | Provide temporary help for clerical positions on an "as needed" basis. |
| :: Hawaii Medical Center West, LLC | Atres Medical Staffing | ALTRES INC. P O BOX 1410 HONOLULU, HI 96807 | | Temp Help for RNs |
| :: Hawaii Medical Center East, LLC | Atres Medical Staffing | ALTRES INC. P O BOX 1410 HONOLULU, HI 96807 | | Temporary nurses |
| : Hawaii Medical Center, LLC; | American Express Travel Related Services Company | AMERICAN EXPRESS PO BOX 360001 FT LAUDERDALE, FL 33336-0001 | | Credit card charges |
| Hawaii Medical Center, LLC; | AMH Healthcare Inc. | AMH HEALTHCARE, INC FILE 56157 LOS ANGELES, CA 90074-6157 | | Recruit qualified healthcare professionals @ East and West |
| Hawaii Medical Center, LLC Hawaii Medical Center East, LLC Hawaii Medical Center West, LLC | Analytical Planning Consultants, Inc (APC) | ANALYTICAL PLANNING CONSULTANTS, INC. 928 NUUANU AVENUE #502 HONOLULU, HI 96817 | | Consultant related to the preparation and processing of a Plan Review Use (PRU) permit. |
| : Hawaii Medical Center, LLC | Architects Hawaii | ARCHITECTS HAWAII LIMITED AMERICAN SAVINGS BANK TOWER 1001 BISHOP ST STE 300 HONOLULU, HI 96813 | | Architectural Services in support of 5 yr renovation project for HMC East. |
| :: Hawaii Medical Center West, LLC | Asletis, Audie | AUDIE P ASISTIN MD 94-579 LUMIAUAU STREET WAIPAHU, HI 96797-5055 | | Independent contractor serving as Medical Director of Anesthesiology at West. |
| :: Hawaii Medical Center West, LLC | Asletis, Audie | AUDIE P ASISTIN MD 94-579 LUMIAUAU STREET WAIPAHU, HI 96797-5055 | | Independent Contractor providing Anesthesiology direct care/service to patients at West. |
| Hawaii Medical Center, LLC Hawaii Medical Center East, LLC Hawaii Medical Center West, LLC | Aureus Radiology, LLC (in NY State, dba Aureus Allied II) | AUREUS RADIOLOGY, LLC PO BOX 3597 OMAHA, NE 68103-0037 | | Provide qualified healthcare professionals on a temporary basis in the Radiology department. |

| Debtor | Name of Other Parties to Lease or Contract | Address (from Vendor No.) | Address | Description of contract or lease and nature of debtor's interest. State whether lease is of nonresidential real property. State contract number of any government entity |
|---|---|---|---|---|
| Hawaii Medical Center East, LLC | Avila-Delaney, Emma | | EMMA B. AVILA-DELANEY MD INC 1738 Dillingham Blvd HONOLULU, HI 96819-4027 | Subcontractor of breast and cervical screening services |
| Hawaii Medical Center East, LLC | Bard Biopsy Systems | #N/A | | Self-contained vacuum assisted biopsy system used for Breast Core Biopsies with the Stereotactic table or US guidance |
| Hawaii Medical Center East, LLC; | Baxter - Renal Division | | 1620 Waukegan Rd, McGaw Park, IL 60085 | CRRT consulting, products, purchase agreement |
| Hawaii Medical Center, LLC; | Baxter Bioscience | | One Baxter Parkway, Deerfield, IL 60015 | Advantage program |
| Hawaii Medical Center East, LLC Hawaii Medical Center East, LLC Hawaii Medical Center Ward, LLC | Baxter Healthcare Corporation | | BAXTER IV SYSTEMS PARENTERAL PO BOX 100714 PASADENA, CA 91189 | Equipment Lease of IV Pumps and purchase of IV tubing |
| Hawaii Medical Center, LLC Hawaii Medical Center East, LLC Hawaii Medical Center Ward, LLC | Baxter Healthcare Corporation | | BAXTER IV SYSTEMS PARENTERAL PO BOX 100714 PASADENA, CA 91189 | Purchase agreement for IV solutions |
| Hawaii Medical Center East, LLC Hawaii Medical Center Ward, LLC | Baxter Healthcare Corporation | | BAXTER IV SYSTEMS PARENTERAL PO BOX 100714 PASADENA, CA 91189 | Equipment Lease/Consumable Products |
| Hawaii Medical Center Ward, LLC | Baxter Healthcare Corporation | | BAXTER IV SYSTEMS PARENTERAL PO BOX 100714 PASADENA, CA 91189 | Agreement to purchase consumable products for leased pumps. |
| Hawaii Medical Center, LLC; | Becker Communications, Inc. | | BECKER COMMUNICATIONS, INC. 119 MERCHANT STREET SUITE 900 HONOLULU, HI 96813 | Public relations agreement |
| Hawaii Medical Center, LLC; | Biomet | | PO Box 915498, Longwood, FL 32791 | Neuro NutriStation implants and instrumentation consignment. |
| Hawaii Medical Center, LLC; | Biomet | | PO Box 915498, Longwood, FL 32791 | Neuro-Stimlock Implants and Instrumentation consignment. |
| Hawaii Medical Center, LLC; | Blanchette, Patricia A. | | PATRICIA L BLANCHETE, M.D. 4356 KAHALA AVENUE HONOLULU, HI 96816 | Medical Director of the Skilled Nursing Facility (Independent Contractor). |
| Hawaii Medical Center Ward, LLC | Blood Bank of Hawaii | | BLOOD BANK OF HAWAII PO BOX 31000 HONOLULU, HI 96849-5155 | Supply of blood and blood products @ Ward. |

| Debtor | Name of Other Parties to Lease or Contract | Address (from Vendor No.) | Address | Description of contract or lease and nature of debtor's interest. State whether lease is of nonresidential real property. State contract number of any government contract. |
|---|---|---|---|---|
| Hawaii Medical Center East, LLC; | Blood Bank of Hawaii | BLOOD BANK OF HAWAII PO BOX 31200 HONOLULU, HI 96849-5205 | | Supply of blood and blood products @ East. |
| Hawaii Medical Center, LLC; | Blumberg Ribner, Inc. | BLUMBERG RIBNER, INC. 315 S. BEVERLY DRIVE #505 BEVERLY HILLS, CA 90212-4316 | | Review 835K component of the Medicare DSH issues within the Medicare cost reports for FYE 6/30/2007. |
| Hawaii Medical Center, LLC; | Blumberg Ribner, Inc. | BLUMBERG RIBNER, INC. 315 S. BEVERLY DRIVE #505 BEVERLY HILLS, CA 90212-4316 | | Preparation and completion of the Medicare Eligible Days and any DSH issued for the period 12/4/07 - 6/30/07. |
| Hawaii Medical Center East, LLC | Boston Scientific Corporation | #N/A | One Scimed Place Maple Grove, MN 55311 | Vascular surgery consignment and pricing contract. |
| Hawaii Medical Center East, LLC | Boston Scientific Corporation | #N/A | One Scimed Place Maple Grove, MN 55311 | Purchase of IC Balloon Catheters and IC Taxus Express 2 Stents |
| Hawaii Medical Center, LLC; | Cades Schutte | CADES SCHUTTE LLP P.O. BOX 939 HONOLULU, HI 96808 | | Legal services. |
| Hawaii Medical Center East, LLC | Cancer Center of Hawaii, LLC | THE CANCER CENTER OF HAWAII, L PO BOX 10440 HONOLULU, HI 94825-0464 | | Inpatients radiation services. |
| Hawaii Medical Center, LLC; | Cardinal Health 200, Inc. | | 1450 Waukegan Rd. McGaw Park, IL 60085 1450 Waukegan Rd, McGaw Park IL, 60085 | Ophthalmic Services Agreement |
| Hawaii Medical Center, LLC; | Cardinal Healthcare | #N/A | | Converter - Disposable apparel, drapes. |
| Hawaii Medical Center, LLC; | Cardiovascular Hospitals of America, LLC | CARDIOVASCULAR HOSPITALS OF AMERICA ATTN: DOUG BELL WICHITA, KS 67206 | | Management services to hospital. |
| Hawaii Medical Center, LLC; | Case Mix Analysis, Inc. (DM) | CASE MIX ANALYSIS, INC. 80 WORCESTER STREET SUITE 10 NO. GRAFTON, MA 01536 | | Inpatient/outpatient coding audits for East and Wes... |

| Debtor | Name of Other Parties to Lease or Contract | Address from Vendor No. | Address | Description of contract or lease and nature of debtor's interest. State whether lease is of nonresidential real property. State contract number of any government contract. |
|---|---|---|---|---|
| Hawaii Medical Center East, LLC; Hawaii Medical Center West, LLC | Catalyst Systems, LLC | | CATALYST SYSTEMS LLC 1791 NOVATO BOULEVARD SUITE 205 NOVATO, CA 94947 | License and Support Agreements |
| Hawaii Medical Center, LLC; | Cerner Corporation | | CERNER CORPORATION P.O. BOX 412702 KANSAS CITY, MO 64141 | Software program for the interface to the McKesson AccuDose Rx system, and the related support services. |
| Hawaii Medical Center, LLC; | Cerner Corporation | | CERNER CORPORATION P.O. BOX 412702 KANSAS CITY, MO 64141 | Service: Provide equipment, software, support fees, consulting fees, remote-hosting services (RHO) for HMC's electronic medical records and other IS-related services. |
| Hawaii Medical Center, LLC; | Cerner Corporation | | CERNER CORPORATION P.O. BOX 412702 KANSAS CITY, MO 64141 | Professional services to be provided to enhance the current production custom outbound billing interface from HNAM. |
| Hawaii Medical Center, LLC; | Cerner Corporation | | CERNER CORPORATION P.O. BOX 412702 KANSAS CITY, MO 64141 | Cerner System Agreement: Licensed Software, Purchase of Equipment; Sublicensed Software, Tracking and Installation; Licensed Software Support; Equipment and sublicensed software maintenance. |
| Hawaii Medical Center, LLC; | Cerner Corporation | | CERNER CORPORATION P.O. BOX 412702 KANSAS CITY, MO 64141 | Renewal of Annual Support and maintenance for Cerner hardware and software – Equipment (E/M) and Sublicensed Software (SS) |
| Hawaii Medical Center, LLC; | Cerner Corporation | | CERNER CORPORATION P.O. BOX 412702 KANSAS CITY, MO 64141 | Provide services to work toward a resolution related to printing issues to the Pharmnet custom Mar |
| Hawaii Medical Center, LLC; | Cerner Corporation | | CERNER CORPORATION P.O. BOX 412702 KANSAS CITY, MO 64141 | Additional services for the MAR |
| Hawaii Medical Center, LLC; | Cerner Corporation | | CERNER CORPORATION P.O. BOX 412702 KANSAS CITY, MO 64141 | Renewal for Operational Management Services (OMS) |
| Hawaii Medical Center, LLC; | Cerner Corporation | | CERNER CORPORATION P.O. BOX 412702 KANSAS CITY, MO 64141 | Provide services related to the interface of Cerner HNAM to the McKesson Accudose pharmacy system. |

U.S. Bankruptcy Court - Hawaii #08-01369 Dkt # 1316 Filed 05/28/10 Page 109 of 134

| Debtor | Name of Other Parties to Lease or Contract | Address from Vendor No. | Address | Occupation of contract of lease and nature of debtor's interest. State whether lease is of nonresidential real property. State contract number of any government entity. |
|---|---|---|---|---|
| Hawaii Medical Center East, LLC | Chemsearch | CHEMSEARCH<br>23561 NETWORK PLACE<br>CHICAGO, IL 60673-1232 | | |
| Hawaii Medical Center East, LLC | Chemsearch | | CHEMSEARCH<br>23561 NETWORK PLACE<br>CHICAGO, IL 60673-1232<br>4/24/09 | Renewal for chemical supply for treatment of x-ray machine drain for preventive maintenance expired 4/24/09 |
| Hawaii Medical Center West, LLC | Chemsearch | | CHEMSEARCH<br>23561 NETWORK PLACE<br>CHICAGO, IL 60673-1232 | |
| Hawaii Medical Center, LLC; | Chemsearch | | | |
| Hawaii Medical Center East, LLC | Chemsearch | | CHEMSEARCH<br>23561 NETWORK PLACE<br>CHICAGO, IL 60673-1232 | Monthly supply of x-ray drain chemicals expired 2/28/09 |
| Hawaii Medical Center, LLC; | Cheung, Dr. Alan H.S. | | ALAN H.S. CHEUNG M.D.<br>205 KUIPUA STREET<br>KAILUA, HI 96734 | Independent Contractor to serve as Chief Surgical Officer of Hawaii Medical Center East, LLC. Contract expired 12/31/09 |
| Hawaii Medical Center East, LLC | Ching, Paul D.D.S. | | PAUL CHING DDS<br>1229 ILIUHA STREET<br>SUITE 389<br>HONOLULU, HI 96817 | Dental Services for SNF patients. |
| Hawaii Medical Center, LLC Hawaii Medical Center East, LLC Hawaii Medical Center West, LLC | City Taxi | | CITY TAXI INC.<br>P.O. BOX 3943<br>HONOLULU, HI 96812 | Taxi transportation services. |
| Hawaii Medical Center West, LLC | Clinical Laboratories of Hawaii | | CLINICAL LABORATORIES OF HI<br>MAIL CODE #60300<br>PO BOX 1300<br>HONOLULU, HI 96807-1300 | Amendment No. 3 |
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii | | CLINICAL LABORATORIES OF HI<br>MAIL CODE #60300<br>PO BOX 1300<br>HONOLULU, HI 96807-1300 | Provide phlebotomy (and handling/shipping) for clinical trial participation for Global Immune Phase 2 Randomized, Open Label, Multi-Center Therapeutic Trial of the Efficacy, Immunogenicity, and Safety of GI-5005. |
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii | | CLINICAL LABORATORIES OF HI<br>MAIL CODE #60300<br>PO BOX 1300<br>HONOLULU, HI 96807-1300 | Laboratory testing for participants of Protocol IV027-550-108. |
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii | | CLINICAL LABORATORIES OF HI<br>MAIL CODE #60300<br>PO BOX 1300<br>HONOLULU, HI 96807-1300 | Purpose of Amendment No. 3 |
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii | | CLINICAL LABORATORIES OF HI<br>MAIL CODE #60300<br>PO BOX 1300<br>HONOLULU, HI 96807-1300 | Perform histocompatibility testing on potential candidates and donors related to transplants. |

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed  05/28/10   Page 110 of 134

| Debtor | Name of Other Parties to Lease or Contract | Address from Vendor No. | Address | Description of contract or lease and nature of debtor's interest. State whether lease is of nonresidential real property. State contract number of any government contract. |
|---|---|---|---|---|
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii | CLINICAL LABORATORIES OF HI MAIL CODE #60300 PO BOX 1300 HONOLULU, HI 98807-1300 | | Clinical Lab/ Pan Pacific Pathologists, Inc. to provide phlebotomy and handling/shipping for clinical trial participation for Roche NV18210 protocol under Liver Center. |
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii | CLINICAL LABORATORIES OF HI MAIL CODE #60300 PO BOX 1300 HONOLULU, HI 98807-1300 | | Clinical Lab/Pan Pacific Pathologists, Inc. to provide liver biopsy testing in support of Liver Center protocol for Roche NV18210. |
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii | CLINICAL LABORATORIES OF HI MAIL CODE #60300 PO BOX 1300 HONOLULU, HI 98807-1300 | | Clinical Lab to provide phlebotomy, handling/shipping, and other tests for clinical trial participation for Bristol Myers Squibb protocol - 8045 al 483 1489 under Liver Center. |
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii | CLINICAL LABORATORIES OF HI MAIL CODE #60300 PO BOX 1300 HONOLULU, HI 98807-1300 | | |
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii | CLINICAL LABORATORIES OF HI MAIL CODE #60300 PO BOX 1300 HONOLULU, HI 98807-1300 | | Freezer space rental |
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii | CLINICAL LABORATORIES OF HI MAIL CODE #60300 PO BOX 1300 HONOLULU, HI 98807-1300 | | Clinical Lab to provide phlebotomy, handling/shipping, and other tests for clinical trial participation for Schering Plough PO2559 under Liver Center. |
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii | CLINICAL LABORATORIES OF HI MAIL CODE #60300 PO BOX 1300 HONOLULU, HI 98807-1300 | | Clinical Lab/Pan Pacific Pathologists, Inc. to provide liver biopsy testing in support of Liver Center protocol- GE 0005 01 with Globalimmune. |
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii | CLINICAL LABORATORIES OF HI MAIL CODE #60300 PO BOX 1300 HONOLULU, HI 98807-1300 | | Clinical Lab to provide phlebotomy, handling/shipping, and other tests for clinical trial participation for Roche NV19590D under Liver Center. |
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii | CLINICAL LABORATORIES OF HI MAIL CODE #60300 PO BOX 1300 HONOLULU, HI 98807-1300 | | Clinical Lab to provide phlebotomy, handling/shipping, and other tests for clinical trial participation for Bristol Myers Squibb protocol - NV19590D under Liver Center. |
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii | CLINICAL LABORATORIES OF HI MAIL CODE #60300 PO BOX 1300 HONOLULU, HI 98807-1300 | | Clinical Lab to provide phlebotomy, handling/shipping, and other tests for clinical trial participation for Roche NV16665 under Liver Center. |
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii | CLINICAL LABORATORIES OF HI MAIL CODE #60300 PO BOX 1300 HONOLULU, HI 98807-1300 | | Clinical Lab to provide phlebotomy, handling/shipping, and other tests for clinical trial participation for GlaxoSmithKline protocol - GSK FBX104414 under Liver Center. |

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed  05/28/10  Page 111 of 134

| Debtor | Name of Other Parties to Lease or Contract | Address (from Vendor No.) | Address | Description of contract and nature of debtor's interest. State whether lease is of nonresidential real property. State contract number of any government entity. |
|---|---|---|---|---|
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii | | CLINICAL LABORATORIES OF HI, MAIL CODE #60300, PO BOX 1300, HONOLULU, HI 96807-1300 | Clinical Lab to provide phlebotomy, handling/shipping, and other tests for clinical trial participation for Gilead Sciences protocol - GS-US-174-0109 under Liver Center. |
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii | | CLINICAL LABORATORIES OF HI, MAIL CODE #60300, PO BOX 1300, HONOLULU, HI 96807-1300 | Clinical Lab to provide phlebotomy, handling/shipping, and other tests for clinical trial participation for Gilead Sciences protocol - GS-US-174-0102 under Liver Center |
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii | | CLINICAL LABORATORIES OF HI, MAIL CODE #60300, PO BOX 1300, HONOLULU, HI 96807-1300 | Clinical Lab to provide phlebotomy, handling/shipping and other tests for clinical trial participation for Bristol Myers Squibb protocol - BMS AI 469-901 under Liver Center. |
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii | | CLINICAL LABORATORIES OF HI, MAIL CODE #60300, PO BOX 1300, HONOLULU, HI 96807-1300 | Clinical Lab to provide phlebotomy, handling/shipping and other tests for clinical trial participation for Bristol Myers Squibb protocol - BMS AI 469-901 under Liver Center. |
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii | | CLINICAL LABORATORIES OF HI, MAIL CODE #60300, PO BOX 1300, HONOLULU, HI 96807-1300 | Provide the testing for clinical trial protocol CI-P95-5268-06-906. |
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii/Pan Pacific Pathologists | | CLINICAL LABORATORIES OF HI, MAIL CODE #60300, PO BOX 1300, HONOLULU, HI 96807-1300 | Provide testing for clinical trial protocol CI-P95-5268-06-906. |
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii/Pan Pacific Pathologists | | CLINICAL LABORATORIES OF HI, MAIL CODE #60300, PO BOX 1300, HONOLULU, HI 96807-1300 | Clinical Lab/Pan Pacific Pathologists, Inc. to provide liver biopsy testing in support of Liver Center protocol: GSK GS-US-174-0102. |
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii/Pan Pacific Pathologists | | CLINICAL LABORATORIES OF HI, MAIL CODE #60300, PO BOX 1300, HONOLULU, HI 96807-1300 | Clinical Lab/Pan Pacific Pathologists, Inc. to provide liver biopsy testing in support of Liver Center protocol: Gilead GS-US-174-0101. |
| Hawaii Medical Center East, LLC | Clinical Laboratories of Hawaii/Pan Pacific Pathologists | | CLINICAL LABORATORIES OF HI, MAIL CODE #60300, PO BOX 1300, HONOLULU, HI 96807-1300 | Clinical Lab/Pan Pacific Pathologists, Inc. to provide liver biopsy testing in support of Liver Center protocol: Gilead PBMC6114. |
| Hawaii Medical Center, LLC | Commercial Data Systems | | COMMERCIAL DATA SYSTEMS, 50 S. BERETANIA ST C-208B, HONOLULU, HI 96813 | Maintenance for Lawson and Sun boxes. |

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed  05/28/10   Page 112 of 134

| Debtor | Name of Other Parties to Lease or Contract | Address (from Vendor No.) | Address | Description of contract or lease and nature of debtor's interest. State whether lease is of nonresidential real property. State contract number of any government entity. |
|---|---|---|---|---|
| Hawaii Medical Center, LLC; | Cordeiro, Dr. Antonio | ANTONIO CORDEIRO, M.D. 2391 LINOA STREET HONOLULU, HI 96821 | | Independent Contractor to serve as Chief Surgical Officer of Hawaii Medical Center West, LLC. Contract expired 8/31/08 |
| Hawaii Medical Center, LLC; | Covidien - Kendall | | 15 Hampshire St. Mansfield, MA 02344 | Wound care products |
| Hawaii Medical Center East, LLC; Hawaii Medical Center West, LLC | Critical Nursing Services LLC | CRITICAL NURSING SERVICES, INC 98-715 IHO PLACE #4-901 AIEA, HI 96701 | | Agency Agreement for registered nurse on a per diem basis. |
| Hawaii Medical Center, LLC; Hawaii Medical Center East, LLC | Cross Country TravCorps | CROSS COUNTRY STAFFING P.O. BOX 404678 ATLANTA, GA 30384-4678 CROSS COUNTRY TRAVCORPS D/B/A CROSS COUNTRY STAFFING, INC. ATLANTA, GA 30384-4678 | | Provide healthcare professionals. |
| Hawaii Medical Center, LLC; Hawaii Medical Center East, LLC; Hawaii Medical Center West, LLC | Cross Country Staffing | | | Staffing Agreement to provide qualified surgical technicians. |
| Hawaii Medical Center, LLC; Hawaii Medical Center East, LLC; Hawaii Medical Center West, LLC | Crown Records Management | CROWN RECORDS MANAGEMENT 6600 KAHELU AVENUE MILILANI, HI 96789-3900 | | Physical off-site storage service agreement. |
| Hawaii Medical Center, LLC; | Currie Medical Specialties Inc | CURRIE MEDICAL 7350 E. LOS ANGELES ST. MONROVIA, CA 91016 CURRIE'S DIRECTO-CLAVE 3363 S. BERETANIA STREET SUITE 501 | | Medical devices |
| Hawaii Medical Center, LLC; | Dang, Collin R. (Cardiothoracic Associates of Hawaii LLC) | | HONOLULU, HI 96813 | Vice Chairman of the Board of Managers of Hawaii Medical Center LLC |
| Hawaii Medical Center, LLC; | Dell | DELL MARKETING L.P. C/O DELL USA L.P. PO BOX 910916 PASADENA, CA 91110-0916 | | License renewal for AntiSpam (Mail Security Enterprise) software. |
| Hawaii Medical Center West, LLC | Ecolab | ECOLAB PO BOX 100512 PASADENA, CA 91189-0512 | | Pest preventive and elimination service |
| Hawaii Medical Center, LLC; | Ernst & Young LLC | ERNST & YOUNG LLP BANK OF AMERICA - LA 98366 FILE98366 LOS ANGELES, CA 90074-8856 | | June 30, 2008 Audit |
| Hawaii Medical Center, LLC; | Essential Pharmaceuticals, LLC | | 41 UNIVERSITY DRIVE, Suite 400 Newtown, PA 18940 | Drug used for transplant |

| Debtor | Name of Other Parties to Lease or Contract | Address from Vendor No. | Address | Description of contract or lease and nature of debtor's interest. State whether lease is of nonresidential real property. State contract number of any government contract |
|---|---|---|---|---|
| Hawaii Medical Center, LLC; | FormFast, Inc | FORMFAST INC 18421 MANCHESTER RD. SUITE 208 St Louis, MO 63131 | | License to use the FormFast software program |
| Hawaii Medical Center, LLC; | FormFast, Inc | FORMFAST INC 18421 MANCHESTER RD. SUITE 208 St Louis, MO 63131 | | Annual maintenance for FormFast software. |
| Hawaii Medical Center East, LLC; Hawaii Medical Center West, LLC | FUJIFILM Medical Systems USA, Inc. | FUJI MEDICAL SYSTEMS USA INC GPO BOX 26056 NEW YORK, NY 10087-6056 | | BI-Lateral Agreement-Member Participation Form (MPF) maintenance for equipment |
| Hawaii Medical Center East, LLC | GXAS, LLC | GXAS, LLC C/O GLENN AKIONA, M.D. 268 WAILUPE CIRCLE HONOLULU, HI 96821 | | Anesthesiologists services |
| Hawaii Medical Center West, LLC | Gamma Corporation | GAMMA CORPORATION 850 WEST HIND DRIVE #214 HONOLULU, HI 96821 | | Consultant of medical and health physicist to the Hospital |
| Hawaii Medical Center East, LLC | GE Engineering Services | | N/A 2312 Kam Hwy, #B-1 Honolulu, Hawaii 96819 | GE will provide test equipment and labor to perform breaker maintenance on two incoming HECO 12 kV breakers, test and calibrate 8 timeover current relays. Expired 8/07 |
| Hawaii Medical Center, LLC; | Guidant Sales Corporation | GUIDANT SALES CORPORATION 75 Remittance Drive Suite 6094 Chicago, IL 60675-1138 | | Cardiac rhythm management (CRM) supply contract. |
| Hawaii Medical Center, LLC; | Hazham, Salim | | SALIM HAZHAM HEALTH SERVICES INT'L INC. 200, 638 11TH AVE SW CANADA, | Professional services Agreement, contract expired 9/08. |
| Hawaii Medical Center East, LLC; Hawaii Medical Center West, LLC | Hawaii Bio-Waste Systems, Inc. | HAWAII BIO-WASTE SYSTEMS 1064 FUJIWAI STREET HONOLULU, HI 96819 | | Infectious Waste Disposal Agreement. |
| Hawaii Medical Center, LLC; | Hawaii Employee Assistance Services | | HAWAII EMPLOYEE ASSIST SVCS 200 N VINEYARD BLVD BLDG B HONOLULU, HI 96817 | Employee Assistance Program Planning and Development services for employees |

In re: CNA Hawaii, LLC
Case No. 08-01369
Executory Contracts and Unexpired Leases to be Rejected

| Debtor | Name of Other Parties to Lease or Contract | Address from Vendor No. | Address | Integration or contract of space and nature of debtor's interest. State whether lease is of nonresidential real property. State contract number of any government entity |
|---|---|---|---|---|
| Hawaii Medical Center East, LLC Hawaii Medical Center West, LLC | Hawaii Pacific Health | HAWAII PACIFIC HLTH RESEARCH RESEARCH INSTITUTE 55 MERCHANT STREET, 27TH FLR HONOLULU, HI 96813 | | IRB services |
| Hawaii Medical Center, LLC; | Hawaiian Telcom | HAWAIIAN TELCOM PO BOX 30770 HONOLULU, HI 96820-0770 | 600 Hidden Ridge Irving, TN 75038 | Internet Access Agreement |
| Hawaii Medical Center, LLC; | Hawaiian Telcom | HAWAIIAN TELCOM PO BOX 30770 HONOLULU, HI 96820-0770 | | Telecommunications Service Agreement for long distant services |
| Hawaii Medical Center East, LLC Hawaii Medical Center West, LLC | Hawaiian Telcom | HAWAIIAN TELCOM PO BOX 30770 HONOLULU, HI 96820-0770 | | Service Agreement for Ethernet Private Line Services Term: |
| Hawaii Medical Center East, LLC | Hawaiian Telcom | HAWAIIAN TELCOM PO BOX 30770 HONOLULU, HI 96820-0770 | | Renewal of Voice Maintenance Service Agreement |
| Hawaii Medical Center, LLC; | Hawaiian Telcom | HAWAIIAN TELCOM PO BOX 30770 HONOLULU, HI 96820-0770 | | Renewal advertising in the Oahu/Leeward directories |
| Hawaii Medical Center West, LLC | Hawaiian Telcom | HAWAIIAN TELCOM PO BOX 30770 HONOLULU, HI 96820-0770 | P.O. Box 220 Honolulu, Hawaii 96841 | Renewal of Voice Maintenance Service Agreement |
| Hawaii Medical Center West, LLC | Hawaiian Telcom | | P.O. Box 220 Honolulu, Hawaii 96841 | Renewal of Voice Maintenance Service Agreement |
| Hawaii Medical Center West, LLC | Hawthorn CAT | HAWTHORNE PACIFIC CORP 94-025 FARRINGTON HIGHWAY WAIPAHU, HI 96797-2295 | | Preventive maintenance on standby generator (fixed PM) at West) expired 12/24/07 |
| Hawaii Medical Center West, LLC | HBM Acquisitions LLC dba Hawaiian Building Maintenance | HAWAIIAN BLDG MAINTENANCE BISHOP SQUARE-PAUAHI TOWER 1003 BISHOP STREET #2020 HONOLULU, HI 96813 | | Exterior window cleaning service |
| Hawaii Medical Center, LLC; | Heidtroeder, Amanda | AMANDA HEIDBEDER 2722 FERDINAND AVENUE HONOLULU, HI 96822 | | CMIA Independent Contractor Agreement |

| Debtor | Name of Other Parties to Lease or Contract | Address from Vendor No. | Address | Description of contract or lease and nature of debtor's interest. State whether lease is of nonresidential real property. State contract number of any government contract entity |
|---|---|---|---|---|
| Hawaii Medical Center East, LLC; | Hill-Rom Company, Inc. | HILL-ROM PO BOX 643592 PITTSBURGH, PA 15264-3592 | | Rental Therapy Agreement |
| Hawaii Medical Center West, LLC | Hill-Rom Company, Inc. | HILL-ROM PO BOX 643592 PITTSBURGH, PA 15264-3592 | | Rental Therapy Equipment |
| Hawaii Medical Center East, LLC; Hawaii Medical Center West, LLC | Hospital Clinical Services Group (HCSG) f/k/a Freeelas | HOSPITAL CLINICAL SERVICES GROUP CARDIOVASCULAR RESOURCES, INC. CHICAGO, IL 60693 | | Extracorporeal services (perfusion services) related to open-heart procedures and amendments |
| Hawaii Medical Center, LLC; | IBM | IBM CORPORATION PO BOX 676673 DALLAS, TX 75267-6673 | | Maintenance and support for IBM AS400 and RS6000 hardware. |
| Hawaii Medical Center, LLC; | IBM | IBM CORPORATION PO BOX 676673 DALLAS, TX 75267-6673 | | Maintenance for hardware equipment for AS400 |
| Hawaii Medical Center, LLC; | IBM | IBM CORPORATION PO BOX 676673 DALLAS, TX 75267-6673 | | Annual maintenance for 6262 line printer |
| Hawaii Medical Center, LLC; | IBM | IBM CORPORATION PO BOX 676673 DALLAS, TX 75267-6673 | | AS400 Software annual maintenance fee |
| Hawaii Medical Center, LLC; | IBM | IBM CORPORATION PO BOX 676673 DALLAS, TX 75267-6673 | | Annual AS400 Software Maintenance (SWMA for OS/400 and i5/OS) and After License Fee (SWMA for OS/400 and i5/OS ALF) |
| Hawaii Medical Center, LLC; | IBM | IBM CORPORATION PO BOX 676673 DALLAS, TX 75267-6673 | | SmoothStart Services for Series Operating System |

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed  05/28/10   Page 116 of 134

| Debtor | Name of Other Parties to Lease or Contract | Address (from Vendor No.) | Address | Description or contract of lease and nature of debtor's interest. State whether lease is of nonresidential real property. State contract member of any government entity |
|---|---|---|---|---|
| Hawaii Medical Center, LLC; | IBM Credit LLC | IBM CORPORATION P O BOX 676673 DALLAS, TX 75267-6673 | | Leasing of AS400 equipment, with equipment maintenance and support. |
| Hawaii Medical Center, LLC; | Iqbal, Dr. Badr | BADR IQBEL, MD 9812 WINDWOOD STREET WICHITA, KS 67226 | | Independent Contractor - Chairman of the Board of Managers of Hawaii Medical Center LLC |
| Hawaii Medical Center, LLC; Hawaii Medical Center West, LLC | Information Management Partners, Inc (IMP) | INFORMATION MANAGEMENT PARTNER P O BOX 3116 HONOLULU, HI 96820-3116 | PO Box 3116 Honolulu, Hawaii 96802 | Release of Information Services Statement of Work (ROI) services |
| Hawaii Medical Center West, LLC | Inpatient Medical Specialists, LLC (IMS) | INPATIENT MED SPECIALISTS, LLC P O BOX 2400 HONOLULU, HI 96828-3480 | | Provide hospitalist services for in-house physician coverage at HMC West |
| Hawaii Medical Center West, LLC | Irwin Commercial Finance | IRWIN COMMERCIAL FINANCE CORP EQUIPMENT FINANCE CORP 330 120TH AVE NE, SUITE 110 BELLEVUE, WA 98005 | | Lease of Leica M820/F40 Surgical Microscope System |
| Hawaii Medical Center West, LLC | Island Imaging Center | ISLAND IMAGING CENTER, LLC C/O NATIONAL MED DEVELOPMENT 101 ELLIOTT AVE WEST-STE 500 SEATTLE, WA 98119 | | Provide MRI and CT services to inpatients |
| Hawaii Medical Center West, LLC | Island Imaging Center, LLC | ISLAND IMAGING CENTER, LLC C/O NATIONAL MED DEVELOPMENT 101 ELLIOTT AVE WEST-STE 500 SEATTLE, WA 98119 | | MRI and CAT scan services for Liver Center clinical trials. Contract expired. |
| Hawaii Medical Center East, LLC | Island Imaging Centers | ISLAND IMAGING CENTER, LLC C/O NATIONAL MED DEVELOPMENT 101 ELLIOTT AVE WEST-STE 500 SEATTLE, WA 98119 | | MRI/CT IMAGING HOSPITAL SERVICES AGREEMENT, contract terminated |
| Hawaii Medical Center East, LLC | Island Nurses, Inc | ISLAND NURSING 1001 DILLINGHAM BLVD STE 211 HONOLULU, HI 96817 | | To provide specialized, trained, qualified RNs for staffing in patient care areas |
| Hawaii Medical Center West, LLC | Island Pumping Services, Inc | ISLAND PUMPING & SERVICES PMB813 590 FARRINGTON HWY #210 KAPOLEI, HI 96707-2002 | | Grease trap service agreement for East Kitchen equipment/components, contract expired 6/09 |
| Hawaii Medical Center West, LLC | Island Pumping Services, Inc | ISLAND PUMPING & SERVICES PMB813 590 FARRINGTON HWY #210 KAPOLEI, HI 96707-2002 | | Grease trap service agreement |

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed  05/28/10  Page 117 of 134

| Debtor | Name of Other Parties to Lease or Contract | Address (from Vendor No.) | Address | Description of contract or lease and nature of debtor's interest. State whether lease is of nonresidential real property. State contract number of any government contract. |
|---|---|---|---|---|
| Hawaii Medical Center East, LLC | James Lumeng, M.D. | JAMES LUMENG, MD / 650 W WIND DRIVE STE 114 / HONOLULU, HI 96821 | | Independent Contractor to serve as Chief Medical Officer of Hawaii Medical Center East, LLC |
| Hawaii Medical Center East, LLC | John Mullen & Co., Inc. | JOHN MULLEN & CO., INC / PO BOX 31000 / HONOLULU, HI 96849-5499 | | Claims administrator for workers compensation claims. |
| Hawaii Medical Center East, LLC | Johnson & Johnson Health Care Systems Inc | J & J HEALTH CARE SYSTEMS INC / FILE 74115 / PO BOX 60000 / SAN FRANCISCO, CA 94160 | | Amendment to the Value Opportunity Offer Rebate Agreement. This amendment is for the renewal/continuation of an existing market share agreement between HMC Pharmacy and Ortho Biotech for drug "Procit". |
| Hawaii Medical Center East, LLC | Johnson & Johnson Health Care Systems Inc | J & J HEALTH CARE SYSTEMS INC / FILE 74115 / PO BOX 60000 / SAN FRANCISCO, CA 94160 | | Amendment to the Value Opportunity Offer Rebate Agreement. This amendment is for the renewal/continuation of an existing market share agreement between HMC Pharmacy and Ortho Biotech for drug "Procit". |
| Hawaii Medical Center West, LLC | Kahi Mohala (Sutter Health Pacific) | KAHI MOHALA HOSPITAL / 91-2301 FORT WEAVER RD / EWA BEACH, HI 96706 | | Kahi Mohala physicians agreement expired 6/16/07 |
| Hawaii Medical Center East, LLC | Kahu Malama Nurses, Inc. (fka Kahu Malama Nurses) | KAHU MALAMA NURSES INC / 1357 KAPIOLANI BLVD. / SUITE 850 / HONOLULU, HI 96814 | | Recruit and retain nursing personnel. |
| Hawaii Medical Center East, LLC; Hawaii Medical Center East, LLC; Hawaii Medical Center West, LLC (Hawaii Medical Center West, LLC) | Kahu Malama Nurses, Inc. (fka Kahu Malama Nurses) | KAHU MALAMA NURSES INC / 1357 KAPIOLANI BLVD. / SUITE 850 / HONOLULU, HI 96814 | | Traveling Professional Staff Agreement for registered nurses |
| Hawaii Medical Center East, LLC | Kahu Malama Nurses, Inc. (fka Kahu Malama Nurses) | KAHU MALAMA NURSES INC / 1357 KAPIOLANI BLVD. / SUITE 850 / HONOLULU, HI 96814 | | Non-employee Travelers |
| Hawaii Medical Center East, LLC; Hawaii Medical Center West, LLC | Kahu Malama Nurses, Inc. (fka Kahu Malama Nurses) | KAHU MALAMA NURSES INC / 1357 KAPIOLANI BLVD. / SUITE 850 / HONOLULU, HI 96814 | | Temporary Nursing personnel |
| Hawaii Medical Center, LLC; | KMH LLP | KMH LLP / 1003 BISHOP ST #2400 / HONOLULU, HI 96813 | | December 31, 2007 401k Audit |
| Hawaii Medical Center, LLC; | Kronos Inc | KRONOS INCORPORATED / LEASING DIVISION / PO BOX 845705 / BOSTON, MA 02284-5705 | | Workforce Timekeeper expired 9/08 |

| Debtor | Name of Other Parties to Lease or Contract | Address (from Vendor No.) | Address | Description of contract or lease and nature of debtor's interest. State whether lease is of nonresidential real property. State contract number of any government contract. |
|---|---|---|---|---|
| Hawaii Medical Center, LLC; | Kronos Incorporated | KRONOS INCORPORATED LEASING DIVISION P O BOX 845793 BOSTON, MA 02284-5765 | | Master Lease Agreement # 814601 for replacement timeclocks |
| Hawaii Medical Center, LLC; | Kronos Incorporated | KRONOS INCORPORATED LEASING DIVISION P O BOX 845765 BOSTON, MA 02284-5765 | | Nurse Scheduling Application |
| Hawaii Medical Center, LLC; | Lawson Software, Inc. | LAWSON SOFTWARE-USA SDS 12-1095 PO BOX 86 MINNEAPOLIS, MN 55486-1095 | | Software License purchase (Lawson Mobile Supply Chain Management Solution - Par/Cycle Counting and Receiving and Delivery) |
| Hawaii Medical Center, LLC; | Lawson Software, Inc. | LAWSON SOFTWARE-USA SDS 12-1095 PO BOX 86 MINNEAPOLIS, MN 55486-1095 | | Master license agreement with Lawson, in Lawson is taking over responsibilities from Siemens (see MT1048), for formality purposes |
| Hawaii Medical Center, LLC; | Lawson Software, Inc | LAWSON SOFTWARE-USA SDS 12-1095 PO BOX 86 MINNEAPOLIS, MN 55486-1095 | | Novius GRS - Lawson Agreement (Originally this agreement was with Siemens Medical Solutions Health Services (Lawson), 51 Valley Stream Parkway, Malvern, PA 19355. Some time round 2005, Lawson Software took over this Agreement. Also see 073594.) |
| Hawaii Medical Center West, LLC | Leeward Radiation Oncology | LEEWARD RADIATION ONCOLOGY CLINICAL SERVICE CENTER B-120 91-2155 FORT WEAVER ROAD EWA BEACH, HI 96706 | | Radiation oncology services to inpatients. |
| Hawaii Medical Center West, LLC | Liberty Dialysis-Hawaii LLC | LIBERTY DIALYSIS-HAWAII LLC 1228 LILIHA ST-STE 226 ATTN:BAKB LENZ HONOLULU, HI 96817-1600 | | Provide acute hemodialysis services to in-patients. |
| Hawaii Medical Center East, LLC | Liberty Dialysis-Hawaii, LLC | LIBERTY DIALYSIS-HAWAII LLC 1228 LILIHA ST-STE 226 ATTN:BAKB LENZ HONOLULU, HI 96817-1600 | | Provide acute hemodialysis services to in-patients. |
| Hawaii Medical Center West, LLC | Liliha Partners L/P-Pacific Medical Buildings LP | LILIHA PARTNERS, LP DEPT 9990-3800 LOS ANGELES, CA 90084-9990 | | 5th Flr Weinberg Lease |
| Hawaii Medical Center East, LLC; Hawaii Medical Center East, LLC; Hawaii Medical Center West, LLC | Logicare Corporation | LOGICARE CORPORATION 2115 HEIGHTS DRIVE PO BOX 224 EAU CLAIRE, WI 54702-0224 | | License agreement for "Checkout Discharge Instructions" software program and the related support agreement for the West campus. |

| Debtor | Name of Other Parties to Lease or Contract | Address (from Vendor No.) | Address | Description of contract or lease and nature of debtor's interest. State whether lease is of nonresidential real property. State contract number of any government entry |
|---|---|---|---|---|
| Hawaii Medical Center West, LLC | Maliszewski, James | JAMES MALISZEWSKI 42245 ORION DRIVE KAPOLEI, HI 96707 | | CRNA Independent Contractor Agreement |
| Hawaii Medical Center, LLC; | Marr Higa Jones & Wang | MARR JONES & WANG ATTORNEYS AT LAW 1003 BISHOP ST-STE 1550 HONOLULU, HI 96813 | | Legal counsel related to certain labor and employment matters |
| Hawaii Medical Center East, LLC | McKenzie, William | WILLIAM MCKENZIE MD, INC 95-119 KAMEHAMEHA HIGHWAY SUITE A MILILANI, HI 96789 | | Subcontractor to provide breast and cervical screening services in support of the State of Hawaii BCCCP grant. |
| Hawaii Medical Center East, LLC | McKesson Automation Inc. | MCKESSON 80 SAND ISLAND ACCESS RD HONOLULU, HI 96819 | | McKesson Robot-Rx, AcuDose-RX and Bulk Package and maintenance. |
| Hawaii Medical Center East, LLC | McKesson Automation Inc. | MCKESSON 80 SAND ISLAND ACCESS RD HONOLULU, HI 96819 | | Contract Supplement (amendment) to purchase MedDirect feature fee and the related maintenance fees for equipment @ Ultra. |
| Hawaii Medical Center East, LLC | McKesson Automation, Inc. | MCKESSON FILE 57036 LOS ANGELES, CA 90074-7356 | | Rental of one Mobile Manager 100 ("MM100 System") handheld device for enhanced communication of ordering, receiving, and inventory management. |
| Hawaii Medical Center East, LLC; Hawaii Medical Center West, LLC | McKesson Corporation | | | |
| Hawaii Medical Center West, LLC | McKesson Information Solutions Inc | N/A | PO Box 98347 Chicago, IL 90609-8347 | IBMM Pharmacy System Software and maintenance |
| Hawaii Medical Center, LLC; | McKesson Information Solutions LLC | MCKESSON 80 SAND ISLAND ACCESS RD HONOLULU, HI 96819 | | IBM AIX Operating System Annual Maintenance for HMM Pharmacy System |
| Hawaii Medical Center, LLC; | McKesson Information Solutions LLC | MCKESSON 80 SAND ISLAND ACCESS RD HONOLULU, HI 98819 | | Direct dedicated connection to Mediview via CareBridge for claims transmission |
| Hawaii Medical Center East, LLC; Hawaii Medical Center West, LLC | Medquist Transcriptions, Ltd. (Lanier) | LANIER HEALTHCARE PO BOX 951282 DALLAS, TX 75395-1282 | | Hardware and software support services for transcription system. Term: February 1, 2008 – January 31, 2009 (3 |

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed  05/28/10  Page 120 of 134

| Debtor | Name of Other Parties to Lease or Contract | Address (from Vendor No.) | Address | Description of contract or lease and nature of debtor's interest. State whether lease is of nonresidential real property. State contract number of any government entity |
|---|---|---|---|---|
| Hawaii Medical Center East, LLC Hawaii Medical Center West, LLC | Nellcor Puritan Bennett, Inc | NELLCOR INC<br>P O BOX 100668<br>PASADENA, CA 91189-0668 | | Rent on a "no-charge placement basis" 54 stand-alone N-595 pulse oximeters, as long as minimum purchase levels of pulse oximetry sensors maintained. |
| Hawaii Medical Center East, LLC Hawaii Medical Center West, LLC | Nellcor Puritan Bennett, Inc | NELLCOR INC<br>P O BOX 100668<br>PASADENA, CA 91189-0668 | | Oximetry Trade-In Sensor Award Program (OTIS); Capital Lease T |
| Hawaii Medical Center East, LLC Hawaii Medical Center West, LLC | Nextel | NEXTEL COMMUNICATIONS<br>P O BOX 4181<br>CAROL STREAM, IL 60197-4181 | | Cellular service and phone provider. |
| Hawaii Medical Center West, LLC | Novell, Inc | NOVELL INC<br>P O BOX 31001-0024<br>PASADENA, CA 91110-0024 | | Renewal for support service for network operating system. |
| Hawaii Medical Center East, LLC Hawaii Medical Center West, LLC | NurseFinders of Hawaii | NURSEFINDERS INC<br>BOX 47871<br>P O BOX 1300<br>HONOLULU, HI 96807-1300 | | Temporary help for nursing staff |
| Hawaii Medical Center West, LLC | Oracle USA, Inc. | ORACLE USA, INC.<br>P O BOX 44471<br>SAN FRANCISCO, CA 94144-4471 | | Service Renewal #1054367 for Oracle Database Enterprise Edition, Software Update License & Support |
| Hawaii Medical Center East, LLC | Pacific Power Products | PACIFIC POWER PRODUCTS<br>MAIL SORT 56<br>PO BOX 4000<br>PORTLAND, OR 97208 | | Scheduled annual and one semi-annual maintenance for 2 hospital emergency generators |
| Hawaii Medical Center West, LLC | Pacific Power Products | PACIFIC POWER PRODUCTS<br>MAIL SORT 56<br>PO BOX 4000<br>PORTLAND, OR 97208 | | Scheduled annual and one semi-annual maintenance for 2 hospital emergency generators<br>Assignment Rights: |
| Hawaii Medical Center East, LLC Hawaii Medical Center West, LLC | Pacific Radiopharmacy, Ltd | PACIFIC RADIOPHARMACY LTD<br>347 N. KUAKINI ST<br>HONOLULU, HI 96817 | | Provide and deliver Radiopharmaceuticals for the Nuclear Medicine departments |
| Hawaii Medical Center West, LLC | Pacific Wireless Communications, LLC | PACIFIC WIRELESS COMMUNICATION<br>P O BOX 31000<br>HONOLULU, HI 96849-5738 | | Renewal contract for the use and maintenance of the 2-way radio base and portable radios @ West |

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed 05/28/10  Page 121 of 134

In re: CJA Hawaii, LLC
Case No. 08-01369
Executory Contracts and Unexpired Leases to be Rejected

| Debtor | Name of Other Parties to Lease or Contract | Address from Vendor No. | Address | Description of contract or lease and nature of debtor's interest. State whether lease is of nonresidential real property. State contract number of any government entity. |
|---|---|---|---|---|
| Hawaii Medical Center East, LLC | Pan Pacific Pathologist, Inc. (Jeff of Clinical Laboratories) | PAN PACIFIC PATHOLOGISTS LLC MAIL CODE NUMBER5 60286 P O BOX 1300 HONOLULU, HI 96807-1300 | | Provides phlebotomy and handling/shipping for clinical trial participation for Glaxo/Immune Phase 2 Randomized, Open Label, Multi-center Therapeutic Trial of the Efficacy, Immunogenicity, and Safety of Gis400S. |
| Hawaii Medical Center East, LLC; Hawaii Medical Center West, LLC | Pan Pacific Pathologists, Inc. | PAN PACIFIC PATHOLOGISTS LLC MAIL CODE NUMBER 60286 P O BOX 1300 HONOLULU, HI 96807-1300 | | Agreement for pathology services. |
| Hawaii Medical Center East, LLC; Hawaii Medical Center West, LLC | Pan Pacific Pathologists, Inc. | PAN PACIFIC PATHOLOGISTS LLC MAIL CODE NUMBER 60286 P O BOX 1300 HONOLULU, HI 96807-1300 | | Autopsy Services Agreement. |
| Hawaii Medical Center East, LLC; Hawaii Medical Center West, LLC; Hawaii Medical Center West, LLC | Patriot Medical Technologies of Ohio (Sodexho) | PATRIOT MED TECHN OF OH INC SODEXHO CLINICAL TECH MGMT MSC-410672 NASHVILLE, TN 37241-5000 | | Biomed Maintenance eff 12/1/09 with amendments |
| Hawaii Medical Center East, LLC | PanAmerica/Honolulu | PHARMERICA 3375 KOAPAKA ST, #H435 HONOLULU, HI 96819 | | Provide pharmacy and technician staff trained in management of SNF patients. |
| Hawaii Medical Center East, LLC | Philips Medical Systems | PHILIPS MEDICAL SYSTEMS P O BOX 405838 ATLANTA, GA 31384-6538 | | Customer Service Agreement for CV Integris BH3000 BI Plane |
| Hawaii Medical Center West, LLC | Pinestar Technology, Inc. | PINESTAR TECHNOLOGY INC PO BOX 824 GREENVILLE, PA 16125 | | Annual software support agreement for the Nuclear Medicine Information System |
| Hawaii Medical Center East, LLC | Pitney Bowes | PITNEY BOWES INC FINANCIAL SERVICES LLC P O BOX 856460 LOUISVILLE, KY 40285-6460 | | Lease of mailing machine and scale |
| Hawaii Medical Center West, LLC | Pitney Bowes | PITNEY BOWES INC FINANCIAL SERVICES LLC P O BOX 856460 LOUISVILLE, KY 40285-6460 | | Equipment lease agreement for postage machine, scale and scale platform |
| Hawaii Medical Center, LLC; | Pitney Bowes Service Solutions | PITNEY BOWES INC FINANCIAL SERVICES LLC P O BOX 856460 LOUISVILLE, KY 40285-6460 | | Service agreement for 2000 Inserter & Marginal Slitter |

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed  05/28/10  Page 122 of 134

| Debtor | Name of Other Parties to Lease or Contract | Address from Vendor No. | Address | Description of contract or lease and nature of debtor's interest. State whether lease is of nonresidential real property. State contract number of any government entity. |
|---|---|---|---|---|
| Hawaii Medical Center East, LLC; Hawaii Medical Center West, LLC; Hawaii Medical Center, LP | Platinum Select, LP | PLATINUM SELECT, LP<br>P O BOX 678094<br>DALLAS, TX 75267-8094 | | Provide qualified healthcare professionals |
| Hawaii Medical Center East, LLC | Radiology Group, Inc. | RADIOLOGY GROUP<br>941 KAMEHAMEHA HWY-STE 208<br>PEARL CITY, HI 96782 | | Provide diagnostic procedure to all SPMC Liver Center Protocol patients, which include the following: Ultrasound guided liver biopsy; Abdominal CT scan; abdominal MRI; Abdominal ultrasound; Abdominal X-ray, chest X-ray. |
| Hawaii Medical Center, LLC; | Rao, Monique | MONIQUE A RAO<br>94-416 KEAUAHA ST<br>MILILANI, HI 96789 | | Independent contractor |
| Hawaii Medical Center East, LLC | Rehab PRN Services, Inc. | REHABPRN SERVICES INC<br>1221 KAPIOLANI BLVD<br>SUITE #46<br>HONOLULU, HI 96814 | 1221 Kapiolani Blvd #111 Honolulu HI 96814 | Supplemental Therapy Services Agreement. |
| Hawaii Medical Center West, LLC | Rehab PRN Services, Inc. | REHABPRN SERVICES INC<br>1221 KAPIOLANI BLVD<br>SUITE #46<br>HONOLULU, HI 96814 | 1221 Kapiolani Blvd #111 Honolulu HI 96814 | Supplemental Therapy Services |
| Hawaii Medical Center, LLC; | Resources Global Professionals | RESOURCES GLOBAL PROFESSIONAL<br>FILE #55221<br>LOS ANGELES, CA 90074-5221 | | Accounting temporary services. |
| Hawaii Medical Center West, LLC | Restaurant Grease Busters | RESTAURANT GREASE BUSTERS<br>P O BOX 22359<br>HONOLULU, HI 96823 | | Agreement for kitchen exhaust hood cleaning |
| Hawaii Medical Center West, LLC | Restaurant Grease Busters (RGB) | RESTAURANT GREASE BUSTERS<br>P O BOX 22359<br>HONOLULU, HI 96823 | | Agreement for kitchen exhaust hood cleaning |
| Hawaii Medical Center West, LLC; | Reschel, Christine | CHRISTINE RESCHEL<br>92-872 PANANA ST<br>KAPOLEI, HI 96707 | | Professional services. |
| Hawaii Medical Center, LLC; | Robinson, Mark | MARK A ROBINSON, MD<br>P O BOX 205<br>KAHULUI, HI 96733 | | Independent Contractor providing Anesthesiology direct care/services. |
| Hawaii Medical Center East, LLC; Hawaii Medical Center West, LLC | Roche Diagnostic Corporation (Amerinet) | ROCHE DIAGNOSTIC CORP<br>DEPT 0243<br>P O BOX 120243<br>DALLAS, TX 75312-0243 | | Purchase commitment agreement for consumable products and equipment related to blood glucose testing applications. |

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed 05/28/10   Page 123 of 134

| Debtor | Names of Other Parties to Lease or Contract | Address (from Vendor No.) | Address | Description of contract or lease and nature of debtor's interest. State whether lease is of nonresidential real property. State contract number of any government entity |
|---|---|---|---|---|
| Hawaii Medical Center, LLC; | Roche Laboratories, Inc. / Amerinet | N/A | 340 Kingsland Street Nutley NJ 07110 | Roche Transplant Advantage System Supplemental Agreement terminated 4/20/09 |
| Hawaii Medical Center East, LLC; Hawaii Medical Center West, LLC | Rolloffs Hawaii | ROLLOFFS HAWAII INC P O BOX 30046 HONOLULU, HI 96820 | | Trash/cardboard removal/disposal |
| Hawaii Medical Center, LLC; | Sanofi Pasteur | | Discovery Drive Swiftwater, PA 18370 | Agreement for vaccines not provided by McKesson |
| Hawaii Medical Center East, LLC; Hawaii Medical Center West, LLC | SBM Site Services, LLC | SBM SITE SERVICES ATTN:ALEX FERNANDEZ 5241 ARNOLD AVE MCCELLLAN, CA 95652 | | Environmental Services Agreement |
| Hawaii Medical Center, LLC; | Secure Technology Hawaii, Inc. | SECURE TECHNOLOGY HAWAII, INC 1900 KAPIOLANI BLVD STE 714 HONOLULU, HI 96814 | | Check Point Enterprise software subscription renewal |
| Hawaii Medical Center, LLC; | SH Consulting LLC | SH CONSULTING LLC 1003 BISHOP ST STE 1180 HONOLULU, HI 96813 | | Revenue management consulting services |
| Hawaii Medical Center, LLC; | Siemens | SIEMENS CORPORATION FILE 4630 P O BOX 60000 SAN FRANCISCO, CA 94160 | | Custom Apps/Interfaces; M4 Encoder Interface; Software update license and support. |
| Hawaii Medical Center, LLC; | Simplex Grinnell | SIMPLEXGRINNELL LP DEPT CH 10320 PALATINE, IL 60055-0320 | | Renewal for annual service agreement for Fire Life Safety Inspections and Maintenance |
| Hawaii Medical Center East, LLC; Hawaii Medical Center West, LLC; Hawaii Medical Center, LLC; Hawaii Medical Center West, LLC / Hawaii Medical Center East, LLC | Sodexho America LLC | SODEXHO INC & AFFILIATES ILIMA CAMPUS 2280 ULIHA ST HONOLULU, HI 96817 | | Management Agreement for Engineering, Central Transportation Services, Environmental Services, F&N Linen Services and Amendments |
| Hawaii Medical Center East, LLC | Sourceone Healthcare Technologies | SOURCEONE HEALTHCARE TECH PO BOX 8004 MENTON, OH 44061-8004 | | Service and maintenance for Mammography (CAD Model SL200 (Serial Number SL200V-5360460) (Assisted Mammography Diagnosis Digital Vessel) |
| Hawaii Medical Center East, LLC | Specialized Nursing Service | SPECIALIZED NURSING SERVICE P O BOX 665 KANEOHE, HI 96744 | | Provides qualified per diem RNs |

U.S. Bankruptcy Court - Hawaii  #08-01369  Dkt # 1316  Filed  05/28/10  Page 124 of 134

| Debtor | Names of Other Parties to Lease or Contract | Address / (Vendor No.) | Address | Description of contract or lease and nature of debtor's interest. State whether lease is of nonresidential real property. State contract number of any government contract. |
|---|---|---|---|---|
| Hawaii Medical Center West, LLC | Specialized Nursing Service | SPECIALIZED NURSING SERVICE P O BOX 655 KANEOHE, HI 96744 | | Provide qualified per diem RNs |
| Hawaii Medical Center West, LLC; Hawaii Medical Center East, LLC; Hawaii Medical Center West, LLC | St. Francis Healthcare System of Hawaii | ST FRANCIS HEALTHCARE SYSTEM OF HAWAII P O BOX 29700 HONOLULU, HI 96820-2100 | | Spiritual services to the hospital in-patients, residents, ER patients, all surgery patients. |
| Hawaii Medical Center East, LLC | St. Francis Medical Center | ST FRANCIS HEALTHCARE SYSTEM OF HAWAII P O BOX 29700 HONOLULU, HI 96820-2100 | | B-1 Weinberg Lease |
| Hawaii Medical Center East, LLC | St. Francis Imaging LLC dba Island Imaging Centers | #N/A | 2201 Liliha Street Honolulu, Hawaii 96817 | MRI/CT Imaging Services Agreement, contract terminated |
| Hawaii Medical Center East, LLC | St. Jude S.C. Inc. | ST. JUDE MEDICAL 22400 NETWORK PLACE CHICAGO, IL 60673-1224 | Western Area Operations, 15900 Valley View Court/Teller 1 Sylmar, CA 91342 | Cardiac Rhythm Management (CRM) Supply Contract |
| Hawaii Medical Center, LLC; | Standard Register | STANDARD REGISTER COMPANY P O BOX 840655 DALLAS, TX 75284-0655 | | Document Management Partnership Participation Agreement |
| Hawaii Medical Center East, LLC | Starr and Company, Inc | STARR AND COMPANY INC. 680 KAKOI STREET HONOLULU, HI 96819 | | Perform a quarterly preventive maintenance service and inspection to the dual Dalroy Climate Air Compressor with a locally mounted dryer expired 3/31/09 |
| Hawaii Medical Center, LLC; | Stuart Stevig Financial Services | STUART STEVIG FINANCIAL SVCS 13013 11TH AVE NE MARYSVILLE, WA 98271 | | Reparation of 6/30/07 Medicare, Medicaid and HMSA ESC- Cost Reports |
| Hawaii Medical Center, LLC; | Stuart Stevig Financial Services | STUART STEVIG FINANCIAL SVCS 13013 11TH AVE NE MARYSVILLE, WA 98271 | | Preparation of June 30, 2008 Medicare, Medicaid and HMSA ESC- Cost Reports |

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed   05/28/10   Page 125 of 134

In re: CMA Hawaii, LLC
Case No. 08-01369

Executory Contracts and Unexpired Leases to be Rejected

| Debtor | Name of Other Parties to Lease or Contract | Address (from Vendor No.) | Address | Description of contract or lease and nature of debtor's interest. State whether lease is of nonresidential real property. State contract number of any government entity |
|---|---|---|---|---|
| Hawaii Medical Center, LLC; | Success Advertising | SUCCESS ADVERTISING<br>820 MILILANI ST STE 101<br>HONOLULU, HI 96813 | | Recruitment advertising agreement. |
| Hawaii Medical Center, LLC; | Sybase | SYBASE IND SUBSCRIPTION SVCS<br>P O BOX 22159<br>OAKLAND, CA 94623 | | Service: Annual maintenance renewal for Sybase PowerBuiled Enterprise software program |
| Hawaii Medical Center, LLC; | Tan, Slang Yong (S.Y.) MD | S Y TAN, MD<br>2256 LILIHA ST<br>SUITE 115<br>HONOLULU, HI 98817 | | Medical Director and Physician contract for Medical Education and Medico-Legal Education (DME). |
| Hawaii Medical Center East, LLC | | | | |
| Hawaii Medical Center, LLC; | The Honolulu Advertiser | HONOLULU ADVERTISER<br>P O BOX 31210<br>HONOLULU, HI 96820-0210 | | Advertising agreement between The Honolulu Advertiser and Success Advertising for Hawaii Medical Center. |
| Hawaii Medical Center, LLC; | Torkildson, Katz, Fonseca, Moore & Hetherington | TORKILDSON,KATZ,MOORE,HETHERI<br>HETHERINGTON & HARRIS<br>700 BISHOP STREET-15TH FLOOR<br>HONOLULU, HI 96813-4187 | | Legal consultation services |
| Hawaii Medical Center West, LLC | Trane | TRANE U.S. INC<br>FILE 56718<br>LOS ANGELES, CA 90074-6718<br>12/31/08 | | Air conditioning maintenance of AC in MRI trailer expired |
| Hawaii Medical Center West, LLC | Trane | TRANE U.S. INC<br>FILE 56718<br>LOS ANGELES, CA 90074-6718 | | Maintenance inspections for 2 chillers and related equipment @ West expired 6/30/08 |
| Hawaii Medical Center West, LLC | Trane | TRANE U.S. INC<br>FILE 56718<br>LOS ANGELES, CA 90074-6718 | | Scheduled maintenance for Chiller #2 @ West, one time job completed. |

In re: CHA Hawaii, LLC
Case No. 08-01369

Executory Contracts and Unexpired Leases to be Rejected

| Debtor | Name of Other Parties to Lease or Contract | Address from Vendor No. | Address | Description of contract or lease and nature of debtor's interest. State whether lease is of nonresidential real property. State contract number of any government entity. |
|---|---|---|---|---|
| Hawaii Medical Center East, LLC | Trane | | TRANE U.S. INC<br>FILE 56718<br>LOS ANGELES, CA 90074-6718 | Renewal scheduled maintenance service for Chillers #1 & #3, work completed |
| Hawaii Medical Center West, LLC | Trane | | TRANE U.S. INC<br>FILE 56718<br>LOS ANGELES, CA 90074-6718 | Overhaul for Chiller #2 @ West (Model #DVHE012; Serial #L87064071), one time work completed |
| Hawaii Medical Center West, LLC | Trane | | TRANE U.S. INC<br>FILE 56718<br>LOS ANGELES, CA 90074-6718 | |
| Hawaii Medical Center West, LLC | Trane | | TRANE U.S. INC<br>FILE 56718<br>LOS ANGELES, CA 90074-6718 | Select Maintenance" program from Chiller #1 |
| Hawaii Medical Center West, LLC | Trane | | TRANE U.S. INC<br>FILE 56718<br>LOS ANGELES, CA 90074-6718 | Comprehensive semi-annual maintenance/cleaning of 3 cooling towers and 1 scrubber associated with the A/C plant, contract expired 9/30/09 |
| Hawaii Medical Center East, LLC | Trane | | | Service maintenance ("Scheduled") for Ice Plant Chiller (Ice Chiller #1; Model Number C4HE500, contract expired 11/08 |
| Hawaii Medical Center East, LLC | Trane | | TRANE U.S. INC<br>FILE 56718<br>LOS ANGELES, CA 90074-6718 | Service maintenance ("Scheduled") for Ice Plant Chiller (Ice Chiller #2), expired 1/09 – Parts and materials) |
| Hawaii Medical Center East, LLC | T-System, Inc. | | T-SYSTEM, IN<br>P.O. BOX 671121<br>DALLAS, TX 75267-6121 | License to use company's prescribed nursing documentation forms in the ER |
| Hawaii Medical Center East, LLC /Hawaii Medical Center West, LLC | United Laundry Services, Inc. | | UNITED LAUNDRY SERVICE INC<br>2291 ALAHAO ST<br>HONOLULU, HI 96819 | Daily laundry and linen services. |
| Hawaii Medical Center East, LLC | University of Hawaii JABSOM | | UNIVERSITY OF HAWAII<br>JOHN A. BURNS SCH. OF MEDICINE<br>ATTN:DENNIS SUHADA<br>HONOLULU, HI 96822 | LOA between UH JABSOM Dept of Medicine Medicine Fellowship Program, effective July 2007 |
| Hawaii Medical Center East, LLC | University of Hawaii Transitional Residency Program | N/A | UH/JI transitional Residency Program<br>1356 Lusitana St, 7th Fl,<br>Honolulu, HI 96813 | Letter of Agreement for Transitional Residency |
| Hawaii Medical Center East, LLC | University of Hawaii, JABSOM, Dept of Geriatric Medical | | UNIVERSITY OF HAWAII<br>JOHN A. BURNS SCH. OF MEDICINE<br>ATTN:DENNIS SUHADA<br>HONOLULU, HI 96822 | Affiliation agreement between UH/JABSOM, Department of Geriatric Medicine Fellowship Program. |

| Debtor | Name of Other Parties to Lease of Contract | Address Name or Contract No. | Address | Description of contract of lease and nature of nature's interest. State whether lease is of nonresidential real property. State contract number of any government entity |
|---|---|---|---|---|
| Hawaii Medical Center East, LLC | University of Hawaii, JABSOM, Dept of Geriatric Medicine | | UNIVERSITY OF HAWAII JOHN A. BURNS SCH. OF MEDICINE ATTN:DENNIS SUNADA HONOLULU, HI 96822 | LOA between UH JABSOM Geriatric Medicine Fellowship Program effective July 2007 |
| Hawaii Medical Center East, LLC | University of Hawaii, John A. Burns School of Medicine | | UNIVERSITY OF HAWAII JOHN A. BURNS SCH. OF MEDICINE ATTN:DENNIS SUNADA HONOLULU, HI 96822 | LOA between the UH JABSOM, Director of Surgical Education ef July 2007 |
| Hawaii Medical Center East, LLC | University of Hawaii, John A. Burns School of Medicine | | UNIVERSITY OF HAWAII JOHN A. BURNS SCH. OF MEDICINE ATTN:DENNIS SUNADA HONOLULU, HI 96822 | FY 2008 Agreement with UH JABSOM – Salary, Fringe and Malpractice Insurance Agreement for Department of Medicine |
| Hawaii Medical Center East, LLC | University of Hawaii, John A. Burns School of Medicine | | UNIVERSITY OF HAWAII JOHN A. BURNS SCH. OF MEDICINE ATTN:DENNIS SUNADA HONOLULU, HI 96822 | FY 2008 Agreement with UH JABSOM – Salary, Fringe and Malpractice Insurance Agreement for Department of Surgery |
| Hawaii Medical Center East, LLC | University of Hawaii, John A. Burns School of Medicine | | UNIVERSITY OF HAWAII JOHN A. BURNS SCH. OF MEDICINE ATTN:DENNIS SUNADA HONOLULU, HI 96822 | FY 2008 Agreement Dept of Medicine Salary, Fringe and Malpractice Insurance Agreements |
| Hawaii Medical Center East, LLC | University of Hawaii, John A. Burns School of Medicine | | UNIVERSITY OF HAWAII JOHN A. BURNS SCH. OF MEDICINE ATTN:DENNIS SUNADA HONOLULU, HI 96822 | FY 2009 Agreement Dept of Surgery Salary, Fringe and Malpractice Insurance Agreements |
| Hawaii Medical Center East, LLC | University of Hawaii, John A. Burns School of Medicine | | UNIVERSITY OF HAWAII JOHN A. BURNS SCH. OF MEDICINE ATTN:DENNIS SUNADA HONOLULU, HI 96822 | LOA between the UH JABSOM, Pathology Residency Program, eff Jan 2007 |
| Hawaii Medical Center East, LLC | US Mobility (fka Arch Wireless) | | ARCH WIRELESS P O BOX 660770 DALLAS, TX 75266-0770 | Digital and Alpha Numeric Pagers |
| Hawaii Medical Center West, LLC | US Mobility (fka Arch Wireless) | | ARCH WIRELESS P O BOX 660770 DALLAS, TX 75266-0770 | Digital and Alpha Numeric Pagers |
| Hawaii Medical Center, LLC; | Verizon Wireless | | VERIZON WIRELESS P O BOX 9622 MISSION HILLS, CA 91346-9622 | Mobile broadband connectivity |
| Hawaii Medical Center East, LLC | Windward Window Cleaners | | WINDWARD WINDOW CLEANERS P.O. BOX 1783 KAILUA, HI 96734 | Window cleaning services |

| Debtor | Names of Other Parties to Lease or Contract | Address from Vendor No. | Address | Description or contract or lease and nature of debtor's interest. State whether lease is of nonresidential real property. State contract number of any government entity |
|---|---|---|---|---|
| Hawaii Medical Center East, LLC | Wong, Vernon and Byron | VERNON K WONG, MD 1481 S KING ST #423 HONOLULU, HI 96814 | | Provide Ophtamology examinations, including dilation, for Low Center protocol clinical trial patients |
| Hawaii Medical Center, LLC Hawaii Medical Center East, LLC Hawaii Medical Center West, LLC | Xerox Corporation | XEROX CORPORATION P. O. BOX 7405 PASADENA, CA 91109-7405 | | Document Service Agreement and Amendments |

Page 25 of 25

MCDONALD HOPKINS LLC

SHAWN M. RILEY    (0037235) (Admitted Pro Hac Vice)
PAUL W. LINEHAN   (0070116) (Admitted Pro Hac Vice)
MICHAEL J. KACZKA  (0076548) (Admitted Pro Hac Vice)
600 Superior Avenue, East, Suite 2100
Cleveland, OH  44114-2653
Telephone:    (216) 348-5400
Facsimile:    (216) 348-5474
Email: **sriley@mcdonaldhopkins.com**
       **plinehan@mcdonaldhopkins.com**
       **mkaczka@mcdonaldhopkins.com**

MOSELEY BIEHL TSUGAWA LAU & MUZZI
A HAWAII LIMITED LIABILITY LAW COMPANY

CHRISTOPHER J. MUZZI (6939)
Corporate Tower
1100 Alakea Street, 23rd Floor
Honolulu, HI  96813
Telephone:    (808) 531-0490
Facsimile:    (808) 534-0202
Email: **cmuzzi@hilaw.us**

Co-Counsel to the Debtors and Debtors in Possession

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>CHA Hawaii, LLC., et al.,<br><br>      Debtors.<br><br>―――――――――――――――――<br>This document relates to:<br>All Cases | Case No. 08-01369<br>(Chapter 11 Cases)<br>(Jointly Administered)<br><br>Hearing:<br>Date:<br>Time:<br>Judge:  Robert J. Faris |

**NOTICE OF (A) OCCURRENCE OF EFFECTIVE DATE OF REVISED FIRST AMENDED JOINT PLAN OF REORGANIZATION FOR HAWAII MEDICAL CENTER, LLC, HAWAII MEDICAL CENTER EAST, LLC, AND HAWAII MEDICAL ENTER WEST, LLC PROPOSED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, HAWAII MEDICAL CENTER, LLC, HAWAII MEDICAL CENTER EAST, LLC, HAWAII MEDICAL CENTER WEST, LLC, AND HAWAII PHYSICIANS GROUP, LLC, AND (B) CERTAIN CLAIMS' BAR DATES**

TO:    ALL HOLDERS OF CLAIMS AGAINST, AND INTERESTS IN, HAWAII MEDICAL CENTER, LLC, HAWAII MEDICAL CENTER EAST, LLC, HAWAII MEDICAL CENTER WEST, LLC AND ALL OTHER PARTIES IN INTEREST

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

    **A.**    **Confirmation of the Joint Plan.**

On May __, 2010, the United States Bankruptcy Court for the District of Hawaii (the "Bankruptcy Court"), entered an Order, Docket No. ____ (the "Confirmation Order"), confirming the Revised First Amended Joint Plan of Reorganization for Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, and Hawaii Medical Center West, LLC Proposed by the Official Committee of Unsecured Creditors, Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC, Hawaii Medical Center West, LLC, and Hawaii Physicians Group, LLC (the "Joint Plan"), in the chapter 11 cases of Hawaii Medical Center, LLC, Hawaii Medical Center East, LLC and Hawaii Medical Center West, LLC (collectively, the "Operating Debtors") and resolving the objections and the response to the Joint Plan. Unless otherwise defined in this Notice, capitalized terms and phrases used herein have the meanings given to them in the Joint Plan or the Confirmation Order.

    **B.**    **Effective Date.**

The Effective Date of the Joint Plan occurred on _____, 2010.

    **C.**    **Bar Dates.**

        **1.**    **Bar Dates for Administrative Claims.**

        a.    *General Administrative Claim Bar Date*. Except as otherwise provided in the Joint Plan or the Confirmation Order, unless previously filed or paid, requests for payment of Administrative Claims (other than for an Administrative Claim (i) incurred in the ordinary course of the Operating Debtors' postpetition business; (ii) for taxes imposed by governmental units and (iii) for Professionals) must be filed and served on the Operating Debtors or Reorganized Debtors no later than 60 days after the Effective Date (the "General Administrative Claims Bar Date"); provided, however, that the General Administrative Claims Bar Date may be extended from time to time upon mutual agreement of the Reorganized Debtors and the applicable Holder of an Administrative Claim, or pursuant to an Order of the Bankruptcy Court.

b.     *Ordinary Course Liabilities*.  Holders of Administrative Claims based on liabilities incurred postpetition in the ordinary course of the Operating Debtors' business (other than Claims of governmental units for taxes or Claims and/or penalties related to such taxes) shall not be required to File any request for payment of such Claims.  Such Administrative Claims shall be paid by the Reorganized Debtors in the ordinary course of business, as appropriate, pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claim or pursuant to past practices, without any further action by the Holders of such Claims, subject to any applicable defenses of the Reorganized Debtors.

c.     *Tax Claims*.  All requests for payment of Administrative Claims for postpetition federal, state and local taxes, for which no bar date has otherwise been previously established, must be filed on or before the later of (i) 60 days following the Effective Date; and (ii) 120 days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit.  Any Holder of any Administrative Claim for postpetition federal, state and local taxes that is required to file a request for payment of such taxes and that does not file such a Claim by the applicable bar date shall be forever barred from asserting any such Administrative Claim against any of the Operating Debtors or Reorganized Debtors, or any of their respective properties.

d.     *Professional Fees*.  All Professional Fees incurred prior to and including the Effective Date shall be subject to final allowance or disallowance upon application to the Bankruptcy Court pursuant to sections 330 or 503(b)(4) of the Bankruptcy Code.  Final applications for Professional Fees for services rendered in connection with the Chapter 11 Cases shall be filed with the Bankruptcy Court no later than 30 days after the Effective Date.

## 2.     Bar Date for Rejection Damage Claims

Plan Schedule 7.1 (attached hereto as <u>Exhibit A</u>) lists the executory contracts and non-residential real property leases rejected by the Operating Debtors pursuant to the Joint Plan. Any Claim arising from the rejection of an executory contract or non-residential real property lease listed on Plan Schedule 7.1 must be filed within 30 days after the Effective Date or shall be forever barred from assertion against the Operating Debtors or the Reorganized Debtors, their Estates or property.

## D.     Discharge of Claims and Termination of Interests.

*Discharge of Claims and Termination of Interests.*  Except as otherwise provided in the Joint Plan or in the Confirmation Order and subject to the terms of the Joint Plan and the obligations of the Reorganized Debtors under the Joint Plan, all consideration distributed under the Joint Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Interests of any nature whatsoever against the Operating Debtors or any of their assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to the Joint Plan on account of such Claims and Interests. Upon the Effective Date, subject to the terms of the Joint Plan and the obligations of the Reorganized Debtors under the Joint Plan, each of the Operating Debtors and the Reorganized Debtors shall be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims and Interests, including, but not limited to, demands and liabilities that arose

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed  05/28/10   Page 132 of 134

before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code.

### E.    Injunction.

*Injunction.*  Except as otherwise provided in this Plan, from and after the Effective Date, all Persons, except for the Centers for Medicare and Medicaid Services and the United States Department of Health and Human Services, who have held, hold, or may hold Claims against or Interests in the Operating Debtors that are discharged or terminated under the Joint Plan are permanently enjoined from taking any of the following actions against the Operating Debtors, their Estates, the Reorganized Debtors, any of their property, or any of the Exculpated Parties (to the extent such Exculpated Parties are entitled to exculpation pursuant to Section 10.2 of the Joint Plan) on account of any such Claims or Interests: (A) commencing or continuing, in any manner or in any place, any action, or other proceeding; (B) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (C) creating, perfecting, or enforcing any lien or encumbrance; (D) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability or obligation due to the Operating Debtors; and (E) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Joint Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of the Joint Plan. By accepting distributions pursuant to the Joint Plan, each Holder of an Allowed Claim or an Allowed Interest shall be deemed to have specifically consented to the injunctions set forth in this Section 10.5 of the Joint Plan.  Nothing in this Section 10.5 of the Joint Plan shall limit the obligations of the Reorganized Debtors under the Joint Plan.  For the avoidance of doubt, nothing in the Joint Plan shall enjoin SFHS from enforcing the Physician Guaranties or any other guarantee of a non-Debtor party in favor of SFHS.

### F.    Service of Documents.

Any pleading, notice or other document required by the Joint Plan, the Confirmation Order, or this Notice to be served on or delivered to the Operating Debtors, the Creditors Committee, HPG or their counsel must be sent to:

Hawaii Medical Center, LLC
Hawaii Medical Center East, LLC
Hawaii Medical Center West, LLC
2230 Liliha Street
Honolulu, HI 96817
Attn: Salim Hasham

Operating Debtors

KESSNER UMEBAYASHI BAIN & MATSUNAGA

Steven Guttman
220 South King Street, Suite 1900
Honolulu, HI 96813
Telephone:    (808) 536-1900
Email: sguttman@kdugm.com

Counsel for Hawaii Physicians Group, LLC

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed  05/28/10   Page 133 of 134

With copies to:

ALSTON & BIRD LLP

Martin G. Bunin
Craig E. Freeman
William Hao
90 Park Avenue
New York, New York 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
Email: marty.bunin@alston.com
        craig.freeman@alston.com
        william.hao@alston.com

Co-Counsel for the Official Committee of
Unsecured Creditors

MOSELEY BIEHL TSUGAWA LAU &
MUZZI, A HAWAII LIMITED LIABILITY
LAW COMPANY

CHRISTOPHER J. MUZZI (6939)
Corporate Tower
1100 Alakea Street, 23rd Floor
Honolulu, HI 96813
Telephone:    (808) 531-0490
Facsimile:    (808) 534-0202
Email: cmuzzi@hilaw.us

Co-Counsel to the Debtors

WAGNER CHOI & VERBRUGGE

Chuck C. Choi
745 Fort Street, Suite 1900
Honolulu, HI 96813
Telephone: (808) 533-1877
Facsimile: (808) 566-6900
Email: cchoi@hibklaw.com

Co-Counsel for the Official Committee of
Unsecured Creditors

MCDONALD HOPKINS, LLC

Shawn M. Riley
Paul W. Linehan
Michael J. Kaczka
600 Superior Avenue, East, Suite 2100
Cleveland, OH 44114-2653
Telephone:    (216) 348-5400
Facsimile:    (216) 348-5474
Email: sriley@mcdonaldhopkins.com
        plinehan@mcdonaldhopkins.com
        mkaczka@mcdonaldhopkins.com

Co-Counsel for the Debtors

G.    **Copies of Confirmation Order.**

Copies of the Confirmation Order may be obtained by written request from Christopher J. Muzzi, Moseley Biehl Tsugawa Lau & Muzzi, Alakea Corporate Tower, 1100 Alakea Street, 23rd Floor, Honolulu, HI 96813, Email: cmuzzi@hilaw.us; telephone number: (808) 531-0490; facsimile: (808) 534-0202.

_____, 2010                    Respectfully submitted,

                                          _____

U.S. Bankruptcy Court - Hawaii   #08-01369   Dkt # 1316   Filed  05/28/10   Page 134 of 134